Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
Jaymie Parkkinen (S.B. # 318394)
*jparkkinen@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Alex Kozinski (S.B. # 66473)
*alex@kozinski.com*
719 Yarmouth Rd, Suite 101
Palos Verdes Estates, CA 90274
Telephone: (310) 541-5885
Facsimile: (310) 265-4653

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOSH YONAY, an individual, and YUVAL YONAY, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and DOES 1-10, <br><br> Defendants. | Case No. 22-CV-03846-PA-GJS <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **[1] BREACH OF CONTRACT** <br> **[2] DECLARATORY RELIEF** <br> **[3] COPYRIGHT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Shosh Yonay and Yuval Yonay (collectively, the "Yonays" or "Plaintiffs"), the heirs of writer Ehud Yonay (the "Author"), for their complaint against defendant Paramount Pictures Corporation ("Paramount"), allege as follows:

## NATURE OF THE ACTION

1. Ehud Yonay is the author of the original 1983 story entitled "Top Guns," (the "Story") from which the 1986 motion picture "Top Gun" (the "1986 Film") and the recently released 2022 sequel motion picture "Top Gun: Maverick" (the "2022 Sequel") are derived.

2. The iconic 1986 Film all started with Paramount securing exclusive motion picture rights to Ehud Yonay's copyrighted Story immediately after its publication. In fact, the Author's Story was duly credited on the derivative 1986 Film, which is widely known to have been based on the Story.

3. On January 23, 2018, the Yonays properly availed themselves of their right to recover the copyright to the Story under the Copyright Act, 17 U.S.C. § 203(a), by sending Paramount a statutory notice of termination (the "Termination Notice") and thereafter filing it with the Copyright Office, effective January 24, 2020.

4. On January 24, 2020, the copyright to the Story thus reverted to the Yonays under the Copyright Act, but Paramount deliberately ignored this, thumbing its nose at the statute. This case arises out of Paramount's conscious failure to re-acquire the requisite film and ancillary rights to the Yonays' copyrighted Story prior to the completion and release of their derivative 2022 Sequel.

5. Paramount engaged in the willful conduct alleged herein, notwithstanding that it is a sophisticated multinational corporation whose core business is based upon the value and enforcement of copyrights and other intellectual property.

## PARTIES

6. Plaintiff Shosh Yonay is an individual and citizen of, and resides in, Israel. Shosh Yonay is the widow and heir of the Author.

7. Plaintiff Yuval Yonay is an individual and citizen of, and resides in, Israel. Yuval Yonay is the son and heir of the Author.

8. Upon information and belief, Defendant Paramount is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business in the County of Los Angeles, California.

## JURISDICTION AND VENUE

9. This is a civil action for copyright infringement and injunctive relief under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* (hereinafter, "the Copyright Act") for declaratory relief under the Declaratory Judgment Act, 18 U.S.C. § 2201, and for breach of contract.

10. This Court has original subject matter jurisdiction over the claims set forth in this complaint pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*, 28 U.S.C. §§ 1331, 1332, and 1338(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201, and supplemental subject matter jurisdiction over the state-law contract claims pursuant to 28 U.S.C. § 1367.

11. Upon information and belief, this Court has personal jurisdiction over Paramount because it has its principal place of business in the State of California and in this District, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

12. Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Paramount resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this action occurred in this District.

## STATUTORY BACKGROUND

13. The U.S. Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the

"Copyright Act"), provides an author with the inalienable right to recapture the copyright to the author's creative material, after a lengthy waiting period, by statutorily terminating without cause prior transfer(s) of such copyright. Termination is carried out by simply serving advance notice of termination on the original grantee or its successors and filing the notice with the U.S. Copyright Office, within delineated time windows. 17 U.S.C. § 203(a).

14. Section 203(a) provides for the termination of post-1977 transfers of rights under copyright by the author during a five (5) year period commencing thirty-five (35) years after the date the rights were transferred. *Id*. § 203(a)(3). The requisite notice of termination sets forth the "effective date" of termination, within the five-year termination "window," when the previously transferred rights under copyright will be recaptured by the author. Notice of termination may be served by the author at any time between ten (10), and two (2) years before the effective termination date. *Id*. § 203(a)(4)(A).

15. "Works for hire" are the sole exemption from the Copyright Act's termination provisions. *Id*. § 203(a).

