MOLLY M. LENS (S.B. #283867)
  mlens@omm.com
DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:   +1 310 553 6700
Facsimile:    +1 310 246 6779

*Attorneys for Defendant*
*Paramount Pictures Corporation*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOSH YONAY and YUVAL YONAY, | Case No. 2:22-CV-3846-PA |
| Plaintiffs, | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and DOES 1-10, | **[REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]** |
| Defendants. | **Hearing Date:** November 7, 2022 **Hearing Time:** 1:30 PM **Place:** Courtroom 9A **Judge:** Hon. Percy Anderson |

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ............................................................... 1

II.   PLAINTIFFS' COPYRIGHT DOES NOT EXTEND TO FACTS ................ 1

III.  PPC'S MOTION TO DISMISS IS APPROPRIATE ........................... 3

IV.   THE WORKS ARE NOT SUBSTANTIALLY SIMILAR ..................... 5

    A.    There Is No Substantial Similarity In The Selection And
        Arrangement Of Unprotectable Elements .......................... 6

    B.    There Is No Substantial Similarity In The Protectable Elements ........ 8

V.    THE CONTRACT CLAIM FAILS ............................................ 11

VI.   CONCLUSION ................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfaro v. Cmty. Hous. Improvement Sys. & Plan. Assn., Inc.*,
171 Cal. App. 4th 1356 (2009)................................................................12

*Alfred v. Walt Disney Co.*,
821 F. App'x 727 (9th Cir. 2020)........................................................3, 4

*Benay v. Warner Bros. Entm't, Inc.*,
607 F.3d 620 (9th Cir. 2010)..............................................................9, 10

*Bernal v. Paradigm Talent and Literary Agency*,
788 F. Supp. 2d 1043 (C.D. Cal. 2010)..............................................5, 11

*Carlini v. Paramount Pictures Corp.*,
2021 WL 911684 (C.D. Cal. Feb. 2, 2021)............................................7

*Carlini v. Paramount Pictures Corp.*,
2022 WL 614044 (9th Cir. Mar. 2, 2022) ..............................................3

*Cavalier v. Random House, Inc.*,
297 F.3d 815 (9th Cir. 2002)................................................................9

*Corbello v. DeVito*,
844 F. Supp. 2d 1136 (D. Nev. 2012) ....................................................7

*Corbello v. Valli*,
974 F.3d 965 (9th Cir. 2020)........................................................*passim*

*De Acosta v. Brown*,
146 F.2d 408 (2d Cir. 1944) ...............................................................2, 3

*Eckes v. Card Prices Update*,
736 F.2d 859 (2d Cir. 1984) ....................................................................7

*Esplanade Prods. v. Walt Disney Co.*,
768 F. App'x 732 (9th Cir. 2019)............................................................5

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ...............................................................................2

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Funky Films, Inc. v. Time Warner Entm't Co.*,
    462 F.3d 1072 (9th Cir. 2006) .................................................................. 10

*Gable v. Nat'l Broad. Co.*,
    727 F. Supp. 2d 815 (C.D. Cal. 2010) ....................................................... 7

*Harper & Row v. Nation Enters.*,
    471 U.S. 539 (1985) .................................................................................... 7

*Hathaway v. Caputo*,
    2021 WL 1862248 (D. Ariz. May 10, 2021) .......................................... 4, 7

*Headlands Rsrv., LLC v. Ctr. for Nat. Lands Mgmt.*,
    523 F. Supp. 2d 1113 (C.D. Cal. 2007) .................................................... 12

*Herzog v. Castle Rock Entm't*,
    193 F.3d 1241 (11th Cir. 1999) ................................................................ 11

*Heusey v. Emmerich*,
    2015 WL 12765115 (C.D. Cal. Apr. 9, 2015) ............................................ 4

*Hoehling v. Universal City Studios, Inc.*,
    618 F.2d 972 (2d Cir. 1980) ......................................................... 1, 2, 3, 11

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ............................................................... 3, 7

*Karmo v. Morgan Creek Ent. Grp.*,
    2019 WL 3059463 (C.D. Cal. Apr. 12, 2019) ........................................... 4

*Keeling v. Hars*,
    809 F.3d 43 (2d Cir. 2015) ......................................................................... 7

*Los Angeles Times v. Free Republic*,
    2000 WL 565200 (C.D. Cal. Apr. 4, 2000) ............................................... 7

