MOLLY M. LENS (S.B. #283867)
  mlens@omm.com
DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
MATTHEW KAISER (S.B. #304714)
  mkaiser@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

*Attorneys for Defendant Paramount
Pictures Corporation*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOSH YONAY and YUVAL YONAY, | Case No. 2:22-CV-3846-PA-GJS |
| Plaintiffs, | **DEFENDANT PARAMOUNT PICTURES CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL** |
| v. | |
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and DOES 1-10, | |
| Defendants. | **Hearing Date:**  Aug. 21, 2023<br>**Hearing Time:**  3:00p.m.<br>**Place:**  Courtroom 640<br>**Judge:**  Hon. Percy Anderson<br>**Magistrate Judge**: Hon. Gail J. Standish<br>**Liability Disc. Cutoff:** Oct. 6, 2023<br>**Damages Disc. Cutoff:** Feb. 23, 2024 |

1

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that, on August 21, 2023, or as soon thereafter as the matter may be heard, in Courtroom 640 of this Court, located at Roybal Federal Building and United States Courthouse, 255 E. Temple Street, Los Angeles, California 90012, Defendant Paramount Pictures Corporation ("PPC") will and hereby does move pursuant to Federal Rule of Civil Procedure 37 for an order compelling Plaintiffs to adequately respond to PPC's discovery requests.

This Motion is made following PPC's repeated unsuccessful attempts to meet and confer with Plaintiffs.  Declaration of Molly M. Lens ¶¶ 17-23.  This Motion is based on the files, records, and proceedings in this action, this Notice, the Memorandum of Points and Authorities, the Declaration of Molly M. Lens and exhibits thereto, the reply memorandum that PPC intends to file, the arguments of counsel, and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision.

Dated:  July 24, 2023                    O'MELVENY & MYERS LLP

By:   */s/ Molly M. Lens*
_____
Molly M. Lens

*Attorneys for Defendant Paramount*
*Pictures Corporation*

MOTION TO COMPEL
CASE NO. 2:22-CV-3846-PA

# TABLE OF CONTENTS

**Page(s)**

I.   PRELIMINARY STATEMENT ................................................................. 1

II.   BACKGROUND ................................................................................... 1

    A.   Requests for Production ............................................................. 1

    B.   Requests for Admission and Interrogatories ................................ 3

    C.   Additional Attempts to Meet and Confer with Plaintiffs ................ 3

III.   ARGUMENT ...................................................................................... 4

    A.   The Court Should Compel Plaintiffs To Produce All Responsive Documents Within 14 Days. ........................................................ 4

        *1.   Plaintiffs' improper boilerplate objections.* ............................. 4

        *2.   Plaintiffs cannot refuse to produce documents referring or relating to California Magazine.* ........................................ 5

        *3.   Plaintiffs have no justification for their failure to produce responsive documents to RFP Nos. 1–35 & 43–49.* ................... 5

        *4.   Plaintiffs' refusal to produce documents responsive to RFP Nos. 37-42 lacks merit.* ....................................................... 6

    B.   Plaintiffs Must Answer PPC's Interrogatories .............................. 8

    C.   Plaintiffs Must Answer PPC's Requests for Admission .................. 12

IV.   CONCLUSION .................................................................................. 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

## CASES

3

*999 Corp. v. C.I.T. Corp.*,
   776 F.2d 866 (9th Cir. 1985)....................................................................14

4

*Asea, Inc. v. S. Pac. Transp. Co.*,
   669 F.2d 1242 (9th Cir. 1981)..................................................................15

5

6

*Better Care Plastic Tech. Co. v. Gredale, LLC*,
   2022 WL 2046206 (C.D. Cal. Mar. 4, 2022) ...........................................8

7

8

*Bryant v. Mattel, Inc.*,
   2007 WL 5430893 (C.D. Cal. May 18, 2007)........................................12

9

*Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*,
   175 F.R.D. 646 (C.D. Cal. 1997) .............................................................11

10

11

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ...................................................................10

12

13

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) .....................................................................9

14

*Diaz v. Heredia*,
   2022 WL 2134967 (C.D. Cal. Mar. 4, 2022) ...........................................8

15

16

*Fabric Selection, Inc. v. Just One, LLC*,
   2017 WL 8943109 (C.D. Cal. Sept. 26, 2017) .........................................8

17

18

*G Abrams Ins. v. L. Offs. Of C.R. Abrams*,
   2021 WL 4974618 (C.D. Cal. July 14, 2021) ...........................................6

19

*Gold v. Kaplan*,
   2021 WL 6618643 (C.D. Cal. Dec. 2, 2021) ............................................9

20

21

*Gravestock v. Abilene Motor Express, Inc.*,
   2017 WL 10592155 (C.D. Cal. Sept. 14, 2017).......................................11

22

23

*In re Allergan, Inc. Sec. Litig.*,
   2016 WL 10719393 (C.D. Cal. Sept. 23, 2016).......................................11

