MOLLY M. LENS (S.B. #283867)
mlens@omm.com
MATTHEW KAISER (S.B. #304714)
mkaiser@omm.com
DANIELLE R. FEUER (S.B. #324174)
dfeuer@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

*Attorneys for Defendant*
*Paramount Pictures Corporation*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOSH YONAY and YUVAL YONAY, <br><br> Plaintiffs, <br><br> v. <br><br> PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and DOES 1-10, <br><br> Defendants. | Case No. 2:22-CV-3846-PA <br><br> **PARAMOUNT PICTURES CORPORATION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> [Reply Separate Statement of Uncontroverted Facts, Additional Evidentiary Objections, Response to Plaintiffs' Evidentiary Objections, and Supporting Declarations filed concurrently herewith] <br><br> **Hearing Date:** January 8, 2024 <br> **Hearing Time:**  1:30 PM <br> **Place:**  Courtroom 9A <br> **Judge:**  Hon. Percy Anderson |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 1

    A. The Copyright Infringement And Declaratory Relief Claims Fail (Counts II and III) .................................................................................... 1

        1. Plaintiffs Must Prove Substantial Similarity Between The Article And *Maverick* To Prevail On Their Infringement Claim. ............................................................................................ 1

        2. The Article And *Maverick* Are Not Substantially Similar. ........ 5

    B. The Contract Claim Fails (Count I) ...................................................... 11

III. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andreas Carlsson Prod. v. Barnes*,
 2016 WL 11499656 (C.D. Cal. Oct. 11, 2016) .................................................... 4

*Authors Guild v. Google, Inc.*,
 804 F.3d 202 (2d Cir. 2015) ................................................................................. 2

*Benay v. Warner Bros. Ent.*,
 607 F.3d 620 (9th Cir. 2010) ..................................................................... 3, 4, 7, 8

*Bennett v. N.Y.C. Dep't of Corrs.*,
 705 F. Supp. 979 (S.D.N.Y. 1989) ..................................................................... 11

*Berkic v. Crichton*,
 761 F.2d 1289 (9th Cir. 1985) ............................................................................. 4

*Bernal v. Paradigm Talent & Literary Agency*,
 788 F. Supp. 2d 1043 (C.D. Cal. 2010) ............................................................... 5

*Cavalier v. Random House, Inc.*,
 297 F.3d 815 (9th Cir. 2002) ........................................................................... 4, 9

*Corbello v. Valli*,
 974 F.3d 965 (9th Cir. 2020) ............................................................... 2, 7, 8, 10

*DC Comics v. Towle*,
 802 F.3d 1012 (9th Cir. 2015) ......................................................................... 4, 9

*De Acosta v. Brown*,
 146 F.2d 408 (2d Cir. 1944) ................................................................................ 8

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
 462 F.3d 1072 (9th Cir. 2006) ......................................................................... 3, 4

*Gable v. Nat'l Broad. Co.*,
 727 F. Supp. 2d 815 (C.D. Cal. 2010) ................................................................. 5

*Hanagami v. Epic Games, Inc.*,
 2023 WL 7174242 (9th Cir. Nov. 1, 2023) ....................................................... 10

# TABLE OF AUTHORITIES
(continued)

Page(s)

*ICC Eval'n Serv. v. Int'l Ass'n of Plumb'g & Mech. Offs.*,
  2022 WL 3025241 (D.D.C. Apr. 27, 2022) ........................................................ 2

*Jacobsen v. Deseret Book Co.*,
  287 F.3d 936 (10th Cir. 2002) .......................................................................... 2

*Jones v. Twentieth Century Studios*,
  No. 2:21-cv-05890, Dkt. 227 (C.D. Cal. Nov. 28, 2023) ................................... 5

*Knowles v. Spin Master, Inc.*,
  2019 WL 4565102 (C.D. Cal. Sept. 17, 2019) ................................................... 5

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ............................................................................ 4

*Metcalf v. Bochco*,
  294 F.3d 1069 (9th Cir. 2002) ........................................................................ 10

