Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
Jaymie Parkkinen (S.B. #318394)
*jparkkinen@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Alex Kozinski (S.B. # 66473)
*alex@kozinski.com*
33 Marguerite Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 541-5885
Facsimile: (310) 265-4653

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOSH YONAY, an individual, and YUVAL YONAY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and DOES 1-10,<br><br>Defendants. | Case No. 22-CV-03846-PA-GJS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF ANDREW CRAIG**<br><br>**Hearing Date:** January 8, 2024<br>**Hearing Time:** 1:30 P.M.<br>**Place:** Courtroom 9A<br>**Judge:** Hon. Percy Anderson |

# TABLE OF CONTENTS

*Pages*

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ............................................................................................. 2

    A. The Entire Premise Underlying Craig's Opinion Is a False Construct in Service of PPC's Strawman Argument ........................................... 2

    B. Craig's Opinions Fail for Numerous Reasons Under *Daubert* .......... 4

        1. Craig's Report Is Unhelpful to the Fact Finder ....................... 4

        2. Using Hearsay Statements to Establish the Truth Is Improper, Even for Experts ................................................. 5

        3. Craig's Pseudo-Literary Analysis Serves Only to Confuse the Fact Finder ......................................................... 8

        4. Craig's Few Technical Observations Do Not Aid the Court's Literary Comparison .......................................... 10

# TABLE OF AUTHORITIES

*Pages*

**CASES**

*Alfred v. Walt Disney Co.*,
   821 F. App'x 727 (9th Cir. 2020) ............................................................... 3, 4, 9

*Authors Guild v. Google*,
   804 F.3d 202 (2d Cir. 2015) ................................................................................ 3

*Boyle v. United Technologies Corp.*,
   487 U.S. 500, 510 (1988) .................................................................................... 7

*Caldwell v. Cty. of San Francisco*,
   No. CV 12-1892 DMR, 2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) ............ 5

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ............................................................................... 3

*Corbello v. DeVito*,
   844 F. Supp. 2d 1136 (D. Nev. 2012) ................................................................. 3

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ......................................................................................... 4, 7

*Design Basics, LLC v. Drexel Bldg. Supply, Inc.*,
   No. 13-C-560, 2016 WL 5794746 (E.D. Wis. Oct. 4, 2016) ............................ 11

*Dolby Labs. Licensing Corp. v. Adobe Inc.*,
   No. CV 18-1553, 2019 WL 6327210 (N.D. Cal. Nov. 26, 2019) .................. 4, 9

*Fujifilm Corp. v. Motorola Mobility LLC*,
   No. CV 12-3587, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015) .................. 4, 12

*Gable v. Nat'l Broad. Co.*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010) ............................................................. 10

*Gennie Shifter, LLC v. Lokar, Inc.*,
   No. CV 07-1121, 2010 WL 126181 (D. Colo. Jan. 12, 2010) ........................... 9

*Harper & Row v. Nation Enters.*,
    471 U.S. 539 (1985) ................................................................................................. 3

*Honeywell Int'l, Inc. v. W. Support Grp., Inc.*,
    947 F. Supp. 2d 1077 (D. Ariz. 2013) ....................................................................... 9

*In re Citric Acid Litigation*,
    191 F.3d 1090 (9th Cir. 1999) ....................................................................... 5, 8, 12

*Leite v. Crane Co.*,
    868 F. Supp. 2d 1023, 1036 (D. Haw. 2012) ............................................................ 8

*Kohus v. Mariol*,
    328 F.3d 848, 857-59 (6th Cir. 2003) ................................................................ 11, 12

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013) ....................................................................................... 7

*Paddack v. Dave Christensen, Inc.*,
    745 F.2d 1254 (9th Cir. 1984) .................................................................................... 6

*RJ Control Consultants, Inc. v. Multiject, LLC*,
    981 F.3d 446 (6th Cir. 2020) .................................................................................... 12

*SecureInfo Corp. v. Telos Corp.*,
    387 F. Supp. 2d 593 (E.D. Va. 2005) ......................................................................... 9

*Sid & Marty Krofft TV Prods., Inc. v. McDonald's Corp.*,
    562 F.2d 1157 (9th Cir. 1977) .................................................................................... 3

*United States v. Mehanna*,
    735 F.3d 32 (1st Cir. 2013) ........................................................................................ 4

*Ward v. 84 Lumber Co.*,
    No. CV 12-10490, 2013 WL 12415465, at *6 (C.D. Cal. Mar. 11, 2013) ................ 7

**FEDERAL STATUTES, RULES AND REGULATIONS**

Fed. R. Evid.
    403 ............................................................................................................................. 9

Fed. R. Evid.

