MOLLY M. LENS (S.B. #283867)
  mlens@omm.com
MATTHEW KAISER (S.B. #304714)
  mkaiser@omm.com
DANIELLE R. FEUER (S.B. #324174)
  dfeuer@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

*Attorneys for Defendant*
*Paramount Pictures Corporation*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOSH YONAY and YUVAL YONAY, <br><br>      Plaintiffs, <br><br>    v. <br><br> PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and DOES 1-10, <br><br>      Defendants. | Case No. 2:22-CV-3846-PA <br><br> **PARAMOUNT PICTURES CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE** <br><br> [Declaration of Molly Lens, Declaration of Matthew Kaiser, and [Proposed] Order filed concurrently herewith] <br><br> **Hearing Date:** January 8, 2024 <br> **Hearing Time:** 1:30 PM <br> **Place:** Courtroom 9A <br> **Judge:** Hon. Percy Anderson |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ........................................................................................ 1

    A.   The Parties' Document Productions. ................................................ 1

    B.   The Parties' September Meet-and-Confer Discussions. ..................... 2

    C.   Plaintiffs' Motion for Summary Judgment. ...................................... 3

    D.   PPC's Inadvertently-Delayed Production of the Preview Cut ............. 4

III.  ARGUMENT ............................................................................................ 5

    A.   The Court Should Not Consider Plaintiffs' Motion Because It Is
        Procedurally Improper. ................................................................... 5

    B.   PPC's Delayed Production of the Preview Cut Was Both
        Substantially Justified and Harmless. .............................................. 7

    C.   The Preview Cut Is Admissible, and Plaintiffs' Argument to the
        Contrary Does Not Provide a Basis for Striking It Regardless. ......... 16

    D.   The Relief Plaintiffs Seek Is Overbroad. ....................................... 19

IV.   CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archie v. Pop Warner Little Scholars, Inc.*,
2019 WL 13020480 (C.D. Cal. Oct. 10, 2019) ...................................................16

*Arroyo v. Cervantes*,
2019 WL 8755115 (C.D. Cal. Aug. 16, 2019) ......................................................6

*Ayer v. Frontier Commc'ns Corp.*,
2017 WL 8116437 (C.D. Cal. July 6, 2017) ........................................................7

*Chinitz v. Intero Real Est. Servs.*,
2021 WL 1375837 (N.D. Cal. Apr. 12, 2021) ....................................................18

*Desire, LLC v. Manna Textiles, Inc.*,
2017 WL 5635009 (C.D. Cal. Aug. 18, 2017) .............................................17, 18

*Estate of Najera-Aguirre v. County of Riverside*,
2018 WL 10152556 (C.D. Cal. Dec. 7, 2018) ......................................................6

*Fraser v. Goodale*,
342 F.3d 1032 (9th Cir. 2003) ............................................................................18

*Fusion IV Pharms., Inc. v. California*,
2018 WL 6118586 (C.D. Cal. Aug. 22, 2018) ......................................................7

*Futamura ex rel. Est. of Futamura v. Unum Life Ins. Co. of Am.*,
305 F. Supp. 2d 1181 (W.D. Wash. 2004) ..........................................................12

*Garcia v. Gateway Hotel L.P.*,
2021 WL 3556826 (C.D. Cal. Apr. 6, 2021) ........................................................7

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) ............................................................................18

*Hodges v. Hertz Corp.*,
351 F. Supp. 3d 1227 (N.D. Cal. 2018) ..............................................................18

*In re Kaypro*,
218 F.3d 1070 (9th Cir. 2000) .....................................................................17, 18

*In re Korean Ramen Antitrust Litig.*,
281 F. Supp. 3d 892 (N.D. Cal. 2017) ..........................................................17, 18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*McGhee v. N. Am. Bancard, LLC*,
  2021 WL 5764708 (S.D. Cal. June 28, 2021) ......................................................11

*Merchant v. Corizon Health, Inc.*,
  993 F.3d 733 (9th Cir. 2021) ..................................................................................8

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
  2017 WL 10573941 (C.D. Cal. Nov. 16, 2017) ....................................................12

*Pogrebnoy v. Russian Newspaper Distribution, Inc.*,
  742 F. App'x 291 (9th Cir. 2018) ...........................................................................6

*Rago v. Select Comfort Retail Corp.*,
  2021 WL 3621890 (C.D. Cal. June 11, 2021) .......................................................13

*Reg'l Serv. Corp. v. Greenpoint Mortg. Funding, Inc.*,
  2009 WL 10700231 (C.D. Cal. Apr. 6, 2009) .........................................................7

*RES Exhibit Servs., LLC v. LNW Gaming, Inc.*,
  2023 WL 6296050 (D. Nev. Sept. 27, 2023) .........................................................13

*Silver State Intell. Techs., Inc. v. Garmin Int'l, Inc.*,
  32 F. Supp. 3d 1155 (D. Nev. 2014) ...............................................................17, 18

*Tolan v. Cotton*,
  572 U.S. 650 (2014) ..............................................................................................15

*Tri-Valley CARES v. U.S. Dep't of Energy*,
  671 F.3d 1113 (9th Cir. 2012) .................................................................................6

*UMG Recordings, Inc. v. Am. Home Assurance Co.*,
  2006 WL 8451158 (C.D. Cal. Feb. 27, 2006) ......................................................16

*United States v. Workinger*,
  90 F.3d 1409 (9th Cir. 1996) .................................................................................17

*Voyager Indemnity Ins. Co. v. Zalman N., Inc.*,
  2023 WL 2904591 (C.D. Cal. Apr. 7, 2023) ........................................................13

*Zucchella v. Olympusat, Inc.*,
  2021 WL 4706541 (C.D. Cal. Mar. 30, 2021) ........................................................6

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page(s)**

4

**Rules**

5

C.D. Cal. L.R. 7-3 ................................................................................................. 5

6

C.D. Cal. L.R. 37-1 ........................................................................................... 5, 6

7

Fed. R. Civ. P. 37 ................................................................................................. 7

8

Fed. R. Evid. 602 ............................................................................................... 18

9

Fed. R. Evid. 901 ......................................................................................... 16, 17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