16. The termination right is the most important authorial right provided by the Copyright Act, short of copyright itself. Congress was therefore very protective of the termination right and, to that end, enacted a number of provisions to prevent any waiver or encumbrance of the termination interest. For instance, "[t]ermination of the [prior copyright] grant may be effected notwithstanding any agreement to the contrary[.]" *Id*. § 203(a)(5).

17. Furthermore, "[h]armless errors in a [termination] notice that do not materially affect the adequacy of the information required to serve the purposes of . . . section [203(a)] of title 17, U.S.C. . . . shall not render the notice invalid." 37 CFR § 201.10(e)(1).

18. Congress anticipated that an author's exercise of his/her termination right would usually result in a new license by the author to the terminated grantee

- 4 -

(such as Paramount). To that end, Congress provided "the original grantee" with the exclusive opportunity to re-license an author's recaptured copyright "after the notice or termination has been served," but before "the effective date of the termination." *Id*. § 203(b)(4). The termination provisions thus reflect a deliberate balance of competing interests.

19. Under the termination provisions, prior derivative works can continue to be distributed just as before. 17 U.S.C. § 203(b)(1). Thus, the Yonays' recovery of the U.S. copyright to the Story does not prevent Paramount or its licensees from continuing to exploit prior derivative works, including the 1986 Film; it just requires a new license for sequel films and other derivative works completed after the January 24, 2020 termination date.

20. In addition, because the Copyright Act has no extraterritorial application, foreign rights to the Story remain with Paramount such that, notwithstanding the Yonays' Termination Notice, Paramount would always continue to benefit from "Top Gun." After the January 24, 2020 termination date, a new U.S. license from the Yonays to Paramount of the underlying Story would simply enable them to fairly participate with others in the proven market value and financial rewards of the Author's creation, just as Congress intended. H.R. Rep. No. 94-1476, at 124 (1976).

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

The Chain of Title

21. Ehud Yonay's Story was originally published on April 21, 1983 in the May 1983 issue of *California* magazine and was registered in the U.S. Copyright Office on October 3, 1983 (Reg. No. TX0001213463). *California* magazine featured best-selling novelists and screenwriters such as Tom Wolfe, Joan Didion and Joe Eszterhas. For the fifteen years it was published (1978-1991), *California* was as a purveyor of "New Journalism," which employs unconventional literary techniques and the subjective literary style of long-form

non-fiction.

22. The magazine, with modest circulation, was not well known, and the subject of the Story—a naval training base—was certainly dry. But the Author's copyrighted Story was written in a remarkably vivid and cinematic fashion, with references to Hollywood stars and epic films such as "From Here to Eternity." Rather than focusing on the historical details of the training school, the Story focuses on the pilots (the "Top Guns") and their personal experiences, singling out two in particular, a hotshot pilot ("Yogi") and his radio intercept officer ("Possum"), as they are hammered into a team. It skillfully selects accounts of the pilots' personal lives and their "hops" (flight maneuvers) to construct a romanticized, first-hand experience of what it is like to be a member of an elite Navy fighter squadron. Indeed, the literary and cinematic way the Story humanized and energized its subject was so compelling that Paramount immediately sought to lock up exclusive film rights from its Author. The resulting films, which faithfully translate the Author's vision and narrative to the screen, have given audiences worldwide a close-up look at the lives of U.S. Navy fighter pilots, as unconventionally curated by Ehud Yonay's dramatic Story.

23. Within weeks of the Story's publication, Paramount secured from Ehud Yonay an "Assignment of Rights" dated May 18, 1983, locking up the *exclusive* motion picture, television and merchandising rights under copyright in the Story (the "1983 Agreement"). A copy of the 1983 Agreement is attached as Exhibit 2 to this complaint.

24. In the 1983 Agreement Paramount refers to the Story not as a news "article," but as a "published story written by Ehud Yonay entitled 'TOP GUNS'." It also repeatedly refers to and acknowledges the Author's "copyright" in the Story; and ensures that the Story is "wholly original with the Author." In the 1983 Agreement, Paramount further ensures that the Author will "extend . . . such copyright or copyrights" in his Story and "and will convey, grant and assign to

[Paramount] such . . . extension of copyright and the rights herein conveyed, granted and assigned for such . . . extended term", and appoints Paramount "as the attorney-in-fact of the Author . . . to execute, deliver and record on behalf of the Author and in the name of the Author or otherwise, any and all assignments and other documents necessary or proper to convey, grant and assign to [Paramount] such . . . copyright and the rights herein conveyed, granted and assigned, for the term" thereof.