*Masterson v. Walt Disney Co.*,
    821 F. App'x 779 (9th Cir. 2020) ........................................................... 5, 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Metcalf v. Bochco,*
  294 F.3d 1069 (9th Cir. 2002) ...................................................................7

*Nautilus Ins. Co. v. Mona Fabrication Co.,*
  2009 WL 1211349 (N.D. Ill. May 5, 2009) ..........................................12

*Olson v. Nat'l Broad. Co.,*
  855 F.2d 1446 (9th Cir. 1988) .................................................................10

*Pimentel v. A&E Network Support / Hist. Channel,*
  2018 WL 10579549 (D.N.J. May 18, 2018) ...........................................4

*Rentmeester v. Nike, Inc.,*
  883 F.3d 1111 (9th Cir. 2018) ............................................................1, 5

*Satava v. Lowry,*
  323 F.3d 805 (9th Cir. 2003) ....................................................................6

*Shame on You Prods., Inc. v. Banks,*
  120 F. Supp. 3d 112 (C.D. Cal. 2015) ................................................5, 10

*Skidmore v. Led Zeppelin,*
  952 F.3d 1051 (9th Cir. 2020) .............................................................6, 7

*Swirsky v. Carey,*
  376 F.3d 841 (9th Cir. 2004) ....................................................................4

*Tabachnik v. Dorsey,*
  2005 WL 1668542 (S.D.N.Y. July 15, 2005) ..........................................4

*Three Boys Music Corp. v. Bolton,*
  212 F.3d 477 (9th Cir. 2000) ....................................................................5

*Wells Fargo Bank, N.A. v. Collins,*
  2010 WL 3303663 (S.D. Tex. Aug. 19, 2010) .......................................12

*Wild v. NBC Universal,*
  513 F. App'x 640 (9th Cir. 2013) .............................................................5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Zindel v. Fox Searchlight Pictures, Inc.*,
    815 F. App'x 158 (9th Cir. 2020)........................................................3, 4

**Other Authorities**

4 Nimmer on Copyright §2.11[C] (2022)..................................................2

vi

I.     **INTRODUCTION.**

Plaintiffs do not allege that the Article contains a single fictional element. Nor do Plaintiffs allege that *Maverick* paraphrases, much less copies verbatim, the Article's actual expression.  And Plaintiffs do not identify any particular sequence that the works purportedly share.  Basic copyright law thus dictates that the FAC be dismissed.  *Corbello v. Valli*, 974 F.3d 965, 971 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2856 (2021); *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1123 (9th Cir. 2018).

Plaintiffs nevertheless argue that some recent cases have declined to dismiss infringement cases at the pleading stage.  But Plaintiffs cite no such cases involving *factual* works and ignore that the Ninth Circuit just confirmed in a published decision that substantial similarity can be decided with respect to non-fiction works as a matter of law.  *Corbello*, 974 F.3d at 971.  Here, after filtering out unprotected facts, there is no similarity—much less substantial similarity—between the works. The copyright claims should be dismissed with prejudice.  So too, should the contract claim, which fails because "and" does not mean "or," as Plaintiffs claim.

II.    **PLAINTIFFS' COPYRIGHT DOES NOT EXTEND TO FACTS.**

As explained in the Motion, factual works like the Article receive limited copyright protection, extending only to original *expression*, and not to the facts themselves.  Mot. at 9–11.  When assessing substantial similarity, courts must "filter out and disregard" the unprotected facts.  *Corbello*, 974 F.3d at 975.  For this reason, copyright infringement claims involving "works of history … are rarely successful" absent the "*wholesale usurpation* of [a plaintiff's] expression." *Hoehling v. Universal City Studios, Inc*., 618 F.2d 972, 974 (2d Cir. 1980).[1]

Even after amending the complaint with the benefit of PPC's first motion to dismiss (and surely mindful of their Rule 11 obligations), Plaintiffs cannot identify a single fictional element in the Article.  They concede that the Article is a "[j]ournalist[ic]" work incorporating "factual elements" that was published in a

---

[1] All emphasis added unless noted otherwise.