24

*In re Application of O'Keeffe*,
   2016 WL 2271697 (D. Nev. Apr. 4, 2016) ...............................................5

25

26

*L.A. Terminals, Inc. v. United Nat'l Ins. Co.*,
   340 F.R.D. 390 (C.D. Cal. 2022) ..............................................................9

27

*Local.com Corp. v. Fry's Elecs., Inc.*,
   2013 WL 12139096 (C.D. Cal. Feb. 22, 2013).........................................9

28

MOTION TO COMPEL
CASE NO. 2:22-CV-3846-PA-GJS

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Marchand v. Mercy Medical Center*,
  22 F.3d 933 (9th Cir. 1994) .................................................................... 14

4

*Meggitt (Orange Cnty.), Inc. v. Nie*,
  2015 WL 12743840 (C.D. Cal. Feb. 18, 2015) ...................................... 11

5

6

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
  2017 WL 10573941 (C.D. Cal. Nov. 16, 2017) ........................................ 5

7

*New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*,
  405 F. Supp. 3d 1233 (D.N.M. 2019) ..................................................... 15

8

9

*Prime Focus Creative Servs. Canada, Inc. v. Legend3D, Inc.*,
  2016 WL 6662724 (C.D. Cal. July 8, 2016) ............................................. 5

10

11

*R. Fellen, Inc. v. Rehabcare Grp., Inc.*,
  2016 WL 8731303 (E.D. Cal. Feb. 5, 2016) ........................................... 11

12

*Reinsdorf v. Sketchers U.S.A., Inc.*,
  2012 WL 12882125 (C.D. Cal. 2012) ....................................................... 9

13

14

*Sec. & Exch. Comm'n v. Premier Holding Corp.*,
  2021 WL 6104308 (C.D. Cal. Sept. 7, 2021) ........................................... 7

15

16

*Shayler v. Yacoub*,
  2020 WL 8812454 (C.D. Cal. Dec. 23, 2020) ........................................ 15

17

*Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*,
  2021 WL 5087362 (D. Minn. Jan. 5, 2021) ........................................... 11

18

19

*T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*,
  174 F.R.D. 38 (S.D.N.Y. 1997) .............................................................. 15

20

21

*United States ex rel. Poehling v. Unitedhealth Group, Inc.*,
  2022 WL 19913651 (C.D. Cal. Nov. 30, 2022) ...................................... 13

22

*Valley Surgical Ctr. LLC. v. Cnty. Of Los Angeles*,
  2018 WL 2189458 (C.D. Cal. May 11, 2018) ........................................... 5

23

## **OTHER AUTHORITIES**

24

*Fact*, Merriam-Webster, https://www.merriam-
  webster.com/dictionary/fact ................................................................... 10

25

26

*Fictional*, Merriam-Webster, https://www.merriam-
  webster.com/dictionary/fictional ............................................................ 10

27

Joe Pappalardo, Swing Wings, Smithsonian Magazine ........................................... 15

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Journalism*, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/journalism ........................................................ 13

*Journalist*, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/journalist ......................................................... 13

**RULES**

Fed. R. Civ. P. 36 ..................................................................................... 14

I.      **PRELIMINARY STATEMENT**

Many months ago, Defendant Paramount Pictures Corporation ("PPC") served Plaintiffs with straightforward Requests for Production, Requests for Admission, and Interrogatories.  Since then, Plaintiffs have stonewalled PPC at every turn—asserting improper objections, providing grossly deficient responses, failing to produce a single document, and refusing to meet and confer.

In response to PPC's Requests for Production, Plaintiffs agreed to produce documents responsive to 42 of the 49 requests.  Yet, five months later, they have produced exactly *zero* documents.  Plaintiffs also served wholly deficient responses to PPC's Interrogatories and Requests for Admission.  Plaintiffs cut and paste the same series of makeweight objections—fabricating ambiguity and claiming the most straightforward requests impose an undue burden on them.

Making matters worse, Plaintiffs have stopped even responding to PPC's efforts to meet and confer about Plaintiffs' failure to comply with their discovery obligations, causing further delay and now necessitating this Court's involvement.  Plaintiffs' refusal to participate in discovery is especially problematic given that Plaintiffs strenuously argued that the Court should not dismiss their case "without the benefit of a fully developed record."  Dkt. 21 at 2, 4.  The Court should compel them to produce all responsive documents and provide full, complete, non-evasive answers to PPC's Interrogatories and Requests for Admission within 14 days of the Court's ruling on this motion.

II.     **BACKGROUND**

A.      **Requests for Production**

On January 13, 2023, PPC served Plaintiffs with its First Set of Requests for Production.  Lens Decl., Ex. A.  Plaintiffs responded on February 9 with boilerplate objections of overbreadth, undue burden, vagueness, and proportionality, and further outright refused to produce any documents in response to seven of PPC's requests.  *Id.*, Ex. B.  Accordingly, on February 17, PPC sent Plaintiffs a letter

detailing the various deficiencies in Plaintiffs' responses and requesting a meet-and-confer conference the following week. *Id.*, Ex. K. Only after several follow-up requests, did Plaintiffs finally agree to make themselves available to meet and confer on March 6—nearly three weeks after the date of PPC's initial meet-and-confer letter. *Id.*, Ex. L at 3–6.