*Narell v. Freeman*,
  872 F.2d 907 (9th Cir. 1989) ............................................................................ 4

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ..................................................................... 1, 2

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) .......................................................................... 5

*Scott v. Harris*,
  550 U.S. 372 (2007) .......................................................................................... 6

*Shame on You Prods., Inc. v. Banks*,
  120 F. Supp. 3d 1123 (C.D. Cal. 2015) ............................................................ 3

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) .................................................................... 9, 10

**Statutes**

17 U.S.C. § 103 ........................................................................................................ 4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

1 Nimmer on Copyright § 3.01 ................................................................................ 3

## I. INTRODUCTION

Plaintiffs' opposition tries to confuse the issues—comparing the Article to the 1986 *Top Gun* film instead of *Maverick*, claiming similarities based on unprotectable facts and real-life people, and most gallingly, arguing that a substantial similarity analysis is not necessary at all (Opp. at 2)—to avoid the overwhelming conclusion that the Article and *Maverick* are not substantially similar as a matter of law.  In reality, Plaintiffs' infringement claim boils down a simple extrinsic analysis between the protectable elements of the Article and of *Maverick*, based on a comparison of the actual works.  That is a test Plaintiffs cannot satisfy.

Left with no *legal* basis to fend off summary judgment, Plaintiffs spin a false narrative of victimhood at the hand of corporate greed.  The opposite is true.  PPC already gratuitously paid for the rights to the Article once, hoping to avoid frivolous litigation just like the one in which it is now mired.  Copyright law did not require PPC to acquire rights to Yonay's factual Article in 1983, and it *certainly* did not require PPC to double down on that decision forty years later to make *Maverick*.

## II. ARGUMENT

### A. The Copyright Infringement And Declaratory Relief Claims Fail (Counts II and III)

1. *Plaintiffs Must Prove Substantial Similarity Between The Article And* Maverick *To Prevail On Their Infringement Claim.*

Faced with two works that are not similar, let alone substantially so, Plaintiffs try to shift the focus away from an extrinsic comparison of the Article and *Maverick* and the proper criteria under it.  Their framing rests on basic errors of law.

*First*, even if PPC copied elements from the Article to create *Maverick*—and, to be clear, it did not—Plaintiffs would still need to prove *unlawful* appropriation. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1124 (9th Cir. 2018).  That is because "copyright law does not forbid all copying." *Id.* at 1117.  To infringe, a defendant must copy the plaintiff's *protectable expression* (as opposed to ideas, facts, etc.) and copy *enough of it* "to render the two works 'substantially similar.'" *Id.*  Plaintiffs

cannot prevail on their infringement claim without first prevailing on a substantial similarity analysis, including its extrinsic and intrinsic tests alike. *Id.* at 1117-18.

*Second*, the extrinsic test mandates "filter[ing] out and disregard[ing] the non-protectable elements" of the works—most relevantly, facts.[1] *Corbello v. Valli*, 974 F.3d 965, 975 (9th Cir. 2020). Plaintiffs cast this as a "strawman," Opp. at 16, but virtually all of the purported similarities on which they rely are factual. Despite Plaintiffs' repeated reliance on precedent about *fictional* works, this case falls squarely within the framework of *Corbello*, wherein the Ninth Circuit held that *Jersey Boys* did not infringe the biography of band member Tommy DeVito, "even if the writers of the Play 'appropriated [plaintiff's] historical research," as "the alleged similarities...are based on historical facts, common phrases and *scenes-a-faire*." 974 F.3d at 971, 984. *Corbello* is fatal to Plaintiffs' claim, yet Plaintiffs do not even address the decision, other than to conclusorily assert that Yonay's "cinematic" expression of facts remains copyrightable. Opp. at 18. PPC does not dispute that the *expression* in the Article—principally, the language Yonay used to convey those facts—is protected, but that expression is not what Plaintiffs claim PPC copied.[2] Simply re-labeling facts as Yonay's "expression" does not make it so.