    702 ................................................................................................... 4, 8

    703 ........................................................................................................ 6

    802 ........................................................................................................ 6

**OTHER AUTHORITIES**

4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* (2023 rev. ed.) ..... 3

3 Jack Weinstein & Margaret Berger, Weinstein's Evidence (1988 ed.) ............ 4

## I. INTRODUCTION

Andrew Craig's testimony is based entirely on hearsay and is unmoored to any claimed expertise. Having no meaningful excuse for this, Paramount Pictures Corp. ("PPC") falls back on false theories of the case, cites inapposite cases, and dwells on semantics to try to mislead this Court into believing Craig's testimony is in any way helpful to its "extrinsic" analysis.

Throughout its Opposition, PPC repeats a common refrain that the military is a "complex industry" and thus Craig, a Navy pilot, should be able to opine on everything within it. Dkt. 68 (PPC's Opposition) ("Opp.") 2, 4, 6. But PPC aggrandizes Craig's "specialized knowledge." Just because he is a pilot, even an accomplished one, does not mean he can opine on purported facts that occurred decades before his time, or that are fully within the understanding of a lay fact finder. PPC *repeatedly* insists Craig's expertise as a pilot is necessary in this case to do what is self-evident, that is, separate facts from expression in Yonay's 1983 story "Top Guns" ("Story"). Both the Court and the fact finder can easily decipher between a naked fact and its expression in a literary work.

Despite PPC's strained characterization of the Story as a labyrinth of cryptic technical language akin to software code or architectural drawings, it is not. It's simply a story published for a general audience and anyone who can read a magazine is capable of recognizing the facts contained in it. The truth is that Craig's report is only helpful to prop up PPC's misdirection and its fact/fiction strawman which is *not* the analysis. The real issues before the Court are whether Yonay's *expression* of non-fictional content and the literary elements it evokes (themes, mood, etc.) are similar to those in *Maverick* and separately, whether the selection and arrangement of portions of the works are similar.

In furtherance of the mirage it fosters, PPC cites inapposite caselaw that permits technical experts to opine on issues *within their expertise* and which are *actually needed* to decipher technical writings. While a literary expert may be

qualified to opine on the differences between "creative expression" and underlying "factual matter" in Yonay's Story, Craig has no such expertise. Nor does Craig have expertise as a Naval historian. Yet, PPC repeatedly cites a case allowing expert testimony *from a Naval historian* about Naval history to support its claim that Craig, *a pilot*, must be allowed to do the same.

PPC further misleads the Court about Craig's affirmative attestations as to what the "facts" are by mislabeling them his "opinions." But facts and opinions are different things. PPC's intentional misbranding is an attempt to lodge Craig's "opinions" as affirmative facts in the case, which is patently improper as such facts must be introduced through percipient witness testimony or documentary evidence. But since Craig has no personal knowledge of anything that happened at Top Gun in 1983 when Yonay wrote his Story, he is completely unable to provide such percipient witness testimony.

The only pertinent parts of Craig's reports are those discussing what Top Gun was like in 1983, when Yonay wrote his Story. But because Craig was four years old then, and did not join the Navy until 2002, all his opinions of Top Gun in the relevant period come from hearsay he heard, or his amateur takes on military history, neither of which rise to the level of admissible expert opinions. For these reasons and those that follow, the Court should exclude his reports.