## I.  <u>INTRODUCTION</u>

Plaintiffs seek discovery sanctions against PPC for its inadvertently-delayed production of a single document that PPC used in its opposition to a narrow (and moot) portion of their summary judgment motion about which they never conferred.  Notwithstanding their claim of surprise, Plaintiffs have long known about the December 11, 2019 preview of *Maverick*, which was disclosed in documents produced during discovery, including one Plaintiffs introduced as evidence to support their own motion for summary judgment.  But Plaintiffs never asked PPC for a copy of the preview itself (the "Preview Cut")—let alone "repeated[ly]" so, Mot. at 1—and PPC did not independently realize it had not been produced, as the document was housed on a separate platform from all other discovery materials with heightened security protocols to protect its confidentiality.  PPC promptly produced the Preview Cut upon realizing its mistake.  To be clear, PPC regrets that the Preview Cut was not timely produced, but this inadvertent and non-prejudicial delay does not provide a basis for striking the document from the summary judgment record.

## II.  <u>BACKGROUND</u>

### A.  The Parties' Document Productions.

Plaintiffs and PPC each propounded requests for production of documents in early January 2023.  Declaration of Molly Lens ("Lens Decl.") ¶ 3.  PPC made its first document production promptly thereafter, on January 20, 2023, which was followed in March 2023 by meet-and-confer discussions that resolved the handful of disputes Plaintiffs raised about that initial production.  *Id.* ¶¶ 4-5.  PPC made its second document production in April 2023, and rolling supplemental productions throughout the discovery period.  *Id.* ¶¶ 6-7.  In all, PPC produced over 12,000 documents, comprising nearly 170,000 pages.  *Id.* ¶ 8.

Plaintiffs, by contrast, repeatedly refused to cooperate in discovery.  As of July 2023, Plaintiffs still had not produced a single document, despite five months

PPC'S OPP. TO PLS.' MOT. TO STRIKE
CASE NO. 2:22-CV-3846-PA

of conferral letters and outreach in vain by PPC (to which Plaintiffs often refused to respond at all). *Id.* ¶ 9. Left with no other option, PPC moved to compel on July 24. *Id.* ¶ 10; Dkt. 40. Plaintiffs did not oppose the motion, and the Court ordered them to produce documents and complete that production no later than August 21, 2023. Lens Decl. ¶¶ 11-12; Dkts. 44, 46. On the August 21 deadline, Plaintiffs finally made their first production of documents, though it was deficient in form and substance. Lens Decl. ¶ 13. Among other issues, their documents were produced as one agglomerated file—though not received that way by Plaintiffs' counsel—and without text searchability, custodial information, or, in several cases, legible scanning. *Id.*

Although the Court's order mandated that Plaintiffs *complete* their document production by August 21, Dkt. 46, Plaintiffs made a further untimely production over a month later on September 25. Lens Decl. ¶ 14. And a month after that, on October 30—that is, not only after their Court-ordered production deadline, but also well after the October 6, 2023 close of liability discovery—Plaintiffs made yet another untimely production with a video that they would use in their summary judgment motion just one week later. *Id.* ¶ 15. Then, with their summary judgment motion, Plaintiffs still introduced 10 altogether-unproduced documents, and another unproduced document on reply. *Id.* ¶¶ 16, 18.

**B.  The Parties' September Meet-and-Confer Discussions.**

On September 14, 2023, after six months of silence about PPC's document productions, Plaintiffs sent PPC a letter to raise purported issues therewith. *Id.* ¶ 20 & Ex. 1. One of the subjects Plaintiffs raised was their desire for "original, unedited interviews" documenting the development of the 1986 *Top Gun* film and *Maverick*. *Id.* ¶ 21 & Ex. 1 at 2. Plaintiffs did not raise the topic of the December 11, 2019 preview of *Maverick*, or any prior or subsequent previews. *Id.* PPC sent Plaintiffs a responsive letter on September 21, addressing the topics that Plaintiffs covered in their letter. *Id.* ¶ 22 & Ex. 2. On the subject of interviews, PPC

1  explained that Plaintiffs' request was outside the scope of the parties' specific

2  agreement as to what PPC would produce in response to the relevant Request for

3  Production.  *Id.* ¶ 22 & Ex. 2 at 5.  The parties then spoke on September 22, during

4  which the parties again discussed audio and video interviews but Plaintiffs did not

5  request any of the production footage from the making of the movie, much less any

6  of the previews.  *Id.* ¶ 23.[1]

7      **C.  Plaintiffs' Motion for Summary Judgment.**

8      On October 12, 2023, Plaintiffs sent PPC a meet-and-confer letter pursuant to

9  Local Rule 7-3 advising that they intended to file a motion for summary judgment.

10  Declaration of Matthew Kaiser ("Kaiser Decl.") ¶ 3.  The letter stated two grounds

11  for Plaintiffs' summary judgment motion: (1) "As to their claims for declaratory

12  relief and copyright infringement, Plaintiffs are entitled to judgment as a matter of

13  law because Paramount's infringing film, *Top Gun: Maverick* ('*Maverick'*), is

14  substantially similar to Ehud Yonay's ('Yonay') story, *Top Guns* ('Story')"; and (2)

15  "as to their breach of contract claim[,] [t]he language and intent of the contract

16  required Paramount to accord credit to Yonay on Maverick for the film's use of the

17  Story's plot, themes, and characterizations."  *Id.* ¶ 3 & Ex. 1.  The next day, the

18  parties conducted a conference of counsel about Plaintiffs' summary judgment

19  motion (and other contemplated motions).  *Id.* ¶ 4.  Plaintiffs' counsel again stated

20  that their motion would be based on the purported substantial similarity between the

21  works and again did not mention PPC's Derivative Works Exception defense.  *Id.*

22  Plaintiffs filed their summary judgment motion on November 6, 2023, seeking

23  summary judgment not only as to the issue of substantial similarity but also as to