25. Paramount's 1983 Agreement thus ensured that no competing motion picture studio could produce a motion picture based on the Author's Story.

26. There is also no doubt that the copyrighted Story was the clear genesis of Paramount's 1986 mega-hit film, "Top Gun." But for the Author's literary efforts and his Story's evocative prose and narrative, Paramount's beloved 1986 Film and its highly successful 2022 Sequel would not exist.

27. On January 23, 2018, the Yonays properly availed themselves of their termination rights under the Copyright Act, 17 U.S.C. § 203(a), by sending Paramount a statutory notice of termination, terminating the Author's grant in the 1983 Agreement of all rights under U.S. copyright in the Story, effective January 24, 2020.

28. The Termination Notice, recorded with the U.S. Copyright Office on January 29, 2018 (Doc. No. V9949D433), fully complied with Section 203(a) of the Copyright Act and the regulations promulgated thereunder by the Register of Copyrights, 37 C.F.R. § 201.10.

29. Therefore, as of January 24, 2020, the Yonays are the sole owners of the U.S. copyright in the Story.

<u>The 2022 Sequel is Derived from the Story</u>

30. Ehud Yonay's Story told the story of the Navy Fighter Weapons School training program as personified by the Author through the eyes of two lieutenants in the course, a hotshot pilot ("Yogi") and his friend and second in the

1  two-man cockpit ("Possum").

2      31.    In the Story, the Author brought to life what could have easily been a barren subject of facts and figures by painting the Naval Air Station as a place of death-defying competition, comradery, romanticism, and 1950s post-war nostalgia. The Author's incredibly vivid imagery strapped readers in to the cockpit of a fighter jet long before the days of GoPro cameras and smartphones.

32.    In fact, Ehud Yonay's colorful telling of the Navy training program was so exhilarating and cinematic that it compelled Paramount to immediately seek him out and secure the exclusive rights under copyright to produce films based on his Story, mere weeks after its publication.

33.    The resulting 1986 Film, produced by Jerry Bruckheimer and its screenplay written by Jim Cash and Jack Epps, Jr., was clearly derived from the Story. Accordingly, the 1986 Film specifically credits Ehud Yonay for his Story. Indeed, it is widely accepted that "Top Gun" was based on the Story.

34.    The 2022 Sequel incorporates and adheres so closely to the 1986 Film that it is referred to in the entertainment industry as a "legacy sequel." It naturally follows that the 2022 Sequel, again produced by Bruckheimer and on which Cash and Epps again received writing credit, is derived from the Story on which the 1986 Film is based.

35.    A review of the 2022 Sequel, like the 1986 Film, reveals key elements that are substantially similar to those in the Story, as set forth in Exhibit 1 to this complaint, and incorporated by reference herein.

<u>Paramount's Exploitation of the 2022 Sequel Infringes the Story</u>

36.    Despite the 2022 Sequel clearly having derived from the Story, Paramount did not bother to secure a new license of film and ancillary rights in the copyrighted Story following the Yonays' recovery of their U.S. copyright on January 24, 2020.

37.    Plaintiffs are informed and believe and based thereon allege that the

- 8 -

2022 Sequel was not completed until May 8, 2021, more than one year *after* Paramount's grant in the 1983 Agreement had been statutorily terminated. The 2022 Sequel therefore, unlike the 1986 Film, does not qualify for the "prior derivative works exception" to statutory termination, 17 U.S.C. § 203(b)(1), and thus infringes the copyright owned by the Yonays.

38. Plaintiffs are informed and believe and based thereon allege that Paramount was and is involved in the financing, production, and distribution of the 2022 Sequel in the United States and is the film's purported copyright holder.

39. Without a newly secured license, Paramount's exploitation of the 2022 Sequel in the United States constitutes ongoing intentional infringement of the Yonays' copyright, including without limitation, their exclusive right to "prepare derivative works based upon the copyrighted [W]ork," 17 U.S.C. § 106(2), which Paramount had owned pursuant to the 1983 Agreement, but lost on January 24, 2020, and willfully proceeded to exploit nonetheless.