magazine specializing in "long-form non-fiction." FAC ¶ 21; Opp. at 2, 9. Their new chart of alleged similarities likewise fails to point out any fictional elements, and confirms that virtually every alleged similarity between the works is based on an "*Underlying Fact*" taken from the Article. Toberoff Decl., Ex. 1. Plaintiffs' inability to even allege any fictional elements makes plain that their copyright claims are not plausible.[2] Plaintiffs' repeated references to the Article's allegedly "cinematic" recounting of historical facts does not alter that conclusion. Opp. at 1, 2, 9, 10, 14, 16. "Cinematic" does not mean "fictional," and an allegedly "cinematic" portrayal does not give Plaintiffs ownership over the underlying facts.[3]

Tellingly, the Opposition virtually ignores the Ninth Circuit's recent published decision in *Corbello*, which makes plain that their claims fails. The unanimous panel held, in sharply similar circumstances, that similarities between plaintiff's ghostwritten autobiography and the musical *Jersey Boys* could not support an infringement claim as a matter of law—even though it was undisputed that individuals used the autobiography in their research for the musical.[4] *Id.* at

---

[2] Plaintiffs' failure to allege that the Article contains fictional elements renders unnecessary the asserted truths doctrine. Opp. at 10-11; *Corbello*, 974 F.3d at 978 (doctrine applies when the plaintiff "contends that … elements are ***actually fictional***"). Had Plaintiffs so alleged, however, the doctrine would apply. *See* Mot. at 10-11; 4 Nimmer on Copyright §2.11[C] (2022) (where "the work is written as a news story, that form, in itself, would seem to imply a representation that the work is entirely factual"); *Hoehling*, 618 F.2d at 975, 979 (asserted facts were in public domain, "whether correct or incorrect," where book written in a "reportorial style" was "presented as a factual work").

[3] Contrary to Plaintiffs' contentions, Opp. at 9, 22-23, the Motion does not dispute the *validity* of Plaintiffs' copyright. Plaintiffs' argument reveals the fundamental flaw in their infringement claim—"the mere fact that [the Article] is copyrighted does not mean that every element" therein is protected. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991); *Corbello* 974 F.3d at 971.

[4] Plaintiffs cite *Corbello* for the proposition that "the Story's cinematic expression of any purported facts [and] the selection and arrangement of those facts" is protected, Opp. at 13, but *Corbello* said no such thing, and found "no viable selection and arrangement argument." 974 F.3d at 974 n.2. Plaintiffs also mischaracterize *De Acosta v. Brown*, 146 F.2d 408 (2d Cir. 1944) as simply involving the "original treatment of … [a] historic

REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:22-CV-3846-PA

972.  Plaintiffs instead ask the Court to consider an inapposite out-of-circuit case, *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002).  *Jacobsen* cannot help Plaintiffs, as it held that the alleged infringing work "contains enough material for a trier of fact to find *verbatim copying*," and specifically did not address "whether close paraphrasing of a historical work is sufficient to establish a copyright violation."  *Id.* at 946, 948 (defendant "reproduce[d] [plaintiff's] words exactly").  In contrast, Plaintiffs do not—and cannot—even allege that *Maverick* "closely paraphrases" the Article, much less make any claim of verbatim copying.

## III.   PPC'S MOTION TO DISMISS IS APPROPRIATE.

PPC's Motion identified *15* recent authorities—including published Ninth Circuit decisions—confirming that substantial similarity may be decided on a motion to dismiss.  Mot. at 11-12.  Plaintiffs make *no* attempt to refute these authorities, but nevertheless argue that the Ninth Circuit has recently "curbed" such dismissals.  Opp. at 4.  In fact, the Ninth Circuit confirmed their propriety just a few months ago.  *Carlini v. Paramount Pictures Corp.*, 2022 WL 614044, at *1 (9th Cir. Mar. 2, 2022), *cert. denied*, 2022 WL 4651860 (U.S. Oct. 3, 2022).

Unsurprisingly, courts sometimes deny Rule 12 motions after finding that the plaintiff plausibly alleged substantial similarity.  Opp. at 4-6.  Needless to say, such holdings are specific to the works before those courts.  Moreover, none of the authorities that Plaintiffs cite involve a *factual* work like the Article, and thus are all distinguishable.  *See id.*  Plaintiffs rely heavily on two unpublished cases, *Zindel v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158 (9th Cir. 2020) and *Alfred v. Walt Disney Co.*, 821 F. App'x 727 (9th Cir. 2020), but these cases not only concerned *fictional* works, but also whether certain alleged similarities involved "unprotectable literary tropes" rather than protectable expression.  *Zindel*, 815 F. App'x at 160; *Alfred*, 821 F. App'x at 729 (holding that additional evidence would

---

character," Opp. at 13, but it involved the infringement of "fictionalized happenings," including a non-existent lover, in a screenplay about a historic character, *id.* at 409-10.

REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:22-CV-3846-PA

help inform whether shared elements were "unprotected generic, pirate-movie tropes").  Here, by contrast, there is no conceivable need for discovery to determine whether any elements of the Article are unprotectable "tropes," because the relevant aspects of the Article are ***factual***—and thus, unprotectable.[5]  Non-fiction works are particularly well suited to Rule 12 dismissals, as the unprotected facts are easily filtered out.  *See, e.g.*, *Heusey v. Emmerich*, 2015 WL 12765115, at \*4-5 (C.D. Cal. Apr. 9, 2015), *aff'd*, 692 F. App'x 928 (9th Cir. 2017) (granting dismissal after filtering out "thirty-eight historical facts"); *Tabachnik v. Dorsey*, 2005 WL 1668542, at \*5 (S.D.N.Y. July 15, 2005) (granting dismissal because "[a]lthough [defendant] does state some of the same facts as [plaintiff], he does so in his own distinct style and wording"); *Hathaway v. Caputo*, 2021 WL 1862248, at \*7 (D. Ariz. May 10, 2021) (author of biography failed to state infringement claim); *Pimentel v. A&E Network Support / Hist. Channel*, 2018 WL 10579549, at \*3 (D.N.J. May 18, 2018) (granting dismissal where "similarities … [we]re based on common historical facts"); *see also Karmo v. Morgan Creek Ent. Grp.*, 2019 WL 3059463, at \*6 (C.D. Cal. Apr. 12, 2019) (Anderson, J.) (granting dismissal and finding that plaintiff "cannot establish [infringement] based on the fact that [the works] are both about Tupac, or even that both focus on … untold aspects of [his] life" because "[f]acts … are not protected"); *Corbello*, 974 F.3d at 976 ("filter[ing] out and disregard[ing]" facts and affirming grant of judgment as a matter of law).

Plaintiffs cite *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004), a musical works case, for the proposition that the extrinsic test *always* "requires expert testimony," Opp. at 7, but this is not the law.[6]  The critical question is whether a

---

[5] *Zindel* also held that discovery could determine the qualitative significance of the works' "plausibly alleged shared plot sequence."  815 F. App'x at 160.  Here, setting aside that the Article is factual, there is no similarity in the works' plots, and nothing resembling the allegedly lengthy shared plot sequence in *Zindel*.  Mot. at 13-15; *infra* at 8-10.

[6] *Swirsky* in fact quoted *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000), another case involving musical works, which merely stated that the extrinsic test "*often* requires analytical dissection of a work and expert testimony."  *Id.* at 485.

REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:22-CV-3846-PA

plaintiff has stated a plausible claim, such that expert testimony could be helpful. *Masterson v. Walt Disney Co.*, 821 F. App'x 779, 781 (9th Cir. 2020); *Rentmeester*, 883 F.3d at 1123.  Necessarily, the answer depends on the nature of the works, and accordingly—even after *Swirsky*—the Ninth Circuit has *repeatedly* rejected arguments that courts must consider "expert testimony" before dismissing an infringement claim involving even *fictional* literary works, much less factual ones.[7]

Here, there are neither similarities in protectable expression nor similarities in the "particular" sequence of unprotected elements, *infra* at 6, and Plaintiffs do not explain how an expert could alter that conclusion, *see Wild v. NBC Universal*, 513 F. App'x 640, 641 n.1 (9th Cir. 2013) (affirming dismissal where plaintiff failed to "articulate[] *how* an expert could assist the court's analysis").  After all, unlike determining whether a work includes generic "tropes," Opp. at 12—which could, in certain cases, turn on whether an element was a trope at the time of authorship—there is no need for expert testimony to establish whether something is a fact, particularly where there is no claim by Plaintiffs that any element is fictional.