However, on the morning of March 6, mere hours before the scheduled meet and confer, Plaintiffs sent PPC a letter outlining Plaintiffs' purported issues with PPC's responses to Plaintiffs' Requests for Production. *Id.* at 3; *id.*, Ex. M. During the scheduled meet and confer, Plaintiffs refused to engage on the issues in PPC's February 17 letter unless PPC agreed to also discuss Plaintiffs' letter of that same day. *Id.*, Ex. L at 1. As PPC had not yet had an opportunity to review Plaintiffs' letter, and Plaintiffs refused to discuss PPC's February 17 letter unless a consolidated meet and confer was conducted, the meet and confer was delayed to the following day. *Id.* ¶ 20.

Then, during the March 7 meet and confer, Plaintiffs' counsel revealed that they had not even discussed the issues raised in PPC's letter with their clients. *Id.* ¶ 21. Put another way, Plaintiffs' counsel not only ignored PPC's requests to meet and confer for weeks, but even after finally agreeing to talk, they were unprepared to meaningfully discuss the relevant issues. *Id.* As a result, PPC left the March 7 meet and confer without answers to its long-pending inquiries.

Instead, Plaintiffs' counsel stated that they would confer with their clients and respond to the outstanding inquiries by March 17—a full month after PPC first raised these issues. *Id.* ¶ 21. On March 17, having received no response from Plaintiffs, PPC reached out to remind Plaintiffs of their commitment to respond by that day.[1] *Id.*, Ex. N at 3–4. PPC followed up again on March 30 and then again on April 14. *Id.* at 2. Plaintiffs did not respond to any of these outreaches.

---

[1] On March 17, PPC responded to the open issues raised in Plaintiffs' March 6 letter. Plaintiffs have not raised any issues or concerns in response thereto.

**B.     Requests for Admission and Interrogatories**

Separately, on March 7, 2023, PPC served Plaintiffs with two sets of Interrogatories and Requests for Admission, with each set containing the same four interrogatories and 22 requests for admission.  Lens Decl., Exs. C–F.  Plaintiffs served their responses on April 6.  *Id.*, Exs. G–J.  Plaintiffs refused to respond to one interrogatory on the basis of boilerplate objections and provided grossly deficient "responses" to the remaining three.  Plaintiffs were similarly evasive in "responding" to the requests for admission, refusing to admit a single request.

**C.     Additional Attempts to Meet and Confer with Plaintiffs**

On May 8, 2023 PPC sent Plaintiffs a Rule 37-1 letter addressing (1) deficiencies in Plaintiffs' responses to PPC's Interrogatories and Requests for Admission; (2) Plaintiffs' failure to produce any documents, and (3) Plaintiffs' refusal to meaningfully participate in discovery.  Lens Decl., Ex. O.  PPC suggested specific dates for a meet-and-confer conference, and requested that Plaintiff provide alternative dates if the proposed dates were unworkable.  Ten days later, after not hearing from Plaintiffs, PPC followed up.  *Id.*, Ex. N at 1.  Plaintiffs again did not respond.

As of the date of this motion, Plaintiffs still have not produced any documents or remedied any of the serious deficiencies in their written discovery responses.  *Id.* ¶ 24.  In sharp contrast, subject to its right and obligation to supplement, PPC has now completed its rolling production of documents, with PPC having produced more than 12,000 documents.[2]  *Id.* ¶ 25.

Fact liability discovery is set to close on October 6.[3]  PPC needs, *inter alia*,

---

[2] As per Judge Anderson's standing order, PPC made its first production of documents with its initial disclosures on January 20, 2023.  *See* Dkt. 10.  PPC then proceeded to make additional productions on April 21, 2023 and July 20, 2023. Lens Decl., ¶ 25.

[3] On May 8, Plaintiffs' counsel Marc Toberoff requested an extension of the discovery schedule due to undisclosed health issues.  Even though Plaintiffs are

Plaintiffs' documents and complete written discovery responses prior to their depositions.  Moreover, summary judgment motions are due on October 23.  Put simply, due to Plaintiffs' delay, time is now of the essence.

### III.   ARGUMENT

#### A.   The Court Should Compel Plaintiffs To Produce All Responsive Documents Within 14 Days.

In their February 9 responses, Plaintiffs committed to "conduct[ing] a reasonably diligent search of documents within [their] possession, custody, or control" for 42 of the 49 Requests for Production.  Lens Decl., Ex. B.  Even as to these 42 requests, however, Plaintiffs improperly limited their agreement to produce documents.  Moreover, in the intervening months, Plaintiffs have failed to produce a single document.  Even further still, as to seven of PPC's requests, Plaintiffs have outright refused to produce any relevant documents.