*Third*, despite Plaintiffs' protestations, the extrinsic analysis requires consideration of both similarities and differences between the works. Accordingly, even in cases involving the alleged infringement of *fictional* works, the Ninth Circuit has *repeatedly* affirmed grants of summary judgment where the two works

---

[1] Plaintiffs mischaracterize *ICC Eval'n Serv. v. Int'l Ass'n of Plumb'g & Mech. Offs.*, 2022 WL 3025241 (D.D.C. Apr. 27, 2022) as stating that "[s]imply calling something a fact or an idea 'does not revoke its copyright protection,'" Opp. at 17, but what *ICC* actually says is that a *work* can be copyrightable even if it contains facts as well as expression.

[2] Plaintiffs rely on wholesale-copying cases, where a defendant copied a factual work verbatim. That kind of copying necessarily encompasses not just unprotected facts but also protected expression. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 940-48 (10th Cir. 2002) (reversing dismissal where "[p]ortions of the *Children of the Promise* series could be seen as verbatim copying of Dr. Jacobsen's original expression"); *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) (discussing digital copying of entire books).

"share the same basic plot premise" but a "closer inspection reveals that they tell very different stories." *Benay v. Warner Bros. Ent.*, 607 F.3d 620, 625 (9th Cir. 2010) (no substantial similarity where "on cursory review, the[] similarities may appear substantial," but "a closer examination of the protectable elements...exposes many more differences than similarities"); *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1078 (9th Cir. 2006) (no substantial similarity despite "significant" plot similarities, where "an actual reading of the two works reveals greater, more significant differences and few real similarities at the levels of plot, characters, themes, mood, pace, dialogue, or sequence"); *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1153 (C.D. Cal. 2015) (no substantial similarity where "although they share the same premise and a number of elements that follow naturally from that premise, the two works at issue tell fundamentally different stories"), *aff'd*, 690 F. App'x 519 (9th Cir. 2017).  It is those differences that set apart two works with passing commonalities from true instances of infringement.[3]

*Fourth*, the substantial similarity analysis requires a comparison of the Article and *Maverick*, and only those two works.  Plaintiffs' frequent invocation of the 1986 *Top Gun* film is a red herring.  At the outset, *Top Gun* is not a derivative work of the Article merely because it drew inspiration from the Article.  As the leading copyright treatise explains:  "If what is borrowed consists merely of ideas and not of the expression of ideas, then, although the work may have in part been derived from prior works, it is not a derivative work."  1 Nimmer on Copyright § 3.01.  But even if *Top Gun* were a derivative work of the Article, and *Maverick* a derivative work of *Top Gun*, that would not make *Maverick* a derivative work of the Article.  There is no such transitive property in copyright law.[4]

---

[3] Plaintiffs are also wrong to suggest differences in media are irrelevant.  That it is not *dispositive* does not remove this factor from the Court's consideration.  *See Corbello*, 974 F.3d at 974 n.2 (finding works' "different media" relevant to extrinsic test).

[4] To illustrate, if A writes a story about the adventures of Andy the Aardvark, and B writes a derivative story about Andy the Aardvark meeting Barry the Bear, C can write a spinoff about Barry the Bear meeting Cory the Coyote without touching A's copyright.

Plaintiffs do not own the rights to *Top Gun*; PPC does. And it is packed with expression that uses nothing protectable from the Article. "The copyright in [a derivative] work is independent of, and does not affect or enlarge the scope...of, any copyright protection in the preexisting material." 17 U.S.C. § 103(b). Thus, the copying of a derivative work only "infringes the original copyright owner's copyright in the underlying work to the extent the [derivative] of the derivative work also copies the underlying work." *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015). That brings the analysis right back to the substantial similarity test, with a comparison of the underlying work and the secondary derivative. *Andreas Carlsson Prod. v. Barnes*, 2016 WL 11499656, at *9-10 (C.D. Cal. Oct. 11, 2016).