## II. ARGUMENT

### A. The Entire Premise Underlying Craig's Opinion Is a False Construct in Service of PPC's Strawman Argument.

PPC manufactures a false narrative of this case through the supposed expert opinions of Craig. The whole premise underlying his reports, and indeed PPC's entire purported defense, is to prove the Story is nonfiction and that somehow equates to proving the Story is unprotectable. Dkt. 70 (PPC's Opp. to Pls.' Mot. for Summ. J.) 5 (arguing Plaintiffs do not "point to a single element of the Article they contend is fictional"); Dkt. 69 (PPC's Opp. to Pls.' Mot. to

Exclude Rep. of James McDonald) 17 (parroting "Plaintiffs have failed to identify any fictional elements contained therein"). But that premise is false. The analysis here is *not* whether Yonay's Story is fiction or non-fiction because "Creation of a nonfiction work, even a compilation of pure fact, entails originality[]" and is copyrightable, as even PPC was forced to finally admit. *See Harper & Row v. Nation Enters.*, 471 U.S. 539, 457 (1985); *Authors Guild v. Google*, 804 F.3d 202, 220 (2d Cir. 2015) ("[A]uthors of factual works, like authors of fiction, should be entitled to copyright protection of their protected expression."); *Corbello v. DeVito*, 844 F. Supp. 2d 1136, 1163 (D. Nev. 2012) ("Non-fiction works are also protected—not the historical facts themselves, but the creative presentation of those facts.").

What is really at issue, as Plaintiffs have claimed from the start, is that PPC stole Yonay's *creative expression* and the literary elements his expression evokes (*e.g.*, characters, pacing, sequencing, mood, themes, etc.), and his *selection and arrangement* of non-fictional content. Thus, Craig's opinions as to what is "factually accurate" in the Story does nothing to aid the Court's analysis of these claimed similarities of the extrinsic factors, and separately, Yonay's selection and arrangement of non-fictional content. *See Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020) (explaining expert testimony is useful in substantial similarity cases to "aid in determining whether *the similarities Plaintiffs identify* are qualitatively significant" in the context of the stories being told) (emphasis added). Craig's "opinions" as to "factual accuracies" in the Story say nothing about Yonay's expression of those facts, nor does he or can he speak to any of the literary similarities identified by the Plaintiffs. Furthermore, analyzing similarities in selection and arrangement involves *no* filtration, even of alleged unprotected elements. 4 *Nimmer on Copyright* § 13.03 n.25 (citing *Sid & Marty Krofft TV Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 827 (9th Cir. 2002).

PPC's fabricated strawman issue of "fact" vs. "fiction" is not the relevant question, as that distinction does not relate to any cognizable standard governing copyright protection. Craig's opinions serve merely to further this phantom distinction and should be excluded on this basis alone. Fed. R. Evid. 702 (requiring that expert testimony "assist the trier of fact to understand the evidence or to determine a fact *in issue*") (emphasis added); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful.'" (quoting 3 Weinstein Berger ¶ 702[02], p. 702-18)); *U.S. v. Mehanna*, 735 F.3d 32, 67 (1st Cir. 2013) (affirming exclusion of expert opinion on a "non-issue").

### B. Craig's Opinions Fail for Numerous Reasons under *Daubert*.

#### 1. *Craig's Report Is Unhelpful to the Fact Finder.*

Craig's report is full of rudimentary observations that any layperson could also make and is thus more "properly presented through percipient witnesses and documentary evidence." *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015). Expert opinions like Craig's which, with no personal knowledge, attempt to establish other lay witness accounts must be excluded. *Id.* PPC goes on about the "complexity" of the "industry" to try to fit Craig's report into the language of the caselaw and elevate his assertions, but to no avail. First, there is nothing "complex" about describing the contents of a picture, the brass bell in a bar, identifying plaques on a wall or the many other purportedly "expert" observations made by Craig. Further, the standard for expert admissibility is not whether the expert's area of expertise is specialized, but whether the *topics on which he opines* are material and require that specialized knowledge to understand them. *Dolby Labs. Licensing Corp. v. Adobe Inc.*, 2019 WL 6327210, at *2 (N.D. Cal. Nov. 26, 2019) ("To the extent that an issue is within the sphere of a fact finder's understanding, an 'expert' cannot usurp that role."). Here, the fact finder really needs no assistance.