24  PPC's Derivative Works Exception defense.  *See* Dkt. 62.

25  _____

[1] The parties also met and conferred about unrelated issues on September 22.  Lens Decl.
26  ¶ 24.  In response to one of these separate issues, PPC produced a few additional
documents.  *Id.*  PPC also produced a handful of additional publicly-available documents
27  that it intended to rely upon—including the video from the U.S. Navy referenced in Mr.
Toberoff's declaration.  *Id.*  This video was completely unrelated to the parties' meet-and-
28  confer discussion.  *Id.*

PPC'S OPP. TO PLS.' MOT. TO STRIKE
CASE NO. 2:22-CV-3846-PA

### D.  PPC's Inadvertently-Delayed Production of the Preview Cut

Because of this meet-and-confer failure, PPC had to work quickly to develop its opposition to Plaintiffs' argument on the Derivative Works Exception.  Lens Decl. ¶ 25.  As part of that argument, PPC's counsel went to cite the December 11, 2019 Preview Cut, which had been shown before Plaintiffs' copyright termination took effect on January 24, 2020.  *Id.* ¶ 26.  But in looking for a produced copy of the Preview Cut to cite, PPC's counsel realized that the Preview Cut inadvertently had not been produced.  *Id.* ¶ 27.  Because the Preview Cut is relevant *only* to the Derivative Works Exception, PPC did not realize its error when preparing its contemplated summary judgment arguments on the matters the parties discussed in their pre-motion conference.  *Id.* ¶ 28.

At no point did Plaintiffs request the Preview Cut, although they knew about the December 11, 2019 preview of *Maverick* through various documents PPC timely produced—one of which Plaintiffs used to support their own summary judgment motion.  *Id.* ¶¶ 29-30 & Exs. 4 & 5; Ex. 33 to Declaration of Marc Toberoff in Support of Summary Judgment ("Toberoff MSJ Decl."), Dkt. 62-35, at TGM0010086.  Plaintiffs' counsel also questioned witness Joseph Kosinski at his deposition about the *third* preview of *Maverick* (for which the same type of documents had been produced, though again not the preview itself[2]), but declined to ask about the *second* preview (or most other pre-termination work performed on *Maverick*).  Lens Decl. ¶ 31 & Exs. 3 & 6.

The security precautions attendant to the Preview Cut, which was filed under seal, contributed to PPC's mistake in not producing the document sooner.  *Id.* ¶ 33.  In the ordinary course, PPC's counsel maintains its discovery materials, including documents collected from clients, on an electronic platform called Relativity.  *Id.* ¶

---

[2] The third preview was not responsive to Plaintiffs' discovery requests; because it was shown *post*-termination, it does not bear on PPC's Derivative Works Exception defense or the other issues in this case.

34.  This platform hosts emails, scans of hard-copy documents, and audiovisual materials alike.  *Id.*  However, due to the intensive confidentiality precautions for the Preview Cut, PPC made the Preview Cut available to its counsel only through a *separate* platform containing a series of additional security measures.  *Id.* ¶ 35.  Therefore, it did not show up as an unproduced document on Relativity, encumbering counsel's usual cross-checks.  *Id.*

Once PPC realized its error, it promptly sought to rectify the issue and had physical copies of the Preview Cut burned and produced to Plaintiffs' counsel.  *Id.* ¶¶ 36-37.  It completed this supplemental production on November 20.  *Id.* ¶ 37.

On December 3, 2023, Plaintiffs filed the instant motion to strike, without first meeting and conferring with PPC about it.  *Id.* ¶ 39.

## III.  ARGUMENT

### A.  The Court Should Not Consider Plaintiffs' Motion Because It Is Procedurally Improper.

At the outset, Plaintiffs' motion is procedurally improper and should be denied on that basis alone.  The Central District's Local Rules require counsel to meet and confer before the filing of any motion, which Plaintiffs failed to do here.  While Plaintiffs sent PPC a letter threatening to move to exclude the Preview Cut, Ex. B to Declaration of Marc Toberoff in Support of Motion to Strike ("Toberoff MTS Decl."), Dkt. 82-3, Plaintiffs never initiated any actual meet-and-confer discussions about the matter.  PPC heard nothing further until Plaintiffs filed their motion, in violation of the Local Rules.

Local Rule 37-1 provides that, "[b]efore filing any motion relating to discovery under F.Rs.Civ.P. 26-37, counsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible."[3]  C.D. Cal. L.R. 37-1.  "It is the responsibility of

---

[3] Because Plaintiffs moved pursuant to Rule 37, their motion is governed by Local Rule 37-1.  Regardless, Rule 7-3 imposes a parallel meet-and-confer requirement for motions that do not concern discovery matters.

PPC'S OPP. TO PLS.' MOT. TO STRIKE
CASE NO. 2:22-CV-3846-PA

counsel for the moving party to arrange for this conference," which the moving party must request through a letter "identify[ing] each issue and/or discovery request in dispute, stat[ing] briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify[ing] the terms of the discovery order to be sought." *Id.* Counsel located in the same county (including counsel here, whose respective offices are both situated in Los Angeles County) must confer "in person at the office of the moving party's counsel unless the parties agree to meet someplace else." *Id.* If counsel are located in different counties, "the conference may take place telephonically." *Id.*

Plaintiffs' letter neither requested such a conference nor satisfied the meet-and-confer requirement on its own. *See* Ex. B to Toberoff MTS Decl. Even a proper pre-filing letter—which Plaintiffs' was not—"merely initiates the meet and confer process and does not itself satisfy the requirements of Local Rule 37-1." *Estate of Najera-Aguirre v. County of Riverside*, 2018 WL 10152556, at *3 (C.D. Cal. Dec. 7, 2018) (denying motion for failure to comply with Rule 37-1 meet-and-confer requirement); *Zucchella v. Olympusat, Inc.*, 2021 WL 4706541, at *2-3 (C.D. Cal. Mar. 30, 2021) (holding that pre-motion letter "did *not* meet the pre-filing requirements of Local Rule 37-1" where it failed to solicit a conference of counsel and denying motion on that basis); *Arroyo v. Cervantes*, 2019 WL 8755115, at *1 (C.D. Cal. Aug. 16, 2019) (finding deficient pre-motion letter that failed to request conference, noting that "[a] letter is not a meet and confer conference in compliance with Local Rule 37-1," and striking motion on that basis). It is "well within a district court's discretion" to deny a motion "as the result of a failure to comply with local rules." *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012). And this Court has repeatedly done so—including for failure to properly meet and confer. *E.g.*, *Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 742 F. App'x 291, 292 (9th Cir. 2018) (affirming order striking