40. Paramount was placed on clear notice of these issues on January 23, 2018 when the Yonays served Paramount with their statutory Notice of Termination, effective January 24, 2020. On May 11, 2022, the Yonays sent Paramount a cease-and-desist letter regarding the 2022 Sequel. On May 13, 2022, Paramount responded in total denial of the fact that its 2022 Sequel was obviously derivative of the Story. Paramount additionally argued that the 2022 Sequel was "sufficiently completed" by January 24, 2020 (the effective termination date) in a disingenuous attempt to bootstrap the 2022 Sequel into the "prior derivative works" exception to termination, 17 U.S.C. § 203(b)(1).

41. Plaintiffs are informed and believe by Paramount's conduct, and based thereon allege that Paramount will continue to prepare, produce, copy, distribute, exploit, and/or authorize others to prepare, produce, copy, distribute, or exploit the infringing 2022 Sequel and other derivative works which copy and exploit the Story in violation of the Copyright Act.

42. As a direct and proximate result of Paramount's actions, the Yonays will suffer imminent and irreparable harm, much of which cannot be reasonably or adequately measured or compensated in damages.

## COUNT I: BREACH OF CONTRACT

43. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 42 inclusive, as though fully set forth herein.

44. The 1983 Agreement was a valid contract entered into by the Author and Paramount.

45. The Yonays are the heirs of the Author and, as such, are the successors-in-interest to the Author's rights and entitlements under the 1983 Agreement.

46. The Author fulfilled any and all of his obligations and has performed and/or complied with any and all terms and conditions of the 1983 Agreement that the Author was required to perform and/or comply with, and is in no matter or respect in breach of the 1983 Agreement.

47. The Yonays, as the Author's successors, are likewise in no matter or respect in breach of the 1983 Agreement.

48. In the 1983 Agreement, Paramount expressly agreed "to announce on the film of any motion picture photoplay that may be produced by it hereunder and substantially based upon or adapted from said work or any version or adaptation thereof, substantially incorporating the plot, theme, characterizations, motive and treatment of said work or any version or adaptation thereof, that said motion picture photoplay is based upon or adapted from or suggested by a work written by the Author, or words to that effect[.]"

49. The 1986 Film was unquestionably based upon or adapted from the Story and substantially incorporated the plot, theme, characterizations, motive and treatment of the Story. As such, the 1983 Agreement obligated Paramount "to

announce on the [1986 Film] . . . that said motion picture photoplay is based upon or adapted or suggested by a [Story] written by the Author", i.e., to give the Author credit on the 1986 Film. Accordingly, Paramount provided the Author and his Story with credit on the 1986 Film just as it was required to do.

50. The 2022 Sequel was also substantially based upon or adapted from the Story and incorporated the plot, theme, characterizations, motive and treatment of the Story. As such, the 1983 Agreement obligated Paramount "to announce on the [2022 Sequel] . . . that said motion picture photoplay is based upon or adapted or suggested by a [Story] written by the Author."

51. In addition, the 1986 Film easily qualifies as an "adaptation" of the Story which Paramount obviously purchased in the 1983 Agreement to develop and produce a film based thereon. Accordingly, Paramount was obligated under the terms of the 1983 Agreement to provide credit to the Author and his Story on the 2022 Sequel because, at a minimum, the 2022 Sequel was "substantially based upon or adapted from . . . [an] adaptation" of the Story, i.e., the 1986 Film, and "substantially incorporate[ed] the plot, theme, characterizations, motive and treatment of said . . . adaptation thereof," the 1986 Film. The 2022 Sequel not only included these elements from the 1986 Film, it even included clips from the 1986 Film.

52. Paramount willfully failed to provide the Author with credit on the 2022 Sequel, as required by the 1983 Agreement, breaching the 1983 Agreement.

53. Further, Paramount's attempts to craft around giving the Author credit by claiming, in bad faith, that the 2022 Sequel was not based on the Story nor any adaption based on the Story (i.e., the 1986 Film), breached the implied covenant of good faith and fair dealing in the 1983 Agreement.

54. In so doing, Paramount did not act fairly and in good faith.

55. As a direct and proximate result of Paramount's breach of the 1983 Agreement, the Yonays have suffered damages, including but not limited to the

1  diminution of the Author's stature as a writer and the consequent diminution of
2  the value of the Author's Story and all of the Author's other works, in an amount
3  to be adjudicated and determined at trial, plus pre-judgment interest.