## IV.   THE WORKS ARE NOT SUBSTANTIALLY SIMILAR.

Given that the Article is a factual work and there is no claim of verbatim copying or even close paraphrasing, it is unsurprising that Plaintiffs cannot allege that the Article and *Maverick* are substantially similar.[8]

---

[7] *See Masterson*, 821 F. App'x at 781 (affirming dismissal because "determining substantial similarity does not necessarily require expert testimony"); *Esplanade Prods. v. Walt Disney Co.*, 768 F. App'x 732, 734 (9th Cir. 2019) ("No discovery or expert testimony could show how the works are similar, so the claim is not plausible …."); *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 112, 1144, 1147 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir. 2017) ("[C]ourts routinely disregard expert testimony in conducting the extrinsic test …."); *see also Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1062 (C.D. Cal. 2010), *aff'd* 438 F. App'x 587 (9th Cir. 2011) ("[E]xpert testimony is far less critical in a case like this than it is in a case where specialized knowledge is required to dissect the objective components of the … works.").

[8] Plaintiffs do not dispute that dismissal of the copyright infringement claim also requires dismissal of the declaratory judgment claim.  *See* Mot. at 23.

REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:22-CV-3846-PA

A.    **There Is No Substantial Similarity In The Selection And Arrangement Of Unprotectable Elements.**

Plaintiffs' primary argument is that the works share a substantially similar selection and arrangement of unprotectable elements.  Opp. at 12-15.  Not so.  A "selection and arrangement" claim requires copying of the "***particular* way**" the plaintiff arranged the elements to "form a coherent pattern, synthesis or design." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1074-75 (9th Cir. 2020) (*en banc*). Establishing such a claim based on alleged copying of a ***non-fiction*** work is an especially high bar, which Plaintiffs cannot meet.  *See Corbello*, 974 F.3d at 974 n.2 ("The selection of the true stories behind the Band's most popular songs and the arrangement of those stories in roughly chronological order is not original, and … not protectable….").  *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), which Plaintiffs cite, illustrates this point:  it found no infringement in a case involving virtually identical jellyfish sculptures because a "selection and arrangement" claim "effectively would give [plaintiff] a monopoly on lifelike glass-in-glass sculptures of a single jellyfish with vertical tentacles."  *Id.* at 812.  Here, a "selection and arrangement" claim based on far less significant "similarities" in unprotectable elements would impermissibly give Plaintiffs a monopoly over works set at a real-life naval training facility, turning even factual research into infringement.

Indeed, as Plaintiffs themselves acknowledge, a selection and arrangement claim lies where "the *particular* sequence in which an author strings together a significant number of unprotectable elements."  Opp. at 12 (citing *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002));[9] *see also Hathaway*, 2021 WL 1862248, at *7 (rejecting claim where works were "not in the same order"); *Masterson*, 821 F.

_____

[9] Plaintiffs ignore *Skidmore*'s criticism of *Metcalf*.  952 F.3d at 1075 ("[c]onfusion followed in *Metcalf*'s wake," resulting in attempts "to cabin *Metcalf*" or otherwise "sidestep[]" the decision altogether).  *Metcalf* is also distinguishable because it involved virtually identical similarities occurring in the same sequence.  *See Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 843-44 (C.D. Cal. 2010) ("In *Metcalf*, … the 'generic similarities' were voluminous, nearly identical, and occurred in the same pattern.").

REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:22-CV-3846-PA

App'x at 782 ("scattered" similarities insufficient to state a claim); *Carlini v. Paramount Pictures Corp.*, 2021 WL 911684, at *12 (C.D. Cal. Feb. 2, 2021), *aff'd*, 2022 WL 614044 (9th Cir. Mar. 2, 2022)  (finding that "sixteen general similarities did not constitute a "concrete pattern").[10]

Rather than identify a "particular" shared sequence that is allegedly the "same," Plaintiffs merely claim that both works "intersperse[e]" "exhilarating [and] … daring flight maneuvers" with a focus on the "personal backgrounds and idiosyncrasies" of the pilots, and "juxtapos[e] … ethereal descriptions of the sensation of flying[] with intense cinematic action and quiet moments of reflection at the base."  Opp. at 14.  Plaintiffs therefore make *no* argument that they satisfy the test.  Nor can they because, as explained at length in PPC's Motion, the plots and sequence of the two works are fundamentally dissimilar.  Mot. at 2-6, 13-14.