*1.   Plaintiffs' improper boilerplate objections.*

To the extent that Plaintiffs agreed to produce documents, they (1) only agreed to produce documents that are not "subject to a protective order or confidentiality agreement"; and (2) refused to produce any documents "equally available to the public and Defendant."  *See id*., Ex. B.  Both limitations are improper.

"Confidentiality agreements do not bar discovery, and a general interest in protecting confidentiality does not equate to privilege."  *Valley Surgical Ctr. LLC v. County of Los Angeles*, 2018 WL 2189458, at *4 (C.D. Cal. May 11, 2018) (quoting *In re Application of O'Keeffe*, 2016 WL 2771697, at *4 (D. Nev. Apr. 4, 2016) (collecting cases)).  Further, "[t]he Federal Rules do not shield publicly

---

also represented by a second firm (and Mr. Toberoff is only one attorney at his firm), PPC accommodated that request, as did the Court.  Dkts. 35–37.  That was over two months ago, however.  And, in the intervening months, Plaintiffs have continued to ignore their discovery obligations, yet found time to serve an affirmative expert report.

MOTION TO COMPEL
CASE NO. 2:22-CV-3846-PA-GJS

available documents from discovery merely because of their accessibility," and "[a] limitation of this nature would lead to patently absurd consequences," which is why "[c]ourts . . . have compelled parties to produce relevant, publicly available material that they intend to use to bolster their claims or defenses." *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2017 WL 10573941, at *6 (C.D. Cal. Nov. 16, 2017) (citation omitted); *see also Prime Focus Creative Servs. Canada, Inc. v. Legend3D, Inc.*, 2016 WL 6662724, at *3 (C.D. Cal. July 8, 2016) ("Defendant is entitled to see what plaintiff has in *its* possession, custody, or control").

### 2. Plaintiffs cannot refuse to produce documents referring or relating to California Magazine.

Request for Production No. 5 seeks "[a]ll DOCUMENTS, INCLUDING COMMUNICATIONS and AGREEMENTS, that REFER or RELATE to California Magazine." *Id.*, Ex. A at 6. This request plainly seeks information directly relevant to Plaintiffs' claims. Yet Plaintiffs have agreed to produce only "non-privileged documents that REFER or RELATE to California Magazine's *publication* of Yonay's Story." *Id.*, Ex. B at 12 (emphasis added).

Plaintiffs have no basis to potentially withhold documents related to, for instance, the writing, editing, or fact-checking of the "Top Guns" article, as opposed to its mere "publication." And Plaintiffs' own complaint makes allegations about the specific type of material published by California Magazine. *See* Dkt. 16 ¶ 21 (characterizing California Magazine "as a purveyor of 'New Journalism,' which employs unconventional literary techniques and the subjective literary style of long-form"). Thus, *all* documents in Plaintiffs' possession, custody, or control relating to California Magazine are relevant to this suit, irrespective of whether those documents pertain to the publication of "Top Guns."

### 3. Plaintiffs have no justification for their failure to produce responsive documents to RFP Nos. 1–35, 43–49.

Plaintiffs have failed to produce a single document to date. *See* Lens Decl., ¶

5

24.  Plaintiffs' conduct reflects a brazen disregard for the discovery obligations they triggered by initiating this suit.  Plaintiffs' conduct is especially egregious given that they told this Court their claims should not be decided "without the benefit of a fully developed record."  Dkt. 21 at 2, 4.  And, of course, Plaintiffs' actions also flout both the spirit and letter of Judge Anderson's standing order, which prompts parties to "obtain and produce most of what would be produced in the early stages of discovery."  *See* Dkt. 10.

> 4.   *Plaintiffs' refusal to produce documents responsive to RFP Nos. 37–42 lacks merit.*

Plaintiffs improperly refuse to produce documents in response to seven requests.

**<u>Requests for Production Nos. 36 and 42</u>** seek "[a]ll DOCUMENTS and COMMUNICATIONS that REFER or RELATE to Yonay's education, profession, or formal training" and "[a]ll DOCUMENTS, INCLUDING COMMUNICATIONS, that REFER or RELATE to YONAY's biography, resume, CV, or summary of work."  Lens Decl., Ex. A  at 10, 11.  The requested documents are relevant because they are relevant to Yonay's career as a non-fiction writer.  For example, Yonay's resume may very well describe himself as a non-fiction writer and may even describe the Article as a non-fiction work.

Beyond their ill-conceived relevance objections, Plaintiffs object to these requests as unduly burdensome.  Lens Decl., Ex. B at 34–38.  But simply saying that does not make it so.  "[T]he party resisting discovery has the burden of establishing that the request is unduly burdensome."  *G. Abrams Ins. v. Law Offs. of C.R. Abrams*, 2021 WL 4974618, at *10 (C.D. Cal. July 14, 2021).  To satisfy that burden, a party "cannot simply invoke generalized objections without describing, *in specific detail*, how each Request is overly broad and unduly burdensome by submitting affidavits or other evidence describing the nature of the burden."  *Sec. & Exch. Comm'n v. Premier Holding Corp.*, 2021 WL 6104308, at *2 (C.D. Cal. Sept.