*Fifth*, and finally, the extrinsic test is readily susceptible to determination as a matter of law, making defense-side summary judgment motions both common and proper. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). In contrast to the heavy burden on an infringement *plaintiff*, an infringement *defendant* need only show the plaintiff cannot satisfy the extrinsic test to obtain summary judgment. *Id.* Thus, the Ninth Circuit "frequently ha[s] affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity." *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989)

Plaintiffs nonetheless contend they can avoid summary judgment by pointing to any "commonalities between the works in question." Opp. at 5. Not so. "A plaintiff avoids summary judgment by satisfying the extrinsic test which makes similarity of the works a triable issue of fact." *Kouf*, 16 F.3d at 1045. Ninth Circuit precedent confirms the appropriateness of summary judgment even where there are commonalities between the disputed works, and even where the underlying work is *fictional* (and the copyright thus more expansive than a factual work). *E.g.*, *Kouf*, 16 F.3d. at 1045-46; *Benay*, 607 F.3d at 625-29; *Funky Films*, 462 F.3d at 1077-81; *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823-29 (9th Cir. 2002); *Narell*, 872 F.2d at 911-13; *Berkic v. Crichton*, 761 F.2d 1289, 1293-95 (9th Cir. 1985).

Plaintiffs further argue that the proffer of expert witnesses inherently creates an issue of fact precluding summary judgment. Opp. at 5. Again, they are wrong.[5] "[T]he existence of dueling expert reports does not necessarily present a triable issue of fact for the jury. Numerous cases have found in favor of defendants on the issue of substantial similarity despite the existence of expert testimony offered by plaintiffs." *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1062 (C.D. Cal. 2010); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 836-37 (C.D. Cal. 2010) ("contrary to Plaintiff's arguments otherwise, the mere existence of dueling expert reports does not necessarily create a triable issue of fact" on substantial similarity), *aff'd*, 438 F. App'x 587 (9th Cir. 2011); *see also Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175-80 (9th Cir. 2003) (affirming summary judgment for defendant on substantial similarity despite proffer of dueling experts); *Jones v. Twentieth Century Studios*, No. 2:21-cv-05890, Dkt. 227 at 4-5, 18-21 (C.D. Cal. Nov. 28, 2023) (granting summary judgment for defendants on substantial similarity despite finding plaintiff's substantial similarity expert admissible). So has this Court. *E.g.*, *Knowles v. Spin Master, Inc.*, 2019 WL 4565102, at *4, *6-8 (C.D. Cal. Sept. 17, 2019) (Anderson, J.). If Plaintiffs' bright-line rule were correct, then any infringement plaintiff or defendant could always defeat summary judgment simply by proffering an expert—no matter how superficial or inaccurate their analysis, and no matter how their opinions stack up against the Ninth Circuit's extrinsic test. That is not, and ought not be, the law. Plaintiffs' argument is all the more disingenuous since they too seek summary judgment on infringement.

Cutting through the distractions, PPC's summary judgment motion distills to one question: Under the Ninth Circuit's extrinsic test, are the Article and *Maverick* substantially similar in their protected expression? The answer is a resounding "no."

### 2. The Article And Maverick Are Not Substantially Similar.

The substantial similarity analysis here is not a close question. And it is ripe

---

[5] Plaintiffs' "expert" is inadmissible anyway, as set forth in PPC's motion to exclude.

for resolution on summary judgment. The actual works, which are in the record, govern this determination, so there is no "genuine" dispute about what they portray.[6] The Article and *Maverick* share remarkably *little* for two works about Top Gun.

**Plot and Sequence.** Plaintiffs glaringly avoid talking about the actual—and fundamentally different—storylines of the two works. Instead, Plaintiffs offer vague generalities (like "featur[ing] the evolution of remarkable people," Opp. at 7) coupled with an odds-and-ends list of random minor similarities, all of which are inaccurate and/or reduce to unprotectable facts.[7] And they distract with comparisons to the 1986 *Top Gun* film, remarkably claiming as similarities elements that do not even appear in *Maverick*. In reality, the similarities between the Article and *Maverick* start and end with the basic unprotectable premise of a work about the real-life Top Gun school. *See* Mot. at 12-15.