- 4 -

Just because pilots may operate complicated equipment does not transform Craig's elementary observations into specialized ones, as PPC insists. No one needs to graduate at the top of their class at Top Gun to discern that "pictures still hang on the wall in the TOPGUN schoolhouse," "stenciled aircraft are still present in Hangar 1," the "Officers Club at MCAS Miramar is decorated with cruise plaques," or to look at "photographs of the 'WELCOME TO FIGHTERTOWN U.S.A.' sign." Rep. at 9-10. Yet, to resuscitate its ill-fated expert report, PPC contends we do. Nonsense. The Court should not let PPC or its expert wrest what is the province of the fact finder.

### 2. Using Hearsay Statements to Establish the Truth Is Improper, Even for Experts.

Craig's report should further be stricken because it merely recycles hearsay to establish the truth of those statements. *See Caldwell v. Cty. of San Fran.*, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony."); *In re Citric Acid Litigation*, 191 F.3d 1090, 1102 (9th Cir. 1999) ("The law is clear [] that an expert report cannot be used to prove the existence of facts set forth therein.").

To save his report, PPC tries to mischaracterize Craig's hearsay (*e.g.*, retelling stories he heard, parroting what Naval archives allegedly say) as expert "opinions" about what the "facts" of Top Gun are—a matter for percipient witness or documentary evidence, <u>not</u> expert "opinion." Furthermore, Craig cannot and does not offer any insight or opinions about these hearsay statements other than to rubberstamp them as "true" without any real knowledge of that.

In his report, for example, Craig states that the "'WELCOME TO FIGHTERTOWN U.S.A.' stenciled sign at the end of the runway was real, as confirmed to me by many naval aviators who were at NAS Miramar in the 1980s." Rep. at 9. He inserts this for the sole purpose of convincing the Court

that it is so. As another example, Craig claims that Yogi and Possum's "Wolfpack" squadron "is a real US Navy Fighter Squadron. According to the US Navy Archives, it was established on October 14, 1972 and disestablished on September 30, 1993." Rep. at 11. He offers no opinion beyond merely stating that it is so. These are classic instances of hearsay, which Craig relies on not to "render an opinion based on facts or data," as is required for his opinions to be admissible, but simply to promote the truth of the matters asserted by hearsay documents and hearsay declarants. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed. R. Evid. 703, but not as general proof of the underlying matter, Fed. R. Evid. 802.").

PPC tries to gloss over Craig's hearsay by calling it "historical knowledge." But this too fails. Craig is not, nor does he even claim to be, a military historian, though he repeatedly opines on military history and the history of Top Gun. Really, the only marginally relevant opinions a witness could have would be those relating to Top Gun in 1983 when Yonay wrote his Story. But it is impossible for Craig to have personal knowledge of *any* aspect of Top Gun during the relevant period because he was a young child then and did not even join the Navy until nineteen years later in 2002. Rep. at 1.

Craig's supposed "historical knowledge of Top Gun," as to which he is not an expert and solely relies on hearsay, does not "supplement[] his personal experiences," as PPC claims, but rather supplies the sum and substance of his report, which seeks to establish what was true of Top Gun *in 1983*. Rep. at 9 (describing the decor used and protocols in place at the Officers Club at MCAS Miramar "[j]ust as it was in 1983" and "[t]he exact Warning Areas referenced in the Article" as they "existed in 1983"), 12 (giving a detailed account of fighter pilot missions during the Vietnam War in 1972), 12, 18 (asserting that training tactics used at TOPGUN today are "no different than in 1983" and others were

"common practice in 1983"), 18 (describing personal relationships between pilots and Radar Intercept Officers that were "typical in 1983").