PPC'S OPP. TO PLS.' MOT. TO STRIKE
CASE NO. 2:22-CV-3846-PA

motion for failure to comply with Local Rules' meet-and-confer requirement); *Ayer v. Frontier Commc'ns Corp.*, 2017 WL 8116437, at *3 (C.D. Cal. July 6, 2017) (Anderson, J.) (striking motion for failure to satisfy meet-and-confer requirement); *Reg'l Serv. Corp. v. Greenpoint Mortg. Funding, Inc.*, 2009 WL 10700231, at *1 (C.D. Cal. Apr. 6, 2009) (Anderson, J.) (denying motion for failure to satisfy meet-and-confer requirement); *Garcia v. Gateway Hotel L.P.*, 2021 WL 3556826, at *1 n.1 (C.D. Cal. Apr. 6, 2021) (Anderson, J.) ("Defendant's failure to comply with Local Rule 7-3 provides an additional basis for the Court to deny Defendant's Motion."); *Fusion IV Pharms., Inc. v. California*, 2018 WL 6118586, at *2 (C.D. Cal. Aug. 22, 2018) (Anderson, J.) ("Plaintiffs' failure to comply with Local Rule 7-3 is sufficient reason to deny Plaintiffs' motion.").  It should follow suit here.

Plaintiffs' failure to meet and confer on this motion dovetails with their broader failure to meet and confer about their intent to move for summary judgment on the Derivative Works Exception—which is the only facet of the case to which the Preview Cut is relevant.  Plaintiffs advised by letter that they intended to move for summary judgment on substantial similarity between the Article and *Maverick*, but excluded from their letter any mention of the Derivative Works Exception.  Kaiser Decl. ¶ 3 & Ex. 1.  At the parties' summary judgment meet-and-confer session, Plaintiffs' counsel reiterated that they intended to move for summary judgment on substantial similarity and again omitted any reference to the Derivative Works Exception.  *Id.* ¶ 4.  PPC did not learn otherwise until Plaintiffs' motion was filed.  Given this double meet-and-confer failure, the Court should reject Plaintiffs' motion on procedural grounds alone.

### B.  PPC's Delayed Production of the Preview Cut Was Both Substantially Justified and Harmless.

Federal Rule of Civil Procedure 37 authorizes a court to prevent a party from introducing evidence that it failed to produce *only* where such failure was neither "substantially justified" nor "harmless."  Fed. R. Civ. P. 37(c)(1).  Although this

sanction has been described as "automatic," "[t]he automatic nature of the rule's application does not mean that a district court *must* exclude evidence that runs afoul of Rule 26(a) or (e)" but rather "that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Merchant v. Corizon Health, Inc*., 993 F.3d 733, 740 (9th Cir. 2021). Regardless, both exceptions are satisfied here.

### 1. *PPC's Delayed Production of the Preview Cut Was Substantially Justified.*

PPC's delayed production of the Preview Cut was substantially justified, although PPC regrets that it was inadvertently not produced earlier in the case. While Plaintiffs incorrectly suggest that the Preview Cut should have been produced in response to several of their discovery requests, PPC agrees that the Preview Cut was responsive to one of Plaintiffs' Requests for Production, Request No. 52, in response to which PPC agreed to produce documents on which PPC intended to rely to support its defense of the Derivative Works Exception.[4] However, the delay in its production was attributable to inadvertence, not malintent.

In the ordinary course, PPC's counsel maintains its discovery materials, including documents collected from clients, on an electronic platform called Relativity. Lens Decl. ¶ 34. This platform hosts emails, scans of hard-copy documents, and audiovisual materials alike. *Id*. However, due to the intensive confidentiality precautions accompanying the Preview Cut (which has been lodged under seal), PPC made the Preview Cut available to its counsel only through a *separate* platform containing a series of additional security measures. *Id*. ¶ 35. Therefore, it did not show up as an unproduced document on Relativity,

---

[4] Plaintiffs now claim that PPC also should have produced the previous and subsequent preview cuts, Mot. at 7, but those previews do not bear on PPC's Derivative Works Exception defense; the relevance of the December 11, 2019 preview is that it was the last preview shown before Plaintiffs' termination took effect on January 24, 2020.

PPC'S OPP. TO PLS.' MOT. TO STRIKE
CASE NO. 2:22-CV-3846-PA

encumbering counsel's usual cross-checks. *Id*. Only when PPC's counsel tried to locate a produced copy of the Preview Cut to cite it in opposition to Plaintiffs' summary judgment motion—a process that was itself delayed by Plaintiffs' failure to meet and confer about their intent to move on the Derivative Works Exception—did PPC's counsel realize the Preview Cut had not been produced. *Id*. ¶¶ 25-27. And it promptly sought to rectify the issue, having physical copies of the Preview Cut burned by PPC and produced to Plaintiffs' counsel.[5] *Id*. ¶¶ 36-37. Plaintiffs contend that PPC did not remedy the issue quickly enough after discovering the production issue, because the Preview Cut copies were burned on Thursday, November 16 and produced on Monday, November 20, *see* Mot. at 8, but that turnaround was quite *fast* considering that the Preview Cut could be produced only in physical form and needed to be transported from PPC to PPC's counsel to Plaintiffs' counsel (and that two of the intervening days were weekend days).

Contrary to Plaintiffs' representations, at no point did they specifically request a copy of the Preview Cut from PPC. Lens Decl. ¶ 29. (Plaintiffs did, however, know about the December 11, 2019 preview, which was disclosed in several other documents produced in discovery, including the post-production schedule on which Plaintiffs themselves rely in their summary judgment briefing.[6])

---

[5] Plaintiffs further criticize PPC for not identifying PPC as the custodian of the Preview Cut on the day of the production, Opp. at 8, but the Declaration of Ralph Bertelle resolved any possible doubt that PPC was the custodian. Plaintiffs did not raise this purported issue with PPC, and they do not and could not claim any prejudice from the two-day delay in receiving confirmation that PPC was, in fact, the custodian. (And, for that matter, Plaintiffs repeatedly failed to identify the custodian of *their* produced documents. Lens Decl. ¶ 13.)