4      56.    The Yonays have no adequate remedy at law for many of their
5  injuries suffered due to Paramount's breach and failure to provide the Author with
6  credit on the 2022 Sequel, and such injuries cannot be reasonably, adequately, or
7  precisely measured or compensated in damages.

8      57.    The Yonays are therefore entitled to a permanent injunction ordering
9  Paramount, its agents, employees, licensees and assigns, to provide the Author
10 and his Story with credit on the 2022 Sequel in compliance with the terms of the
11 1983 Agreement.

## COUNT II: DECLARATORY RELIEF

13     58.    Plaintiffs re-allege and incorporate by reference paragraphs 1
14 through 57 inclusive, as though fully set forth herein.

15     59.    By reason of the foregoing facts, an actual and justiciable
16 controversy has arisen and now exists between the Yonays and Paramount
17 regarding whether Paramount continued after January 24, 2020 to have the rights
18 to produce and exploit the 2022 Sequel and other derivative works based in whole
19 or in part on the Story and the 1986 Film, derived from the Story.

20     60.    As of January 24, 2020, the Yonays own all rights in and to an
21 enforceable copyright to the Author's original Story.

22     61.    The Yonays contend and Paramount denies that the 2022 Sequel does
23 not qualify for the "prior derivative works exception" under 17 U.S.C. §203(b)(1)
24 because it was not completed until long after January 24, 2020.

25     62.    The Yonays contend and Paramount denies that the 2022 Sequel, like
26 the 1986 Film, is derived from the Author's Story.

27     63.    The Yonays contend and Paramount denies that, but for the Story, the
28 1986 Film and 2022 Sequel would not exist.

64. The Yonays therefore desire a judicial determination that the 2022 Sequel is derivative of Ehud Yonay's Story.

65. The Yonays further desire a judicial determination that Paramount does not have any rights to make, exploit, or distribute the 2022 Sequel or any other derivative work based in whole or in part on the Story, and/or the 1986 Film (as derived from the Story), in the United States.

66. A declaration of the Court is necessary and appropriate pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, so that the Yonays may ascertain their rights with respect to the 2022 Sequel and any future derivative works based in whole or in part on the Story, and/or the 1986 Film.

## **COUNT III: COPYRIGHT INFRINGEMENT**

67. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 66 inclusive, as though fully set forth herein.

68. The Story is a wholly original Story and copyrightable subject matter under the laws of the United States.

69. The Story was originally published on April 21, 1983 and was registered in the U.S. Copyright Office on October 3, 1983 under registration number TX0001213463.

70. By its exploitation and release of the 2022 Sequel, a motion picture plainly derived from the Story, Paramount knowingly and willfully infringed, and will continue to infringe, the Yonays' copyright and rights under copyright in the Story.

71. Each infringement by Paramount and/or other parties of the Story constitutes a separate and distinct act of infringement.

72. The Yonays sent an email and certified letter to Paramount on May 11, 2022 placing Paramount on notice of its infringement, yet Paramount continues to infringe the Yonays' rights under copyright in willful disregard of and indifference to the Yonays' rights.

73. As a direct and proximate result of Paramount's copyright infringement, the Yonays have suffered and will continue to suffer severe injuries and harm, much of which cannot be reasonably or adequately measured or compensated in money damages if such wrongful conduct is allowed to continue unabated. The ongoing harm this wrongful conduct will continue to cause the Yonays is both imminent and irreparable. The Yonays' injuries and damages include, without limitation, repeated infringement of their copyright and interests, diminution of the value of their copyright and interests, loss of customers, dilution of goodwill, and injury to their business reputation.

74. The Yonays are further entitled to recover from Paramount the damages, including pre-judgment interest, they sustained and will sustain, and any income, gains, profits, and advantages obtained by Paramount as a result of its wrongful acts alleged hereinabove, in an amount which cannot yet be fully ascertained, but which shall be assessed at the time of trial.

75. Alternatively, the Yonays are entitled to the maximum statutory damages recoverable, or for such other amounts as may be proper, pursuant to 17 U.S.C. § 504.

76. The Yonays are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

77. By reason of Paramount's ongoing copyright infringement, the Yonays have sustained and, unless and until Paramount is enjoined, will continue to sustain substantial imminent and irreparable injury, loss and damage, including repeated infringement of their copyright and interests, diminution of the value of their copyright and interests, loss of customers, dilution of goodwill, and injury to their business reputation.