Moreover, in their limited efforts to identify a similarity in "sequencing," Plaintiffs mischaracterize the works.  For example, Plaintiffs claim that training sessions in the works are followed by "debriefing and tactical analysis in the classroom," Opp. at 19, but as the Motion explained, the Article does not depict a single classroom scene—which Plaintiffs do not dispute.  Mot. at 14 n.10.[11] Similarly, the claim that "each works employ[s] a non-linear approach to its narrative in the form of flashbacks and cutaways," Opp. at 19, is wrong.  In contrast

---

[10] Plaintiffs' authorities, Opp. at 13, do not help them because they largely involved **verbatim** copying, which is not alleged here.  *See Harper & Row v. Nation Enters.*, 471 U.S. 539, 547 (1985) (copying of "verbatim quotes … totaling between 300 and 400 words"); *Los Angeles Times v. Free Republic*, 2000 WL 565200, at *4 (C.D. Cal. Apr. 4, 2000) (defendant made "exact copies of whole or substantial portions of articles"); *Keeling v. Hars*, 809 F.3d 43, 50-51 (2d Cir. 2015) (copying and performance of plaintiff's entire work); *Eckes v. Card Prices Update*, 736 F.2d 859, 862 (2d Cir. 1984) (works were "substantially the same"); *Jacobsen*, 287 F.3d at 946 ("the copying goes beyond close paraphrasing and reproduces [plaintiff]'s words exactly").  And *Corbello v. DeVito*, 844 F. Supp. 2d 1136, 1163 (D. Nev. 2012) merely confirms that historical facts are not protectable, but the "expression" of those facts may be.

[11] In any event, that classroom debriefing scenes follow training sessions is a fact about the real-life Naval training facility, which Plaintiffs do not own.

REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:22-CV-3846-PA

to the Article, which has a non-linear structure and jumps between events spread over two decades, *Maverick* is almost entirely linear, save for two brief flashbacks.

### B.      There Is No Substantial Similarity In The Protectable Elements.

Plaintiffs next argue that the works are substantially similar in protectable expression.  But the only similarities between the works derive from the Article's unprotectable underlying facts—facts that Plaintiffs do not attempt to filter out, ignoring the extrinsic test's requirements, *e.g.*, *Corbello*, 974 F.3d at 975—and it necessarily follows that there is no similarity in protectable expression.

**Plot and Sequence.**  As explained in PPC's Motion, the plots and sequence of the two works are fundamentally dissimilar, and any allegedly similar "plot elements" are based on facts that nobody, including Plaintiffs, can claim to own. *See* Opp. at 13-16; *Corbello*, 974 F.3d at 976 (filtering out facts and finding no substantial similarity).  Unable to refute this, Plaintiffs resort to misrepresenting the works; notably, Plaintiffs do not actually cite to the relevant portions of the works themselves, but only to their self-serving chart of alleged similarities.

For example, Plaintiffs' claim that both works "focus on the relationship between two jocular pilots at the 'Top Gun' training base," Opp. at 15, improperly seeks to compare the Article to the original *Top Gun* film.  Mot. at 14.  And, while Plaintiffs claim that both works introduce a "decorated pilot with real combat experience who is asked to serve as an instructor at Top Gun," Opp. at 15 (citing Toberoff Decl., Ex. 1, Rows 16, 18, 20-21), the Article merely mentions that Randall Cunningham, like other Top Gun graduates, returned as an instructor in the 1970s, with no details of his tenure discussed.  McNally Decl., Ex. A at 165. Similarly, Plaintiffs argue that both works use "an Admiral who disapproves of hotshots … as an obstacle to be overcome," Opp. at 15, but the Article merely mentions that an Admiral took command of Top Gun in 1977 and tried to restore discipline and decorum, before being replaced in 1979.  McNally Decl., Ex. A at 165.  This historical fact, described in two sentences, is not presented as an

1    "obstacle to be overcome."[12]  In any event, such facts are not protectable.[13]

2          Plaintiffs also repeatedly emphasize that both works depict a bar on the naval

3    base, popular with the pilots, which features a brass bell that is rung when "house

4    rules" are broken.  Opp. at 15-16, 18, 19.  Plaintiffs' point is unclear, as Plaintiffs

5    do not, and cannot, allege that the bell, and the "house rules," are anything other

6    than factual features of a real-life Navy bar, which Yonay did not invent.[14]

7          Courts in this Circuit have repeatedly rejected infringement claims based on

8    far greater plot similarities in **fictional** works.  *See e.g., Benay v. Warner Bros.*

9    *Entm't, Inc.*, 607 F.3d 620, 627 (9th Cir. 2010) (no substantial similarity between