1  7, 2021).  Here, Plaintiffs have made no effort whatsoever to satisfy their burden of
2  establishing that these requests are unduly burdensome.

3  **Request for Production No. 37** seeks "[a]ll published versions [of] any
4  works, INCLUDING books, articles, and stories, authored, in whole or in part, by
5  YONAY, INCLUDING the ARTICLE and *No Margin for Error: The Making of*
6  *the Israeli Air Force*."  *Id.*, Ex. A at 11.  Plaintiffs raise the same boilerplate
7  relevance and undue burden objections.  But the requested documents are relevant
8  because they will shed light on the nature of Yonay's literary work, which will help
9  establish that Yonay was a non-fiction writer.  And Plaintiffs again fail to identify
10  even the slightest burden imposed by this request.

11  **Requests for Production Nos. 38 and 39** seek "[a]ll drafts, iterations, and
12  versions of" and "[a]ll notes, research materials, or interviews (oral or written)
13  regarding" Yonay's work *No Margin for Error: The Making of the Israeli Air*
14  *Force*.  Lens Decl., Ex. A at 11.  Like "Top Guns," *No Margin for Error* is a non-
15  fiction work authored by Yonay about military aviation.  The source materials
16  Yonay used to author this book should shed light on how Yonay conducted
17  research for his other non-fiction works, including "Top Guns."  Drafts of the book
18  will show the nature of Yonay's drafting process, including his efforts to maintain
19  factual accuracy.  Whatever burden may be imposed by this request, Plaintiffs have
20  failed to offer any basis to believe it is undue or otherwise disproportionate.

21  **Request for Production No. 40** seeks "[a]ll AGREEMENTS that REFER or
22  RELATE to any work authored, in whole or in part, by YONAY."  Lens Decl., Ex.
23  A at 11.  The requested agreements are plainly relevant because they may, for
24  example, establish that Yonay made warranties as to the non-fiction (i.e., factual)
25  nature of his other works.  This is not idle speculation.  Rather, in Yonay's
26  agreement with California Magazine, Yonay agreed to "use all reasonable care in
27  reporting and writing the article to make sure it is factual and accurate" and "to
28  follow the standards and practices of good journalism."  Lens Decl., Ex. E at 4, Ex.

MOTION TO COMPEL
CASE NO. 2:22-CV-3846-PA-GJS

F at 4.  Once again, Plaintiffs have failed to establish any burden whatsoever in producing these documents, let alone an undue burden.

**Request for Production No. 41** seeks "[a]ll DOCUMENTS, INCLUDING COMMUNICATIONS, that REFER or RELATE to YONAY's speeches, interviews, lectures, or promotional materials."  Lens Decl., Ex. A at 11.  These documents are relevant because they may confirm, for example, that Yonay himself considered "Top Guns" to be a non-fiction work, or that he may have given lectures about how to write a non-fiction work.  And any hypothetical burden imposed on Plaintiffs is plainly outweighed by the probative nature of Yonay's own characterization of "Top Guns" or his non-fiction work generally.

*     *     *

For the above reasons, the Court should overrule Plaintiffs' objections to all of PPC's Requests for Production and order production of all responsive, non-privileged documents within 14 days of its order, with a privilege log provided concurrently therewith.  *See Fabric Selection, Inc. v. Just One, LLC*, 2017 WL 8943109, at *2 (C.D. Cal. Sept. 26, 2017) ("Defendant is ordered to produce . . . all documents it previously agreed to produce, but has failed to produce as of this date."); *see also Diaz v. Heredia,* 2022 WL 2134967, at *7 (C.D. Cal. Mar. 4, 2022) (same); *Better Care Plastic Tech. Co. v. Gredale, LLC*, 2022 WL 2046206, at *8 (C.D. Cal. Mar. 4, 2022) (ordering party to produce all responsive documents with 14 days along with a declaration describing the search efforts).

### B.     Plaintiffs Must Answer PPC's Interrogatories.

Plaintiffs' responses to PPC's four targeted interrogatories are inadequate.

**Interrogatory Nos. 1 & 2** ask Plaintiffs to "[i]dentify any and all EXPRESSION in the ARTICLE that [Plaintiffs] contend:" (1) is "FICTIONAL or not FACTUAL" and (2) "constitutes PROTECTABLE EXPRESSION."  Lens Decl., Ex. C at 5, Ex. D at 5.  Plaintiffs asserted identical objections to these two interrogatories, claiming that they seek irrelevant information, are vague and

ambiguous, call for a legal conclusion, and amount to a premature contention interrogatory.  None of those objections has any merit.