**Themes**. Plaintiffs' proffered shared themes are largely imagined, flow naturally from the shared premise of a story about Top Gun, and/or are too generic to be protectable anyway. *See* Mot. at 15-16 & n.7.12 Plaintiffs wrongly contend that themes are inherently expressive and therefore cannot be filtered out, but they have no answer for the Ninth Circuit's decision in *Benay* finding unprotectable

---

[6] Plaintiffs' gloss on the works and their many verifiably false statements about them, by contrast, do not govern. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (reversing denial of summary judgment where court relied on "visible fiction" advanced by non-moving party rather than "view[ing] the facts in the light depicted by the videotape"). PPC does not have the space here to run through the myriad mischaracterizations of the works and false similarities in Plaintiffs' briefing, but a more fulsome point-by-point analysis can be found in the reply separate statement filed concurrently herewith.

[7] For example, Maverick does not train the pilots by "taking on single crews one-on-one, then two crews," Opp. at 8; he always begins by taking on two trainee planes at once, Jt. Stip. Ex. B at 35:45-40:05; in any case, the Article factually describes Top Gun's training regime. The Article also does not "culminate with [Yogi and Possum] going off to battle," Opp. at 7; it culminates in their graduation, Jt. Stip. Ex. B at 147. Further, it is factual that landing a fighter jet on an aircraft carrier is akin to a "controlled crash," SUF ¶ 29—though the actual crash-landing in *Maverick* bears no resemblance to the "controlled crash" described in the Article, *id.* ¶ 85. And "brass bells" rung when someone breaks "house rules," Opp. at 8, are a real feature of officer's clubs the world over. SUF ¶ 102.

6

REPLY ISO PPC'S MOT. FOR SUMM. J.
CASE NO. 2:22-CV-3846-PA

"those themes [that] arise naturally from the premise of" the works. 607 F.3d at 627. Plaintiffs also try to cast PPC as hypocritical for calling *their* themes generic but claiming protection over *Maverick*'s primary themes (which do not appear anywhere in the Article) of guilt, reconciliation, and redemption. PPC did no such thing; its point in raising *Maverick*'s themes is not to assert their protectability, but rather to highlight just how fundamentally different the themes of the works are.

**Dialogue**. Plaintiffs fail to identify any language shared between the Article and *Maverick*, apart from the factual (and unprotected) two-word phrase, "Fight's on," that real-life fighter pilots use to signify the start of an aerial training exercise. Opp. at 11; Suppl. Craig Decl. ¶¶ 5-7 & Ex. 3. Instead Plaintiffs broadly claim that the "characters" in both works "speak in a way that is at once droll, idiomatic, techy and charmingly unguarded in dialogue and narration," citing arbitrary quotes from the Article and nothing from *Maverick* beyond "Fight's on." Opp. at 11. Not only is their contention amorphous and unsupported, but because the Article's spoken language is attributed to real people *other* than Yonay, SUF ¶ 196, Plaintiffs have no copyright interest in it. *See* Mot. at 17; *see also Corbello*, 974 F.3d at 980-84. Despite the lack of overlapping language, Plaintiffs nonetheless baldly assert that "[s]imilar dialogue [to the Article] resonates throughout" the film. Opp. at 11. That does not cut it[8]—especially when their own expert conceded he could not identify any spoken language from the Article that is also in *Maverick*. SUF ¶ 197.

**Settings**. The Article and *Maverick* also do not share a setting. Plaintiffs do not dispute that they are situated at different naval air stations—the Article at Miramar and *Maverick* at North Island—forty years apart. Plaintiffs try to couch those differences as a similarity by arguing that both of these real-life settings are "along the beach," Opp. at 11, but this involves a factual aspect of Miramar that the

---

[8] Only one of Plaintiffs' six (unexplained) citations for this claim corresponds to a quote from *Maverick*, and even that quote merely addresses the same real-life topic—the effect of G forces on the body—as some quotes from the Article. *See* Pls.' SMF ¶ 202.