At most, Craig is an expert pilot, but having merely attended or taught at a flight training school does not qualify him to opine on U.S. military history. And thus, since he is not a Naval historian, by definition, his lay observations on Naval history are those any lay juror would be equally capable of making. Top Gun pilots who were around in the 1980s can just as easily tell jurors where the "FIGHTERTOWN" sign was. We don't need the number one Top Gun graduate of 2009 to comprehend this. Even the case PPC cites agrees. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (holding that even historians (which Craig is not) are not allowed to provide factual narratives through expert testimony, noting, "[t]he appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events").

The other cases PPC relies on also do not save Craig's improper report. PPC cites *Ward v. 84 Lumber Co.* but the expert in that case was a Naval medical doctor. 2013 WL 12415465, at *6 (C.D. Cal. Mar. 11, 2013). His "knowledge and expertise of ... the dangers of asbestos [was] competently demonstrated by this experience researching, studying, and writing on the topic while he was employed by the Navy." *Id.* Craig, on the other hand, is a pilot, not a military historian. He has never written journal articles, lectured, or formally studied the history of Top Gun or the U.S. Navy. The foundation laid for the expert testimony in *Ward* simply does not exist here, as merely being a top fighter pilot and weaving together tidbits picked up from looking at plaques on the wall or talking to older pilots at the Officer's Club do not cut it under *Daubert*.

PPC resorts to citing an inapposite line of asbestos liability cases under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 510 (1988) simply because they involve the Navy. Opp. 10-11. But "what the Navy would, or would not, have allowed as to asbestos warnings" is an *opinion* based on a hypothetical and

*is* proper expert testimony. *Leite v. Crane Co.*, 868 F. Supp. 2d 1023, 1036 (D. Haw. 2012); Fed. R. Evid. 702, Adv. Comm. note. Attempting to insert anecdotal layperson accounts into the record as affirmative *facts*, however, is not. *In re Citric Acid Litigation*, 191 F.3d at 1102 ("[A]n expert report cannot be used to prove the existence of facts set forth therein."). Craig does not *opine* on what "would have" happened in 1983, he purports to establish exactly what did happen as hard fact. *See, e.g.*, Rep. at 9 ("Just as it was in 1983, today the Officers Club at MCAS Miramar is decorated with cruise plaques"), 10 ("[Yogi and Possum] are real people who attended and graduated from []TOPGUN").

Craig adds no expertise or opinion to his hearsay accounts, for which he merely acts as a conduit, and therefore offers nothing resembling "expert opinion." Rather, he gives unwarranted, hearsay-laden testimony on 1983 matters as to which he has no personal knowledge. His report must be excluded.

### 3. *Craig's Pseudo-Literary Analysis Serves Only to Confuse the Fact Finder.*

As briefed in Plaintiffs' Motion and discussed above, PPC's entire premise for Craig's identification of purported "factual accuracies" is a red herring. Dkt. 57 ("Mot.") § III.B; *supra* § II.A. It serves merely to confuse the fact finder into believing anything Craig says is "factual" is unprotectable, whereas Yonay's *expression* of those facts and, separately, their *selection and arrangement* are what this case is actually about. *Id.*; Fed. R. Evid. 403. PPC does not cite a single case where courts needed the help of a non-literary expert to determine what is fact versus creative expression in a non-fictional literary work. Indeed, PPC *admits* in its Opposition to Plaintiffs' Motion to Exclude James McDonald that "the factual elements of the [Story] ... *can be determined* ... *without reference to Craig's report.*" Dkt. 69, at 17 (emphasis added).

Despite this contradiction and clear lack of helpfulness from Craig, PPC tries to argue that because a software expert was allowed to opine on whether

- 8 -

aspects of *source code* were "expression" or involve "creativity," Craig, a pilot, should be allowed to submit "expert" opinion on what is "expression" or "creativity" in a *magazine story.* Opp. 16 n.3 (discussing *Dolby Labs.*, 2019 WL 6327210). This analogy fails for many reasons. Craig is not a literary expert, so his "expertise" on whether a story's *expression* reflects *creativity* is not comparable to that of the software engineer in *Dolby Labs* regarding source code. 2019 WL 6327210, at *4. Craig's "opinions" are layperson accounts about people, places, and events, unlike computer code which requires software experts to decipher for the fact finder to understand it. *Id.* Finally, to the extent Craig does opine on technical matters outside lay comprehension, that does not speak to any of the similarities *claimed by the Plaintiffs*, which all have to do with literary similarities concerning Yonay's creative telling of a Story. *Alfred v. Walt Disney Co.*, 821 F. App'x at 729 (explaining expert testimony is useful to "aid in determining whether *the similarities Plaintiffs identify* are qualitatively significant" to the stories being told) (emphasis added). Yonay's Story in *California Magazine* is not, as PPC would have this Court believe, a manual on how to fly a plane.[1]