[6] *E.g.*, Ex. 33 to Toberoff MSJ Decl. at TGM0010086 (post-production schedule with December 11, 2019 calendar entry reading: "PREVIEW #2 – PARAMUS, NJ"); Ex. 4 to Lens Decl. (memorandum from PPC with "Preview 2 Notes," dated December 13, 2019, thanking "Top Gun Team" for a "terrific preview" and providing comments based on audience response); Ex. 5 to Lens Decl. (expanded report of takeaways from "Recruited Audience Screening #2: December 11, 2019").

9

Had Plaintiffs asked for the Preview Cut, PPC would have recognized it had not been produced and produced it.  But they never did.

Plaintiffs use misleading ellipses to insinuate they requested the Preview Cut in a September meet-and-confer letter, Opp. at 6, but the omitted context shows that the parties were *actually* debating the production of audio and video interviews that documented the development of *Maverick*.  In reality, the parties' exchange proceeded as follows.  After raising no issues with PPC's document productions for six months (and just weeks after inexplicably making their *first* document production, which was itself deficient), Plaintiffs sent PPC a letter on September 14 claiming, *inter alia*:

> Paramount has also failed to produce the *unedited* underlying recordings, audio and/or video, and (in most instances) transcriptions thereof referenced in emails and elsewhere as documenting the relevant development of the sequel *Top Gun: Maverick* and of *Top Gun*.  For instance, Jerry Bruckheimer discusses the Story at length in the highly edited creator commentary accompanying the Blue-Ray re-release of the 1986 film—which Paramount did <u>not</u> produce; nor did it produce the underlying unedited material.  As to *Top Gun: Maverick*, *excerpts* of interviews Paramount caused to be recorded in audio and/or video format were later incorporated into the Paramount's "production notes" as well as in home releases as "bonus material," e.g., creator commentary, yet Paramount failed to produce the original, unedited interviews as required.

Lens Decl. ¶ 20 & Ex. 1 at 2 (footnotes omitted).  On September 21, PPC responded:

> You claim that Paramount Pictures has failed to produce all "original, unedited interviews."  Tellingly, however, you do not cite any of Plaintiffs' actual requests for production, much less Paramount Pictures' responses to such requests, in support.  As a reminder, in response to Request No. 43, which requested interviews of talent involved in *Top Gun: Maverick*, Paramount Pictures agreed to produce "documents *sufficient to identify* press interviews arranged by Paramount Pictures related to *Maverick* given [] by the talent involved

10

therewith." *See* Feb. 6, 2023 Paramount Pictures' Responses and Objections to Plaintiffs' First Set of RFPs at 46.   You raised this response in your March 6 letter, the parties discussed this issue during the March 7 meet and confer, and Paramount Pictures promptly confirmed thereafter that it "subscribed to a service that aggregated domestic press coverage from the film and that Paramount Pictures would produce such reports, even though the identified stories, interviews, videos etc. are in the public record." *See* Mar. 17, 2023 Email from M. Lens.  And, as the produced documents cited in your letter make clear, Paramount Pictures has complied with its agreement and obligations.

*Id*. ¶ 22 & Ex. 2 at 5.  The parties held a meet-and-confer discussion the following day.  *Id*. ¶ 23.  Consistent with Plaintiffs' September 14 letter and PPC's responsive September 21 letter, the parties' September 22 discussion about footage was limited to interviews and Request for Production No. 43, in particular.  *Id*.  None of the previews of *Maverick* ever came up.  *Id*.  Plaintiffs' characterization of this exchange is simply inaccurate.

At base, PPC's delayed production of the Preview Cut was the result of inadvertence, coupled with the unusual security precautions attendant to the video. PPC has produced over 12,000 documents in this matter, comprising nearly 170,000 pages, and this *one* document housed on a different server due to out-of-the-ordinary security protocols (a document Plaintiffs knew about but did not directly request) fell through the cracks.  Lens Decl. ¶¶ 8, 27-35.  The Preview Cut did not come up earlier in the summary judgment sequence because it was not relevant to the issues presented by PPC's motion or to the issues in Plaintiffs' motion about which they met and conferred.  Neither PPC nor its counsel has demonstrated any bad faith, and the delay was substantially justified.  *See, e.g.*, *McGhee v. N. Am. Bancard, LLC*, 2021 WL 5764708, at *2 (S.D. Cal. June 28, 2021) (denying Rule 37 sanctions for late production of documents and reasoning that "defendant has explained it belatedly located documents that were not previously produced, [] the record before the Court demonstrates that once located,

PPC'S OPP. TO PLS.' MOT. TO STRIKE
CASE NO. 2:22-CV-3846-PA

the documents were promptly produced to plaintiff," and therefore "defendant's [late] production of a small number of documents (relative to its overall production of over 47,000 pages of documents) is not a basis for a finding of contempt, or for the imposition of sanctions"); *Futamura ex rel. Est. of Futamura v. Unum Life Ins. Co. of Am*., 305 F. Supp. 2d 1181, 1192 (W.D. Wash. 2004) (denying motion to strike undisclosed, late-produced document and concluding it was properly before the court on summary judgment because the document "was inadvertently omitted and provided as soon as [defendant] discovered that it had been omitted").