78. The Yonays have no adequate remedy at law for many of their injuries in that such injuries cannot be reasonably, adequately, or precisely measured or compensated in damages if such wrongful conduct is not restrained

and is allowed to continue unabated.

79. Pursuant to 17 U.S.C. § 502, the Yonays are entitled to a preliminary injunction during the pendency of this action and a permanent injunction ordering that Paramount, its agents, employees, licensees and assigns be enjoined from producing, reproducing, distributing and exploiting or authorizing the production, reproduction, distribution or exploitation of the 2022 Sequel and ancillary products based thereon, derived from the Story, and from engaging in any further violations of the Copyright Act.

## PRAYER FOR RELIEF

WHEREFORE, the Yonays pray for judgment against Paramount as follows:

### ON THE FIRST CLAIM FOR RELIEF

1. For compensatory and consequential damages, according to proof in an amount determined at trial, together with interest thereon as provided by law, plus pre-judgment interest; and

2. For a permanent injunction ordering Paramount, its agents, employees, licensees and assigns, to specifically perform pursuant to the terms of the 1983 Agreement by providing the Author and his Story with credit on the 2022 Sequel.

### ON THE SECOND CLAIM FOR RELIEF

3. For a declaration that the 2022 Sequel is derivative of Ehud Yonay's Story;

4. For a declaration that, as of January 24, 2020, Paramount does not have and did not have any rights to make, develop, produce, or distribute the 2022 Sequel or any other derivative work based in whole or in part on the Story and/or the 1986 Film (as derived from the Story); and

5. For an order preliminarily during the pendency of this action and thereafter, permanently, enjoining Paramount, its officers, agents, employees,

- 15 -

licensees and assigns, and all persons acting in concert with it, from developing, producing, or distributing the 2022 Sequel and any other derivative work based in whole or in part on the Story and/or the 1986 Film.

ON THE THIRD CLAIM FOR RELIEF

6. For an order preliminarily during the pendency of this action and thereafter, permanently, (i) enjoining Paramount, its officers, agents, employees, licensees and assigns, and all persons acting in concert with it, from infringing the copyright in the Story, in any manner, and (ii) enjoining Paramount, its officers, agents, employees, licensees and assigns, and all persons acting in concert with it, from engaging in or authorizing the production, reproduction, distribution, display and/or exploitation of the infringing 2022 Sequel and ancillary products based thereon, derived from the Story, without a new license from the Yonays;

7. For compensatory and consequential damages, according to proof in an amount determined at trial, together with interest thereon as provided by law;

8. For an accounting and restitution to the Yonays of all gains, profits and advantages Paramount has derived from its production, distribution, display and exploitation of the infringing 2022 Sequel, ancillary exploitations based thereon, and from its copyright infringement of the Story;

9. In the alternative to actual damages, for statutory damages pursuant to 17 U.S.C. §504(c), which election the Yonays shall make prior to the rendering of final judgment herein; and

10. For such other and further relief and remedies available under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, which the Court may deem just and proper.

ON ALL CLAIMS FOR RELIEF

11. For the Yonays' costs of suit;

12. For interest at the highest lawful rate on all sums awarded the Yonays other than punitive damages;

13. For reasonable attorneys' fees; and

14. For such other and further relief as the Court deems just and appropriate.

DATED: August 31, 2022

Respectfully Submitted,

TOBEROFF & ASSOCIATES, P.C.

By:     */s/ Marc Toberoff*
         Marc Toberoff

Marc Toberoff
mtoberoff@toberoffandassociates.com
Jaymie Parkkinen
jparkkinen@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Alex Kozinski
alex@kozinski.com
719 Yarmouth Rd, Ste 101
Palos Verdes Estates, CA 90274
Telephone: (310) 541-5885
Facsimile: (310) 265-4653

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury for all issues triable to a jury.

DATED: August 31, 2022　　　TOBEROFF & ASSOCIATES, P.C.

By:　　　*/s/ Marc Toberoff*
　　　　　Marc Toberoff

Marc Toberoff
*mtoberoff@toberoffandassociates.com*
Jaymie Parkkinen
*jparkkinen@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Alex Kozinski
*alex@kozinski.com*
719 Yarmouth Rd, Suite 101
Palos Verdes Estates, CA 90274
Telephone: (310) 541-5885
Facsimile: (310) 265-4653

*Attorneys for Plaintiffs*