10   two films entitled *The Last Samurai*, both of which "share the historically

11   unfounded premise of an American war veteran going to Japan to help the Imperial

12   Army by training it in the methods of modern Western warfare for its fight against a

13   samurai uprising"); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072,

14   1077-78 (9th Cir. 2006) (no substantial similarity between two works based on the

15   death of a family patriarch who leaves his two sons to run the family funeral home,

16   both of which involved the return of one son to his hometown to help in the

17   business, another son changing his religion to aid in the business, and a competitor

18   bidding on the business); *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123

---

19   [12] No matter how many times Plaintiffs repeat the point, *Maverick*'s brief depiction of a

20   character playing darts is not "substantially similar" to the Article's use of a bullseye as a
     metaphor for the aviation caste system.  *See* Opp. at 16.  Nor is there similarity between

21   an aircraft squadron sailing to shore in Australia on a "glorious … yacht" and Maverick
     and his love interest sailing a small sailboat across San Diego Bay.  Mot. at 14 n.10.

22   Writing a story about the Navy did not give Yonay a monopoly over depictions of boats.

23   [13] Plaintiffs incorrectly claim that plot incidents can only constitute *scènes à faire* when
     they are "indispensable" to a subject, Mot. at 11 n.5, but their cited cases say no such

24   thing, and the Ninth Circuit defines *scènes à faire* to include "situations and incidents that
     flow necessarily *or naturally* from a basic plot premise …."  *Cavalier v. Random House,*

25   *Inc.*, 297 F.3d 815, 823 (9th Cir. 2002).  In any case, the Court need not rely on the *scènes*

26   *à faire* doctrine because all the alleged similarities flow from unprotectable *facts*.

27   [14] Although certainly unnecessary to resolve the Motion, the internet is replete with video

28   footage of the real-life bar.  *See, e.g.*, https://www.youtube.com/watch?v=pxd6gj_0L1c.

                                    9                    REPLY ISO MOTION TO DISMISS FAC
                                                         CASE NO. 2:22-CV-3846-PA

(C.D. Cal. 2015), *aff'd* 690 F. App'x 519 (9th Cir. 2017) (no protectable similarity even though "both works feature a female lead character living in a big city, who breaks up with her boyfriend, gets drunk, spends a 'one-nighter' with a man she just met who works as a busboy/bartender, wakes up disoriented the next morning at his place, puts on the bright dress she was wearing the night before, and embarks on a walk of shame through the city to get to an important event").  Applying the more rigorous standard applicable to factual works, this case does not present a close call.

**Themes**.  *Maverick*'s primary themes are reconciliation and redemption, which are not explored in the Article.  Mot. at 16.  The alleged "themes" that Plaintiffs claim the works share—*e.g.*, "Western gunslinger themes," "patriotic nostalgia," "the bonds that form in war," "generational divides," and "the need for speed"—are the Article's unprotectable impression of historical events or people. *See id.*  Rather than respond to the authorities in the Motion explaining why the allegedly similar themes are not actionable, *id.*, Plaintiffs ignore them altogether.

**Dialogue**.  Plaintiffs fail to cite any "extended similarity of dialogue," which is "needed to support a claim of substantial similarity."  *See Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988).  Plaintiffs also confusingly quote "quips" from the Article without identifying *any* dialogue from *Maverick* that copies those "quips," closely or otherwise.  *See* Opp. at 17.

**Settings.**  Both works are largely set at Naval Air Station Miramar because that is where Top Gun was long located.  *See* Mot. at 18; *Benay*, 607 F.3d at 627-28 (works' settings in Japan "flow naturally from [their] shared unprotected premise").  Plaintiffs claim that the Top Gun facility relocated in the 1990s, but that relocation does not render Naval Air Station Miramar a protectable setting, given that it is an actual place that the Article chronicles. Opp. at 17.  Moreover, it is irrelevant that both works also take place in fighter jets, bars, classrooms, on the base, and at sea. These are all real places identified in the Article, and thus unprotectable.  *See* Mot. at 19; *Hoehling*, 618 F.2d at 979.  Similarly, descriptions of the base, including the

10

Article's statements regarding what the base looked like, are unprotectable.