These interrogatories are directly relevant to the claims and defenses in this case:  It is black-letter law that factual information "may not . . . form the basis for a copyright claim." *Corbello v. Valli*, 974 F.3d 965, 971 (9th Cir. 2020). Accordingly, PPC intends to demonstrate that the alleged similarities between the works (to the extent such similarities actually exist) are premised on uncopyrightable historical facts, meaning that no claim for infringement lies. Asking Plaintiffs to identify the fictional expression in the Article, as well as the specific expression they contend is protected, is thus plainly relevant. *See Reinsdorf v. Sketchers U.S.A., Inc.*, 2012 WL 12882125, at *3 (C.D. Cal. 2012) (interrogatory "proper" because "the question goes to a core issue in [the] case").

Plaintiffs attempt to avoid providing substantive answers by claiming the defined terms "ARTICLE," "EXPRESSION," "FICTIONAL," and "FACTUAL" are somehow vague and ambiguous.  Lens Decl., Ex. G at 8, Ex. H at 8.  Plaintiffs are wrong.  As an initial matter, all these words are common English, requiring no definition. *See Gold v. Kaplan*, 2021 WL 6618643, at *7 (C.D. Cal. Dec. 2, 2021) (overruling vagueness objection and ordering party to "respond using common sense definitions of the terms 'formula' and 'method'"); *Local.com Corp. v. Fry's Elecs., Inc.*, 2013 WL 12139096, at *2 (C.D. Cal. Feb. 22, 2013) ("The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases") (citation omitted); *see also L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022) (parties have an "obligation to construe discovery requests in a reasonable manner").

Moreover, PPC actually defined every supposedly vague word in the interrogatories, precisely to avoid unnecessary objections such as the ones Plaintiffs

MOTION TO COMPEL
CASE NO. 2:22-CV-3846-PA-GJS

resort to here.  "ARTICLE" means "the 1983 article 'Top Guns' by Ehud Yonay, published in California Magazine"—the work at the center of Plaintiffs' lawsuit. Lens Decl., Ex. C at 2, Ex. D at 2.  "EXPRESSION" means "any element . . . that is fixed in a tangible form," *id*., and is obviously a well-known term in copyright law. *See Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002) ("Copyright law only protects expression of ideas, not the ideas themselves.").  And the interrogatories define "FACTUAL" as "having actual existence and having objective reality" and "FICTIONAL" as "untrue or invented."  Lens Decl., Ex. C at 2, Ex. D at 2.  Both definitions are consistent with the common understanding of the words.  *See Fact*, Merriam-Webster, https://www.merriam-webster.com/dictionary/fact ("something that has actual existence" or "a piece of information presented as having objective reality"); *Fictional*, Merriam-Webster, https://www.merriam-webster.com/dictionary/fictional ("invented by the imagination").

Plaintiffs' remaining objections also lack merit.  Whether any expression in the Article is fact or fiction or whether any such expression is protectable is not a "legal conclusion."  Nor can these requests be characterized a premature contention interrogatories.  At the time of service, the close of liability fact discovery was only four months away.  And, currently, the parties are just over two months from the close of liability fact discovery—clearly "near the end of the discovery period"— such that even the authorities Plaintiffs cite in their responses would consider contention interrogatories appropriate.[4]  *See In re Allergan, Inc. Sec. Litig.*, 2016 WL 10719393, at *3 (C.D. Cal. Sept. 23, 2016); *Gravestock v. Abilene Motor Express, Inc.*, 2017 WL 10592155, at *6 (C.D. Cal. Sept. 14, 2017) (noting that "courts tend to . . . grant [contention interrogatories] if discovery almost is

---

[4] As noted above, at the request of Plaintiffs' counsel, the case schedule was elongated by approximately 90 days, with the liability discovery cut-off date changing from July 7, 2023 to October 6, 2023.  *See* Dkts. 35–37.

complete"). Further still, because facts are not copyrightable, "[r]equiring the answer to these 'factual' contention interrogatories is 'consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint[.]'" *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997).

**Interrogatory No. 3** asks Plaintiffs to "[i]dentify all EXPRESSION in [*Top Gun: Maverick*] that [Plaintiffs] contend is substantially similar to the PROTECTABLE EXPRESSION in the ARTICLE." Lens Decl., Ex. C at 5, Ex. D at 5. After asserting the same frivolous objections discussed above (which are equally insufficient here for the same reasons), Plaintiffs respond by referring PPC "*without limitation*" to the purported "Chart of Similarities" attached as Exhibit 1 to the First Amended Complaint. *Id.*, Ex. G at 11–12, Ex. H at 11–12 (emphasis in original). By its own terms, that response is incomplete and thus deficient. *See, e.g., Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 2021 WL 5087362, at *5 (D. Minn. Jan. 5, 2021) (Plaintiffs' response "is non-inclusive and prefaced with the phrase 'including, without limitation.' Because [Defendants'] interrogatories seek 'each and every fact' in support of a particular claim or affirmative defense and Plaintiffs have provided a non-inclusive list of those facts, Plaintiffs' responses are incomplete and therefore deficient."); *R. Fellen, Inc. v. Rehabcare Grp., Inc.,* 2016 WL 8731303, at *2 (E.D. Cal. Feb. 5, 2016) (finding "non-inclusive" list an incomplete answer to interrogatory seeking "all persons"); *Meggitt (Orange Cnty.), Inc. v. Nie*, 2015 WL 12743840, at *1 (C.D. Cal. Feb. 18, 2015) (ordering "full and complete" response specifying "each" item where party served response stating "see, for example" documents in a list).