Article did not even mention.[9]  Regardless, this is not protectable, as the Article's "setting" at Miramar was a simple fact, SUF ¶ 157; that the school has since moved does not retroactively give Yonay ownership of that factual setting.  Plaintiffs also cannot lay claim to the basic combination of settings in the air and on the ground—cockpits, naval bases and bars, classrooms, and the sea—that "flow naturally" from the premise of a work about a naval aviation school.  *Benay*, 607 F.3d at 628.[10]

**Pace and Mood**.  As PPC's motion explained, the prevailing mood of *Maverick* is serious and intense, whereas the prevailing mood of the Article is upbeat and lighthearted.  Mot. at 18.  And while *Maverick* is consistent and fast-paced, the Article's pace is inconsistent and non-linear.[11]  *Id.*  Plaintiffs cherry-pick a serious moment in the Article and lighthearted ones in *Maverick*, but that could be said of any narrative work; such diffuse moments do not define the works' moods.

**Characters**.  Plaintiffs completely ignore that "a character based on a historical figure is not protected for copyright purposes." *Corbello*, 974 F.3d at 976.  The fighter pilots featured in the Article are *real people*.  SUF ¶¶ 110, 112-13.  Yonay's depiction of them, including their personalities, is thus "not original to the Work, and so not a protectable element." *Corbello*, 974 F.3d at 976.  This principle is dispositive of *all* of Plaintiffs' claimed character similarities.[12]

---

[9] Plaintiffs cite a sentence in the Article that describes planes flying over the ocean during training, Opp. at 11, but this does not resemble *Maverick*'s ground-level beach scenes, or its training scenes (which take place over the desert, not the ocean).

[10] While immaterial, the Article also did not "teach" PPC "how to see" the Top Gun school, Opp. at 11; its director and writers visited naval air stations and consulted directly with the Navy to accurately represent the environment.  SUF ¶¶ 36, 39.

[11] Plaintiffs wrongly contend that both works "freely use flashbacks and cutaways," but *Maverick* includes just one flashback sequence early in the film. Jt. Stip. Ex. B at 31-32:16.

[12] Plaintiffs' only response is to misrepresent an 80-year-old, out-of-circuit case, citing *De Acosta v. Brown*, 146 F.2d 408 (2d Cir. 1944) for the proposition that "original treatment of…historic character…entitled to protection."  Opp. at 18 (ellipses in original).  Plaintiffs' misleading use of ellipses obscures the *real* holding of *De Acosta*, which involved the infringement of "fictionalized happenings," including a non-existent lover, in a screenplay based on a historic character.  146 F.2d at 409-10.  Here, of course, Plaintiffs do not identify a single "fictionalized" event—let alone one PPC purportedly infringed.

The substance of Plaintiffs' similarities fares no better. Even fictional characters are only protected when they are "especially distinctive" and "contain some unique elements of expression," *Towle*, 802 F.3d at 1021, yet Plaintiffs rely on generic traits that come nowhere close. And many of their "similarities" do not concern *Maverick* at all, but rather the 1986 film, or rest on outright inaccuracies.[13]

**Selection and Arrangement**. Plaintiffs alternatively resort to a selection and arrangement theory. But they contort that doctrine beyond recognition.

First, Plaintiffs are incorrect to argue filtering plays no role in the selection and arrangement analysis. As the Ninth Circuit explained in *Cavalier*, while infringement can "be based on original selection and arrangement of unprotected elements," nonetheless "the unprotectable elements have to be identified, or filtered, before the works can be considered as a whole." 297 F.3d at 825-26.