PPC points to language in Plaintiffs' Opposition to PPC's Motion to Dismiss (incorrectly referred to as opposing summary judgment) which says the "extrinsic test ... requires analytical dissection of a work and expert testimony," to contend that the Court cannot exclude Craig's "analytical dissection." But this misses the simple point that Craig is not a literary expert. He's a pilot offering amateur literary analysis of what should be filtered out of Yonay's Story under the "extrinsic test." *See, e.g.*, Rep. at 8, 9; Rebuttal at 1, 4, 5.

---

[1] Even if it was, such a manual may be entitled to copyright protection. *See Honeywell Int'l, Inc. v. W. Support Grp., Inc.*, 947 F. Supp. 2d 1077, 1081-82 (D. Ariz. 2013) (finding aircraft manuals that included "procedures for checking and repairing aircraft parts" copyrightable); *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 611 (E.D. Va. 2005) (finding "manuals conveying a detailed procedure to accomplish a specific goal," such as a software manual, copyrightable); *Gennie Shifter, LLC v. Lokar, Inc.*, 2010 WL 126181, at *16 (D. Colo. Jan. 12, 2010) (finding "Installation Instructions" constitute "protectable creative expression").

PPC further claims that Craig's literary analysis is warranted in his Rebuttal because he is addressing claims made by Plaintiffs' literary expert, Henry Bean. But PPC cites no authority for the proposition that it is appropriate for a pilot (or other non-literary expert) to rebut a literary expert's opinion on the issue of substantial similarity of creative works. To the contrary, it is entirely outside Craig's expertise to opine on this topic. *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 833-34 (C.D. Cal. 2010) (excluding expert report of a lawyer with expertise in copyright law, but no demonstrated expertise in literature, for opining on substantial similarity between literary works).

Craig's opinions on the creative works at issue are irrelevant and serve only to mislead the fact finder into believing that PPC's strawman and Craig's purported confirmation of "factual accuracies" is relevant to the copyright analysis, which instead must focus on Yonay's *expression*, the literary elements it evokes (characters, pacing, sequencing, mood, themes, etc.) and his *selection and arrangement* of even unprotectable content.

### 4. *Craig's Few Technical Observations Do Not Aid the Court's Literary Comparison.*

To the extent Craig does apply aviation expertise to establish something (*e.g.*, "the risks of extreme G-forces" (Rep. 15), or that "the air-to-air radar of most fighter jets only detects targets out of the front of the aircraft" (Rebuttal 6)), this likewise does not aid the Court's analysis. For example, Plaintiffs' expert identifies the following expressive similarity:

> "*Strapping on 25 tons of airplane*" [quoting the Story] and pulling torturous Gs at supersonic speed is what adrenaline-junky top fighter pilots love and live for. In just that vein, Maverick, in the opening sequence of the Sequel, takes an experimental jet up to Mach 10 (he was only supposed to go to 9) then pushes it past 10 until it looks like the G force will pull the skin off his face and everything goes black.

Dkt. 59-5 (Expert Report of Henry Bean ("Bean Rep.")) 18. Bean is quoting from a passage in Yonay's Story expressing the pilots' unshakable love of flying:

> 'How do you explain 6.5 Gs [six and a half times the force of gravity] – that you're sitting there and you weigh 200 pounds, but when you turn for that bad guy you suddenly weigh more than 1,300? Or how if you pull too many Gs a lot of times you start to black out, and how do you explain that you were in an airplane flying around and you blacked out?' ... Heater throws up his hands. He knew it was pointless even to try to explain. ... 'I like pulling Gs. I like strapping on 25 tons of airplane and hustling around the sky. I like that.' So that's where it all starts. With the love of flying.