Plaintiffs' indignation at PPC's inadvertently-delayed production of the Preview Cut is all the more baffling given that they have repeatedly produced documents after Court-ordered deadlines in this matter and relied on eleven altogether-unproduced documents for their summary judgment motion.  In discovery, Plaintiffs failed to produce *any* documents for months on end, forcing PPC to file a motion to compel.  Lens Decl. ¶¶ 9-10.  In response to that motion, Plaintiffs stipulated to complete their productions by August 21, 2023, which the Court so-ordered.  *See* Dkts. 45 & 46.  Plaintiffs finally made their first document production on that date—though it was woefully deficient in format and substance alike.[7]  Lens Decl. ¶ 13.  Then, more than a month after that Court-ordered deadline passed, Plaintiffs produced more documents.  *Id*. ¶ 14.  And again, right before filing their motion for summary judgment, Plaintiffs produced a video.  *Id*. ¶ 15.  Then, with their motion for summary judgment, Plaintiffs *still* relied on 10 entirely unproduced documents.  *Id*. ¶ 16.  And they relied on yet another in reply.[8]  *Id*. ¶

---

[7] The Court's August orders required Plaintiffs to produce all responsive documents identified through a reasonably diligent search, thereby resolving one of the issues raised in PPC's motion to compel, that is, Plaintiffs' prior improper refusal to produce documents in the public record.  *See* Dkts. 44 & 46; *see also* PPC's Motion to Compel, Dkt. 40, at 4-5 (citing *Nat.-Immunogenics Corp. v. Newport Trial Grp*., 2017 WL 10573941, at *6 (C.D. Cal. Nov. 16, 2017)).

[8] Plaintiffs also Bates-stamped certain documents with their summary judgment papers to make it appear as though they had been produced by Plaintiffs, when, in fact, Plaintiffs had not produced them.  Lens Decl. ¶ 17.

PPC'S OPP. TO PLS.' MOT. TO STRIKE
CASE NO. 2:22-CV-3846-PA

18.  Plaintiffs have no credibility to complain about PPC's delayed production of a single document—especially given PPC's inadvertence and Plaintiffs' preexisting knowledge of the December 11, 2019 preview.

Plaintiffs nonetheless claim that inadvertence cannot justify the late production of a document, but the authorities they cite are inapposite, with their holdings tightly tethered to the specific fact patterns before the courts.  Opp. at 11-12.  For example, Plaintiffs rely on *RES Exhibit Servs., LLC v. LNW Gaming, Inc*., 2023 WL 6296050 (D. Nev. Sept. 27, 2023), for their broad-reaching proposition, but that case ruled narrowly on the facts before it, where the plaintiff corporation had failed to produce *any* internal communications during discovery, was unable to explain "how the Director of IT who included emails, Outlook, and TEAMs in his search, failed to produce a single email as the result of that search," and failed to adequately remedy the issue for nearly one year after the defendant raised it.  *Id.* at *1-4.  In *Rago v. Select Comfort Retail Corp*., 2021 WL 3621890 (C.D. Cal. June 11, 2021), the late-producing party had made repeated misrepresentations throughout discovery that those very documents *did not exist*, delayed production for months even after being informed by opposing counsel of missing documents, had a demonstrated pattern of failing to produce responsive documents in the litigation, and had already been cautioned by the court that she would "face more severe sanctions if she should in the future again fail to timely produce responsive documents in her possession, custody, and control."  *Id.* at *2-4, *7-9.  And in *Voyager Indemnity Ins. Co. v. Zalman N., Inc.*, 2023 WL 2904591 (C.D. Cal. Apr. 7, 2023), the existence of the late-produced document was specifically denied during discovery and the late-producing party provided no explanation of how or why the document was suddenly found during summary judgment briefing, resulting in real authenticity concerns.  *Id.* at *2-3, *5.  The instant situation comes nowhere close to these egregious fact patterns.

1

### *2. PPC's Delayed Production of the Preview Cut Was Harmless.*

2
Not only was PPC's delayed production substantially justified, but even if the

3
Court were to find otherwise, it was nonetheless harmless.  Plaintiffs have long

4
known about the December 11, 2019 preview of *Maverick*—no later than PPC's

5
second document production in April 2023, when PPC produced the film's post-

6
production schedule—and Plaintiffs suffered no prejudice from PPC's delayed

7
production of the Preview Cut itself.  Lens Decl. ¶ 6.  Any claim of "surprise" at the

8
existence of the December 11, 2019 preview is feigned.

9
Plaintiffs could have, but did not, seek *any* targeted discovery about the

10
December 11, 2019 preview notwithstanding PPC's early disclosure of its

11
occurrence, and even PPC's production of notes from the preview providing

12
suggestions for post-production based on the audience response to it.  Lens Decl. ¶¶

13
29-30 & Exs. 4 & 5.  In fact, Plaintiffs deposed *Maverick*'s director, Joseph

14
Kosinski, about the *third* preview for the film but made the concerted decision not

15
to ask him about the *second* preview—although they had received parallel sets of

16
notes in discovery about both.  *Id*. ¶ 31 & Ex. 3 at 74:10-75:15.[9]  Plaintiffs also

17
questioned Mr. Kosinski at length about the post-production schedule that

18
confirmed the December 11, 2019 date of the second preview, but simply declined

19
to ask him about the relevant entry.  *Id*. ¶ 30 & Ex. 3 at 102:8-111:24.  (Plaintiffs

20
introduced this same post-production schedule as evidence in support of their

21
summary judgment motion.  Ex. 33 to Toberoff MSJ Decl.)  Plaintiffs deliberately

22
focused their questioning—and, later, their briefing—on *post*-termination changes

23
to *Maverick* rather than the extensive work performed *pre*-termination, including

24
without limitation the December 11, 2019 preview.  Nor, had PPC produced the

25
Preview Cut on the October discovery deadline instead of in November, would

26
Plaintiffs have been able to conduct a new tranche of discovery about it.

27

28
[9] Other than deposing one of PPC's experts, this was the only deposition Plaintiffs took in this case.  Lens Decl. ¶ 32.