**Characters.**  As explained in the Motion, the real people described in the Article are not protectable "characters," and even if they were, "courts require a very high degree of similarity between characters" to support an infringement claim.  Mot. at 20.  Plaintiffs do not dispute this, and do not identify any meaningful, much less protectable, similarities between the works' "characters." Plaintiffs' argument that "[b]oth Story and Sequel use characters as tools to tell the story of Top Gun," Opp. at 18, is irrelevant; Plaintiffs do not own the use of characters as "tools to tell [a] story."  *See Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1261 (11th Cir. 1999) (finding a common literary device to be unprotectable).

**Pace and Mood.**  Plaintiffs claim that the works share the mood of "ethereal beauty of blue skies and ocean" juxtaposed "against jarring, unpredictable action." Opp. at 20.  To the extent that even constitutes a "mood," it is not explored in *Maverick*, and it is also Yonay's unprotectable factual impressions of fighter jet combat training.  *See* Mot. at 19.  Similarly, the allegedly "urgent tone" that the two works share is unprotectable, since the importance of Top Gun to national security is a fact that the Article explores (although differently than in *Maverick*). Moreover, the works' pacing differ because the Article is "long-form" journalism and *Maverick* is an action film.  *See Bernal*, 788 F. Supp. 2d at 1072; FAC ¶ 21.

## V.   THE CONTRACT CLAIM FAILS.

The plain language of Paragraph 7(b) refutes the contract claim.  For a credit obligation to be triggered, a film must be "produced by [PPC] hereunder [i.e., under the Assignment] ***and*** substantially based upon or adapted from [the Article] or any version or adaptation thereof . . . ."  FAC, Ex. 2 ¶ 7(b).  These are *two* separate requirements, *both* of which must be satisfied.  *See, e.g.*, *Wells Fargo Bank, N.A. v. Collins*, 2010 WL 3303663, at *3 (S.D. Tex. Aug. 19, 2010) (the "plain and ordinary meaning" of "'and' does not mean 'or'. . . rather it is a conjunctive"), *aff'd sub nom. In re Collins*, 437 F. App'x 314 (5th Cir. 2011); *Nautilus Ins. Co. v. Mona*

REPLY ISO MOTION TO DISMISS FAC
CASE NO. 2:22-CV-3846-PA

1  *Fabrication Co.*, 2009 WL 1211349, at *3 (N.D. Ill. May 5, 2009) ("[R]eplac[ing]

2  the conjunctive term 'and' with the disjunctive term 'or'. . . does not utilize the

3  plain and ordinary meaning of the word 'and.'"); *Alfaro v. Cmty. Hous.*

4  *Improvement Sys. & Plan. Assn., Inc.*, 171 Cal. App. 4th 1356, 1379 (2009)

5  (finding no "uncertain[ty]" in deed restriction because "[a]nd" does not mean "or").

6       To try to avoid this plain language, Plaintiffs argue that Paragraph 7(b)'s two

7  requirements are actually a single requirement (a "hendiadys").  Opp. at 25.

8  Plaintiffs, however, cite no authority, and for good reason.  Their interpretation

9  would excise the "produced … hereunder" language from the contract, and thus

10  must be rejected.  *See Headlands Rsrv., LLC v. Ctr. for Nat. Lands Mgmt.*, 523 F.

11  Supp. 2d 1113, 1126 (C.D. Cal. 2007) ("Courts must interpret contractual language

12  [to] give[] force and effect to *every* provision, and not in a way which renders some

13  clauses nugatory, inoperative, or meaningless.") (emphasis in original).

14       Plaintiffs' fallback argument is equally unavailing.  They insist that even if

15  there were a separate production requirement, PPC still maintains its rights to

16  exploit *Maverick* "in all foreign territories" and distribute the film overseas.  Opp.

17  at 25.  While true, that is irrelevant:  PPC did not need Plaintiffs' rights to produce

18  *Maverick*, *supra* at § IV, and thus the film was not "produced by it []under" the

19  contract.[15]  Plaintiffs' contract claim should be dismissed.

20  **VI.   CONCLUSION.**

21       The Court should dismiss the FAC with prejudice.

22

23   Dated:  October 19, 2022                    O'MELVENY & MYERS LLP

24                                               By:   /s/ Molly M. Lens
                                                       Molly M. Lens
25
                                                 *Attorneys for Defendant*
26                                               *Paramount Pictures Corporation*

27  ────────────────────
[15] In any event, Plaintiffs themselves allege that the PPC was "involved in the …
28  production … of the 2022 Sequel in the United States."  *See* FAC ¶ 38.