**Interrogatory No. 4** asks Plaintiffs to "[e]xplain in detail the basis for [Plaintiffs'] contention that [they] have the right to enforce Ehud Yonay's rights under the 1983 AGREEMENT." Lens Decl., Ex. C at 5, Ex. D at 5. This interrogatory goes to the fundamental issue whether Plaintiffs have standing to

1    bring not only their copyright but also their breach of contract claims.  After

2    regurgitating the same untenable boilerplate objections, Plaintiffs state only that

3    they are "the heirs of Ehud Yonay and as such, are the successors-in-interest to his

4    rights and entitlements under the 1983 Agreement." *Id.*, Ex. G at 13, Ex. H at 13.

5        That is an entirely conclusory statement.  Are Plaintiffs Yonay's heirs under

6    a will?  If so, which specific terms render them Yonay's successor-in-interest under

7    the 1983 Agreement?  And if Yonay died without a will, why do Plaintiffs believe

8    they step into Yonay's shoes under the 1983 Agreement?  To answer this

9    interrogatory, Plaintiffs must do more than label themselves Yonay's heirs.

10                            *        *        *

11       For the foregoing reasons, Plaintiffs should be ordered to provide complete

12   responses to PPC's interrogatories within 14 days, including any information

13   known by them and/or their agents, including counsel.  *See, e.g., Bryant v. Mattel,*

14   *Inc.*, 2007 WL 5430893, at *7-8 (C.D. Cal. May 18, 2007).

15       **C.    Plaintiffs Must Answer PPC's Requests For Admission.**

16       Plaintiffs' responses to PPC's First Sets of Requests for Admission suffer

17   from similar deficiencies as those infecting their interrogatory responses.

18       **<u>Request for Admission No. 1</u>** asks Plaintiffs to admit a straightforward

19   fact—"that Ehud Yonay was a journalist."  Lens Decl., Ex. E at 4, Ex. F at 4.  But

20   instead of answering, Plaintiffs objected to the request as vague, ambiguous, and

21   irrelevant, and on the basis of those objections, ultimately denied the request.  None

22   of those objections has any merit.

23       Plaintiffs attempt to evade providing a substantive answer to the request by

24   objecting that "journalist" is somehow vague and ambiguous.  *Id.*, Ex. I at 4, Ex. J

25   at 4.  That strains credulity.  And even if Plaintiffs were somehow confused, they

26   still must construe the request "in a reasonable manner."  *See United States ex rel.*

27   *Poehling v. Unitedhealth Group, Inc.*, 2022 WL 19913651, at *1 (C.D. Cal. Nov.

28   30, 2022).  Any "confusion" on Plaintiffs' part would be easily resolved by

12

reference to a dictionary, which defines "journalist" as "a person engaged in journalism," with "journalism" defined as "the collection and editing of news for presentation through media." *Journalist*, Merriam-Webster, https://www.merriam-webster.com/dictionary/journalist; *Journalism*, Merriam-Webster, https://www.merriam-webster.com/dictionary/journalism.[5]  And contrary to Plaintiffs' objections, the request does not seek "information not relevant or proportional to the parties' claims or defenses or the needs of the case."  Lens Decl., Ex. I at 4, Ex. J at 4.  That Yonay was a journalist supports PPC's position that the Article is a work of fact.

     **Request for Admission Nos. 2-3 & 5** ask Plaintiffs to "[a]dmit that the ARTICLE is a FACTUAL work"; "that the ARTICLE does not contain any FICTIONAL elements"; and that Yona's only published works "were FACTUAL works."  Lens Decl., Ex. E at 4, Ex. F  at 4.  Mirroring their deficient interrogatory responses, Plaintiffs object that the words "ARTICLE," "FACTUAL," and "FICTIONAL" are vague, ambiguous, or argumentative, call for a legal conclusion, and assume or mischaracterize facts.  *Id.*, Ex. I at 4–5, Ex. J at 4–5.  Again, not so. *See supra* at 9–10.