Second, Plaintiffs ignore the Ninth Circuit's en banc decision in *Skidmore*, which clarified that "a selection and arrangement copyright protects…the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design," and is infringed "only where the works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable elements." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1074-75 (9th Cir. 2020) (en banc). Yet Plaintiffs fail to identify any "particular" selection and arrangement in the Article (or, really, any arrangement at all), instead listing off vague and unoriginal characteristics about the work. And they certainly do not identify how the "same" arrangement appears in *Maverick*. *See id.* at 1075 ("Without such arrangement, there is no liability for taking 'ideas and concepts' from the plaintiff's work, 'even in combination.'").

Third, Plaintiffs wrongly attack PPC's discussion of the sequences of the works as part of selection and arrangement. But for literary works, that is how the *selected* story elements are *arranged*. In fact, the Ninth Circuit has used the terms

---

[13] Plaintiffs latch onto USC's error in describing *Maverick* as "based on characters from the 1983 California magazine article 'Top Guns,'" Opp. at 4, but it is just that—USC's error—which is irrelevant to the extrinsic analysis in any event. Nelson Decl. ¶¶ 3-7.

"selection and sequencing" and "selection and arrangement" interchangeably. *Metcalf v. Bochco*, 294 F.3d 1069, 1074-75 (9th Cir. 2002); *Skidmore*, 952 F.3d at 1075.[14] Plaintiffs do not cite a single case involving literary works in which a colorable "selection and arrangement" claim was found based on the type of scattered, unprotectable similarities alleged here. Nor could they. At minimum, a successful "selection and arrangement" claim in the context of a literary work requires that the unprotectable elements be arranged in such a similar way that the works tell a similar story, but here, the stories are *completely different*, and only share a *topic* (and elements that flow therefrom). *See Corbello*, 974 F.3d at 974 n.2.

For all of Plaintiffs' bluster, their selection and arrangement discussion says remarkably little about the comparative selection and arrangement of the Article and *Maverick*. Plaintiffs kick off with a comparison of the Article and *Top Gun*, but that is nothing more than a distraction. Plaintiffs claim that the Article's Yogi and Possum inspired *Top Gun*'s Maverick and Goose, and that their relationship "fed events and relationships at the center of" *Maverick*, Opp. at 21, but that non-specific comment speaks to neither the selection nor the arrangement of *Maverick*.

The sum total of the selection and arrangement to which Plaintiffs lay claim is that both works purportedly (1) include an inside-the-cockpit perspective, rather than keeping the reader boxed out; (2) depict flying as an "aerial ballet" (counsel's gloss); (3) depict not only flying but also "briefing rooms, frat-boy carousal, and hyper-competition"; and (4) include a mix of noisy scenes in the sky and quiet ones on the ground. *Id.* at 21-22. Not only is this assemblage far from the "particular" and "original" combination required under *Skidmore*, 952 F.3d at 1074-75, but Plaintiffs provide factual support for virtually *none* of these characterizations; of the elements listed, Plaintiffs' citations reflect only that the Article and *Maverick* each depict flying, briefing rooms, recreational time, and competition. Copyright law

---

[14] Plaintiffs suggest the Ninth Circuit's decision in *Hanagami v. Epic Games, Inc.*, 2023 WL 7174242 (9th Cir. Nov. 1, 2023) is somehow to the contrary. Opp. at 21. It is not. *Hanagami* examined the protectability of choreography, *i.e.*, the *sequence* of dance moves.

does not accord protection to such a basic and generalized combination of elements (if it could even be called that). Any contrary rule would endow Plaintiffs with blocking rights to any story about Top Gun—the antithesis of copyright's goals.

### B. The Contract Claim Fails (Count I)

Plaintiffs do not seek to enforce the Assignment, but rather to *rewrite* it. Plaintiffs try to erase the first of two conditions that must be met to trigger a credit obligation—that a film be "produced...[]under" the Assignment—with nothing more than their conclusory assertion that, in this case, "and" does not actually mean "and." Lacking any grounding in contract law, Plaintiffs resort to citing a single, decades-old, out-of-circuit sex discrimination case in support of their atextual "hendiadys" argument. Opp. at 25 (citing *Bennett v. N.Y.C. Dep't of Corrs.*, 705 F. Supp. 979, 987 (S.D.N.Y. 1989)). But that case did not address contract interpretation at all; the court was evaluating how to construe a judicial decision.