Dkt. 62-3 (Story) at YONAY01242. The Story does not merely explain the science behind G-forces or their effect on the body—it uses the *expression* of intense, skin-pulling gravitational forces to illustrate the daring machismo of the characters in the Story, which PPC lifts for the same expression of its characters' values and motivations in the Sequel. That it is "factually accurate" that gravity has an intense effect on pilots is largely irrelevant to the character traits, themes, mood, etc. that Yonay's expression evokes and the similar emphasis, selection and arrangement of such things in the works at issue. The idea that pilots are daring "adrenaline junkies" can be expressed in a myriad of ways, and both the Story and Sequel chose to use the intense physical effect of gravitational forces to illustrate key character traits, and to animate their stories by heightening tension, jeopardy and suspense. A court does not need an expert to inform it that gravity is real when analyzing the expression of these literary elements.

      Take PPC's architecture and engineering cases for instance. In those cases, courts needed technical assistance determining what "engineering or design requirements [] are common to all single-family homes," or "which features are common to a given style or floor plan." *Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, 2016 WL 5794746, at *2 (E.D. Wis. Oct. 4, 2016). The analogy to that kind of expert testimony here would be an expert opining on story structures, plots, or literary tropes common to aerial warfare stories—a literary analysis Craig is not qualified to opine on (though he tries).

      Similarly, PPC cites *Kohus v. Mariol*, which held that filtering out utilitarian aspects of engineering drawings would "almost certainly require

- 11 -

expert testimony, because the drawings are technical in nature and a layperson is unlikely to understand what constitutes creativity in this area[.]" 328 F.3d 848, 857-59 (6th Cir. 2003). PPC uses this to argue that Craig may provide "expert" testimony on "Top Gun's physical settings ... social life ... and *commonly-known aspects* of the Top Gun training experience." Opp. 8 (emphasis added). Unlike the highly technical drawings in *Kohus*, the "facts" to which Craig attests require no specialized knowledge. A layperson is perfectly capable of understanding such "commonly-known aspects," without expert translation.

      Likewise, anyone can watch a movie or read a story to determine for themselves where underlying dry facts differ from the work's expression of those facts (*see*, *e.g.*, Dkt. 62 at 6-13; Dkt. 62-22 (Plaintiffs' graph readily distinguishing facts from their expression in the works)), which is entirely different from needing an expert "in the context of software code [which] requires a line-by-line understanding of the code, including what specific lines in that code are purely functional[.]" *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 457-58 (6th Cir. 2020) (cited by PPC). The "facts" to which Craig attests are readily understood by a lay juror, and are therefore "'properly presented through percipient witnesses and documentary evidence,' not through expert testimony." *Fujifilm Corp.*, 2015 WL 757575, at *27.

      Furthermore, to the questionable extent Craig's determinations of "fact" (characterized as "opinions" by PPC) were even material, such would be equally improper expert testimony. *In re Citric Acid Litigation*, 191 F.3d at 1102 ("[A]n expert report cannot be used to prove the existence of facts set forth therein."). In sum, PPC has failed to establish any reason why the irrelevant, unqualified, and unhelpful opinions and testimony of Andrew Craig should not be excluded. This Court should therefore strike them.

DATED: December 11, 2023      Respectfully Submitted,

TOBEROFF & ASSOCIATES, P.C.

By: <u>*/s/ Marc Toberoff*</u>
      Marc Toberoff

*Attorneys for Plaintiffs*

- 13 -

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, Shosh and Yuval Yonay, certifies that this brief complies with the Court's Standing Order, Dkt. 10, in that it is 12 pages in length.

DATED: December 11, 2023    Respectfully Submitted,

                                      TOBEROFF & ASSOCIATES, P.C.

                                      By: */s/ Marc Toberoff*
                                              Marc Toberoff

                                      *Attorneys for Plaintiffs*