The Preview Cut depicts what it depicts, so any additional discovery about it would not have aided Plaintiffs in any event. Because the Preview Cut is what it is, the strongest prejudice argument that Plaintiffs can muster is that they were "deprived of the opportunity" to "test [the] alleged authenticity" of the Preview Cut through deposition testimony. Mot. at 13. Not only would such deposition testimony be in vain—PPC did not fabricate the Preview Cut, as its related produced documents confirm—but the most Plaintiffs could have *conceivably* done for their summary judgment motion is create a factual dispute on authenticity.[10] And on Plaintiffs' summary judgment motion, all factual disputes are resolved in PPC's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

Plaintiffs also cannot have been prejudiced by the delayed production of the Preview Cut because the Court has no reason to reach the merits of the Derivative Works Exception—the only piece of the summary judgment briefing to which the Preview Cut is remotely relevant. As PPC explained in its summary judgment opposition, the Derivative Works Exception is just that: an exception. Only if Plaintiffs would otherwise prevail on their infringement claim does the Derivative Works Exception come into play at all; no "exception" is needed without infringement. And because Plaintiffs cannot prevail on their infringement claim— as a general matter, but *certainly* not on summary judgment when they do not even argue the intrinsic test—the parties' briefing on the Derivative Works Exception and any evidentiary issues related thereto are entirely extraneous.[11] *See* PPC's MSJ

---

[10] Plaintiffs claim that the physical copy of the Preview Cut does not contain sufficient metadata to confirm it "was even made on the date PPC alleges." Opp. at 8. But to be clear, the Preview Cut was *shown* at a preview on December 11, 2019—not *created* that day (though it was necessarily created before it was shown, and therefore created well before Plaintiffs' January 24, 2020 termination). *See* Declaration of Ralph Bertelle, Dkt. 70-9, ¶¶ 10-11. The December 11, 2019 preview showing is corroborated by several other documents, including the post-production schedule and notes from the showing. *E.g.*, Ex. 33 to Toberoff MSJ Decl. at TGM0010086; Exs. 4 & 5 to Lens Decl.

[11] The Court should also decline to reach the merits of the Derivative Works Exception for the additional and independent reason that Plaintiffs failed to meet and confer about it.

1   Opp., Dkt. 70 at 20; *see also id.* at 3-20.

2       Finally, to any extent Plaintiffs can be said to face a risk of prejudice from

3   the delayed disclosure of the Preview Cut, that prejudice can be readily cured by a

4   limited reopening of liability discovery to permit Plaintiffs to conduct the

5   deposition they seek on authenticity of the Preview Cut.  *See, e.g.*, *Archie v. Pop*

6   *Warner Little Scholars, Inc.*, 2019 WL 13020480, at *3 (C.D. Cal. Oct. 10, 2019)

7   (holding, after close of all discovery and notwithstanding six months of delay in

8   disclosures of new expert witnesses, "that permitting Plaintiffs to depose the

9   witnesses and conduct relevant discovery related to these witnesses will cure any

10   prejudice" from late disclosure and therefore denying discovery sanctions under

11   Rule 37); *UMG Recordings, Inc. v. Am. Home Assurance Co.*, 2006 WL 8451158,

12   at *2 (C.D. Cal. Feb. 27, 2006) (denying motion to strike under Rule 37(c)(1) upon

13   concluding that "modifying the scheduling order cures any harm to [moving party]

14   by allowing it the opportunity" to conduct follow-up depositions).  Such a limited

15   reopening of liability discovery would not require the trial date to be moved *at all*,

16   let alone cause a significant disruption to the case schedule.[12]  To the contrary,

17   assuming any of the case remains live after the Court's adjudication of the pending

18   cross-motions for summary judgment, there is already a period of time built into the

19   schedule for additional damages-related discovery.  *See* Dkt. 67.

20   ### C.  The Preview Cut Is Admissible, and Plaintiffs' Argument to the Contrary Does Not Provide a Basis for Striking It Regardless.

22       Contrary to Plaintiffs' argument, PPC adequately authenticated the Preview

23   Cut.  Federal Rule of Evidence 901 is satisfied by evidence "sufficient to support a

24   finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).

25   "[T]he proponent of evidence need only make a prima facie showing of authenticity

26

27   ---

[12] Plaintiffs are particularly ill-suited to complain about any delay in the case schedule (which would not be necessary in any event) given that they have sought and received several extensions of the case schedule to date.  Dkts. 35, 36, 48, 49.

28

16

so that a reasonable juror could find in favor of authenticity or identification." *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 934 (N.D. Cal. 2017) (quoting *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) (internal quotation marks omitted)).

Ralph Bertelle's declaration satisfies Rule 901(b)(1).  Mr. Bertelle, Executive Vice President of Physical Production for PPC, explains in his declaration that "[p]review versions of *Top Gun: Maverick* were prepared long before the final movie was released," with the "latest preview version of the movie prior to January 24, 2020 [being] shown on December 11, 2019 to a limited audience in Paramus, New Jersey."  Dkt. 70-9 ¶¶ 1-2, 10.  He further explains that PPC "maintained a digital copy of the December 11, 2019 Preview," and "[f]rom that master copy," PPC burned physical copies for purposes of this litigation.  *Id.* ¶¶ 10-11.  In other words, he provides evidence "sufficient to support a finding that" the Preview Cut "is what [PPC] claims it is."  Fed. R. Evid. 901(a).

Plaintiffs do not argue that those facts, if believed, are insufficient to authenticate the Preview Cut.  Nor could they.  Instead, they ask the Court to ignore the content of Mr. Bertelle's declaration because he supposedly "has not explained how he would have personal knowledge" of the facts set forth in his declaration. Mot. at 9 (quoting *Silver State Intell. Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1170 (D. Nev. 2014)).  Plaintiffs are wrong.  Mr. Bertelle's declaration identifies the Preview Cut and states that his declaration is "based on [his] personal knowledge," including his position as a PPC executive and his "extensive behind-the-scenes work involved in filming the movie."  Dkt. 70-9 ¶¶ 1-3.  Nothing more is required.  *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) (holding "[p]ersonal knowledge may be inferred from a declarant's position" and finding that declaration established witness's personal knowledge where it stated that he was credit manager "for five years before the declaration was signed" and "ha[d] personal knowledge of the...facts"); *Desire, LLC v. Manna Textiles, Inc.*, 2017 WL

5635009, at *2 n.7 (C.D. Cal. Aug. 18, 2017) (overruling authenticity objection where corporate executive "attest[ed] that he ha[d] personal knowledge of the matters in his declaration"); *see also* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.").