     **Request for Admission No. 4** asks Plaintiffs to admit that, by signing his contract with California Magazine regarding the Article, Yonay agreed—consistent with the contractual language—to "use all reasonable care in reporting and writing the article to make sure it is factual and accurate" and "to follow the standards and practices of good journalism."  Lens Decl., Ex. E at 4, Ex. F at 4.  This should not be controversial.  Yet Plaintiffs reflexively pepper their responses with makeweight objections—arguing first that the verb "agreed" is vague and ambiguous.  *Id.*, Ex. I

---

[5] Plaintiffs also object to this request as vague and ambiguous on the grounds that it does not define a specific time period but, as PPC confirmed in its May 8, 2023 letter, the interrogatory covers the relevant time period, that is, "when Yonay wrote the Article."  Lens Decl., Ex. O at 4.  Moreover, there is no evidence suggesting that Yonay's career ever departed from that of a journalist.

MOTION TO COMPEL
CASE NO. 2:22-CV-3846-PA-GJS

at 5, Ex. J at 5.  Even a first-year law student knows that a party manifests their agreement to contractual terms by signing the contract, exactly as Yonay did.

Plaintiffs' other objections—that the request is "argumentative," "compound," or seeks a "legal conclusion"—are also without merit.  The request is plainly not argumentative or compound.  And Rule 36 permits requests concerning the application of law to facts and other matters involving "mixed law and fact." *See Marchand v. Mercy Medical Center*, 22 F.3d 933, 937 n.4 (9th Cir. 1994). Indeed, courts have upheld requests seeking information far closer to a "legal conclusion" than what this request seeks.  *See, e.g., 999 Corp. v. C.I.T. Corp.*, 776 F.2d 866, 868–70 (9th Cir. 1985) (affirming decision to enforce an admission that a particular document constituted "an agreement" between the parties, even though whether an agreement existed was an ultimate issue in case).

In response to **Request for Admission Nos. 6–22**, Plaintiffs assert the same inapplicable objections, and ultimately refuse to admit or deny the requests because they purportedly lack sufficient information to do so.  Lens Decl., Ex. I at 6–13, Ex. J at 6–13.  But because Plaintiffs provided no explanation of the nature of the inquiry, if any, they conducted, their responses are deficient on their face.

Rule 36 is clear:  "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny *only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny*."  Fed. R. Civ. P. 36(a)(4) (emphasis added).  A reasonable inquiry requires a party to obtain and review readily accessible information—such information known by Plaintiffs' counsel as publicly available documents.  *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981).  A reasonable inquiry under Rule 36 also "means that a party has to ask its counsel, and if its counsel knows the response, the party needs to use that information to admit or deny."  *New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 405 F. Supp. 3d 1233, 1253 (D.N.M. 2019); *see also T. Rowe Price*

1   *Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 43 (S.D.N.Y.

2   1997).  And if a party claims it cannot truthfully admit or deny a request,  its

3   response must "set forth 'in detail' the reasons why the answering party cannot

4   truthfully admit or deny the matter."  *See, e.g.*, *Asea*, 669 F.2d at 1245-47; *Shayler*

5   *v. Yacoub*, 2020 WL 8812454, at *3 (C.D. Cal. Dec. 23, 2020).[6]

6       Here, contrary to the settled law above, Plaintiffs' responses to Requests for

7   Admission Nos. 6–22 fail to confirm that they conducted any inquiry at all—let

8   alone specify the nature of the inquiry, including its reasonableness.  Lens Decl.,

9   Ex. I at 6–13, Ex. J at 6–13.  Plaintiffs also failed to provide any reasons why they

10  could not truthfully admit or deny the requests.

11                          *       *       *

12      For the foregoing reasons, Plaintiffs' improper objections should be

13  overruled and they should be required to provide complete and Rule 36 compliant

14  responses within 14 days.  *See, e.g., Tooker v. Mak*, 2022 WL 1131633, at *4 (N.D.

15  Cal. Mar. 7, 2022).

16  **IV.    CONCLUSION**

17      For the reasons stated, PPC respectfully requests the Court grant this motion.

18

19

20

21

22

---

23  [6] Given the basic information at issue here, it appears that Plaintiffs did not conduct
24  any inquiry at all.  For example, Request No. 22 asks Plaintiffs to "[a]dmit that the
    statement that the wings of the F-14 are able to expand, referenced in the
25  ARTICLE, is factual."  Lens Decl., Ex. E at 6; Ex. F at 6.  The truth of that
    statement is readily ascertainable after even the most basic inquiry into publicly
26  available information. *See, e.g*., Joe Pappalardo, *Swing Wings*, SMITHSONIAN
    MAGAZINE (Sept. 2006), https://www.smithsonianmag.com/air-space-
27  magazine/swing-wings-9189621/ (describing the F-14 Tomcat as "a fighter that
    could change the sweep of its wings depending on the widely varying speed
28  regimes").

MOTION TO COMPEL
CASE NO. 2:22-CV-3846-PA-GJS

1   Dated:  July 24, 2023                           O'MELVENY & MYERS LLP

2                                                   By:    */s/ Molly M. Lens*

3                                                          Molly M. Lens

4                                                   *Attorneys for Defendant Paramount*

5                                                   *Pictures Corporation*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL
CASE NO. 2:22-CV-3846-PA-GJS