PPC, by contrast, has shown that Plaintiffs' interpretation flouts established contract principles, which Plaintiffs entirely ignore. They have no answer for PPC's authority showing that courts give effect to the "plain and ordinary meaning" of contractual language and that the ordinary meaning of "and" is as a conjunctive term connecting distinct contractual requirements, Mot. at 23, or the fundamental rule of contract interpretation that a contract should not be construed to render some of its terms meaningless, *id.* at 24. There is nothing ambiguous in the Assignment's use of the conjunction "and"; Plaintiffs cannot conjure ambiguity from thin air.[15]

Plaintiffs also ignore Paragraph 8 of the Assignment, which puts to rest any possible questions about how to interpret the credit obligation. It explains that the Assignment shall not be construed to put PPC in a worse position than had it never entered the Assignment; PPC can have no lesser rights than a member of the public. *Id.* at 25; SUF ¶ 203. Yet that is exactly what Plaintiffs try to do, by asserting that a

---

[15] There cannot be a "triable issue[] of fact" on "the intended meaning of ¶ 7(b)," Opp. at 25, without any facts in dispute. The Assignment is in the record, and Plaintiffs do not dispute that it says what it says. SUF ¶¶ 199-203. They proffer no other relevant evidence.

credit obligation applies even to a film that would not infringe the Article—the type of film any member of the public could make with no obligation toward Plaintiffs.

Properly construed, *neither* pre-condition is satisfied, though Plaintiffs need to prove *both* to prevail. First, *Maverick* cannot have been "produced...[]under" the Assignment if its production was independent of the rights conveyed. Because *Maverick* would not infringe on the Article's copyright, even absent a grant of rights, it fails the "produced... hereunder" condition. The contract claim thus falls with the infringement claim. Alternatively, *Maverick* cannot have been produced under the Assignment because Plaintiffs terminated it as of January 2020; Plaintiffs' entire premise for their infringement claim is that, because of their termination, PPC no longer held the rights to the Article when *Maverick* was produced. Plaintiffs try to avoid this natural consequence by pointing to *Maverick*'s international distribution and the non-extraterritoriality of copyright termination. Opp. at 25. But the Assignment speaks only of *production*, not *distribution*.

As to the second condition, Plaintiffs do not even try to argue that *Maverick* "substantially incorporat[ed] the plot, theme, characterizations, motive and treatment" of the Article. *See id*. at 24. Plaintiffs instead take the indirect route, contending only that *Maverick* incorporated the elements of *Top Gun* and that *Top Gun* is an adaptation of the Article. *Id*. At the outset, Plaintiffs provide no support for their dubious characterization of *Top Gun* as an "adaptation" of the Article. And Paragraph 8 forecloses them from imposing obligations on PPC that are unmoored from the rights conveyed in the Assignment. If PPC did not copy the Article's protected expression with *Maverick*—irrespective of whether it incorporated *Top Gun*'s separate expression, which PPC alone owns—no credit obligation could attach. After all, any member of the public is free to make a movie about the real-life Top Gun program without attribution. Plaintiffs' contract claim thus fails.

### III. CONCLUSION

Summary judgment should be granted in PPC's favor on all claims.

| | | |
|---|---|---|
| 1 | Dated: December 11, 2023 | O'MELVENY & MYERS LLP |
| 2 | | By: */s/ Molly M. Lens* |
| 3 | | Molly M. Lens |
| 4 | | *Attorneys for Defendant Paramount Pictures Corporation* |

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Paramount Pictures Corporation, certifies that this brief complies with the Court's October 23, 2023 Order, Dkt. 51, in that it is 12 pages in length.

Dated: December 11, 2023

**O'MELVENY & MYERS LLP**

By:  */s/ Molly M. Lens*
Molly M. Lens

*Attorneys for Defendant
Paramount Pictures Corporation*