*Silver State*, the only case Plaintiffs cite in support of their "personal knowledge" argument, is inapposite.  *See* Mot. at 9.  The court in that case reached the unremarkable conclusion that a party's attorney could not authenticate a document pulled from "thefreelibrary.com" as a true and correct copy of a press release issued by a non-party on April 20, 1998, because the attorney offered no reason to believe he had any personal knowledge of the non-party's operations.  32 F. Supp. 3d at 1170.[13]  Here, by contrast, Mr. Bertelle is a PPC executive who was directly involved in the production of *Maverick*.  *See In re Kaypro*, 218 F.3d at 1075.  Plaintiffs also insinuate that Mr. Bertelle was not sufficiently involved with "post-production processes, such as editing," Mot. at 10 (emphasis removed), but quibbles like that are irrelevant:  "Once the prima facie case for authenticity is met, the probative value of the evidence is a matter for the jury."  *See In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d at 934 (overruling authenticity objection at summary judgment).  PPC adequately authenticated the Preview Cut—it is admissible and should not be stricken from the summary judgment record.[14]

---

[13] Remarkably, Plaintiffs' counsel seeks to authenticate documents proffered in support of Plaintiffs' motion for summary judgment.  *See generally* Toberoff MSJ Decl.

[14] Although Mr. Bertelle's declaration is based on his own personal knowledge and therefore satisfies Rule 901(b)(1), PPC notes that "district courts in this circuit have routinely overruled authentication and hearsay challenges at the summary stage where the evidence could be presented in an admissible form at trial, following *Fraser*." *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1232 (N.D. Cal. 2018) (referencing *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)); *Chinitz v. Intero Real Est. Servs.*, 2021 WL 1375837, at *3 (N.D. Cal. Apr. 12, 2021) ("[T]he Court OVERRULES Defendant's evidentiary objections on the basis that the evidence could be presented in an admissible form at trial."); *accord Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir. 1989) (consideration of unauthenticated document on summary judgment is

1

### D.  The Relief Plaintiffs Seek Is Overbroad.

2

Even if the Court found merit to Plaintiffs' motion, the relief they seek is

3 vastly overreaching, seeking far more than striking the Preview Cut.  *First*, there is

4 no reason to strike the Preview Cut from the summary judgment record—

5 irrespective of the Rule 37 analysis—because the Court should not pass on the

6 merits of the Derivative Works Exception at all and therefore need not consider any

7 of the evidence proffered for or against it.  That is because the Derivative Works

8 Exception comes into play only if Plaintiffs prove the works are substantially

9 similar as a matter of law under both the intrinsic and extrinsic tests, which

10 Plaintiffs cannot (and do not even purport to) do.  *See* PPC's MSJ Opp., Dkt. 70 at

11 20; *see also id.* at 3-20.  In other words, Plaintiffs could not obtain summary

12 judgment on their copyright infringement claim and tagalong declaratory relief

13 claim without (1) prevailing on the extrinsic test for infringement (which they fail),

14 (2) prevailing on the intrinsic test for infringement (which they do not even

15 attempt), and *then* (3) also overcoming the Derivative Works Exception, which, if

16 applicable, would render even a substantially similar work non-infringing.

17 Plaintiffs did not move for *partial* summary judgment, which in any event would be

18 inefficient here given the overlapping proof for the various subsets of the

19 infringement analysis.

20

*Second*, if any relief is warranted for PPC's delayed production, it is the

21 limited reopening of liability discovery for a Rule 30(b)(6) deposition enabling

22 Plaintiffs to probe the authenticity of the Preview Cut—and even then, only in the

23 event that the Court does not grant PPC summary judgment on infringement (which

24 would moot any issues concerning the Derivative Works Exception and, in turn, the

25 Preview Cut).  Indeed, discovery is still *ongoing* in this case due to the bifurcation

26

27

28

harmless where a "competent witness with personal knowledge could authenticate the document" at trial).  Were there any doubt as to Mr. Bertelle's ability to authenticate the Preview Cut, PPC could proffer a different witness at trial, and thus the Court could overrule Plaintiffs' objection for this additional reason.

PPC'S OPP. TO PLS.' MOT. TO STRIKE
CASE NO. 2:22-CV-3846-PA

of liability and damages discovery, with damages discovery open through May 6, 2024, Dkt. 67, so the case progression would not be disrupted by this relief.  In sum, such a deposition would not delay trial, would eliminate any conceivable claim of prejudice at trial (when, unlike on Plaintiffs' summary judgment motion, all factual disputes would not automatically be viewed in PPC's favor), and would facilitate a ruling on the merits.

*Third*, even if the Court were to exclude the Preview Cut—and it should not—that provides no justification for striking the much broader passages of PPC's summary judgment opposition brief, its statement of additional facts, or the Bertelle Declaration listed in Plaintiffs' Notice of Motion.  To be clear, *not one sentence* of PPC's opposition brief hinges on the Preview Cut.  Most egregiously, Plaintiffs ask this Court to strike several lines of the opposition brief that do not even indirectly cite to the Preview Cut.[15]  At most, the Preview Cut lends *cumulative* evidentiary support to certain statements in PPC's opposition brief, which survive even if the Preview Cut is stricken.  Plaintiffs play a similar game with PPC's additional facts.  Again, they ask the Court to strike facts that do not rely on the Preview Cut itself, or that use the Preview Cut as *cumulative* support for the proposition.  And they inexplicably seek to strike paragraphs of Ralph Bertelle's Declaration, beyond the Preview Cut exhibit, that simply *relate* to the Preview Cut.  But the existence of the December 11, 2019 preview was indisputably disclosed in discovery, so there is no arguable basis for such broad-based exclusion.  If the Court were to exclude the Preview Cut, it is amply capable of deciding for itself what propositions remain supported by the evidence—just as it would for any other factual determination on summary judgment.

## IV.  CONCLUSION

The Court should deny Plaintiffs' Motion to Strike.

---

[15] *See* Mot. at ii (asking the Court to strike, *inter alia*, lines 22:20-23 of PPC's summary judgment opposition).

1 | Dated:  December 18, 2023

O'MELVENY & MYERS LLP

2

By:   */s/ Molly M. Lens*
Molly M. Lens

3

4

*Attorneys for Defendant*
*Paramount Pictures Corporation*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Paramount Pictures Corporation, certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated:  December 18, 2023          **O'MELVENY & MYERS LLP**

By:    */s/ Molly M. Lens*
          Molly M. Lens

*Attorneys for Defendant*
*Paramount Pictures Corporation*