Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
Jaymie Parkkinen (S.B. #318394)
*jparkkinen@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Alex Kozinski (S.B. # 66473)
*alex@kozinski.com*
33 Marguerite Drive
Palos Verdes Estates, CA 90275
Telephone: (310) 541-5885
Facsimile: (310) 265-4653

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOSH YONAY, an individual, and YUVAL YONAY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and DOES 1-10,<br><br>Defendants. | Case No. 2:22-CV-3846-PA-GJS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE EVIDENCE NOT PRODUCED DURING DISCOVERY**<br><br>[*Second Declaration of Marc Toberoff filed concurrently herewith*]<br><br>**Hearing Date:** January 8, 2024<br>**Hearing Time:** 1:30 P.M.<br>**Place:** Courtroom 9A<br>**Judge:** Hon. Percy Anderson |

# **TABLE OF CONTENTS**

**Pages**

I.    INTRODUCTION ...........................................................................................1

II.    ARGUMENT..................................................................................................2

A.    PPC Mischaracterizes "Clearly Established Law" by
Inventing a Procedural Hurdle For Rule 37(c) Motions ....................2

1.    There is No Requirement to Meet-and-Confer Prior to
Filing a Motion for Sanctions Under Rule 37(c) ....................2

2.    Plaintiffs Conferred With PPC....................................................3

B.    PPC Failed to Satisfy Its Burden Under Rule 37 ..............................4

1.    There is No Substantial Justification .......................................4

2.    PPC's "Whataboutism" Deflection Is Untrue
and  Immaterial ..........................................................................6

3.    The Harm is Not Speculative ...................................................8

C.    The Video is Inadmissible Notwithstanding Its
Untimely Production; References to the Video and
Bertelle's Declaration Must Be Stricken...........................................10

III.    CONCLUSION ...........................................................................................12

# TABLE OF AUTHORITIES

## Cases

**Pages**

*Allstate Ins. Co. v. Nassiri*,
No. CV 08-0369, 2010 WL 5248111 (D. Nev. Dec. 16, 2010) ........................3

*Bankdirect Capital Fin., LLC v. Capital Premium Fin., Inc.*,
No. CV 15-10340, 2018 WL 6694904 (N.D. Ill. Nov. 8, 2018).......................6

*Barthelemy v. Air Lines Pilots Ass'n*,
897 F.2d 999 (9th Cir. 1990)........................................................................10

*Brinker v. Axos Bank*,
No. CV 22-0386, 2023 WL 4535529 (S.D. Cal. July 13, 2023).......................4

*Colodney v. Cnty. of Riverside*,
No. ED CV 13-0427, 2013 WL 12200649 (C.D. Cal. Aug. 16, 2013)..............4

*Edwards v. Toys "R" Us*,
527 F. Supp. 2d 1197 (C.D. Cal. 2007)..........................................................12

*Gibson Brands, Inc. v. John Hornby Skewes & Co., Ltd.*,
No. CV 14-0609, 2015 WL 4651250 (C.D. Cal. Aug. 4, 2015) .......................3

*Greene v. Alan Waxler Grp. Charter Servs., LLC*,
No. CV 09-0748, 2014 WL 1089667 (D. Nev. Mar. 18, 2014).......................3

*Hansen v. Albertsons Co., LLC*,
No. CV 19-2050, 2020 WL 7711920 (D. Nev. Dec. 28, 2020) ........................2

*Haroon's Halal Kabob LLC v. Food Truck Builders of Phoenix.com*,
600 F. Supp. 3d 987 (D. Ariz. 2022)...............................................................3

*Higgins v. Am. Bottling Co.*,
No. CV 22-5351, 2022 WL 13811816 (C.D. Cal. Oct. 21, 2022) .....................4

*Hoffman v. Construction Protective Servs., Inc.*,
541 F.3d 1175 (9th Cir. 2008)....................................................................2, 5

*James Stewart Entm't, LLC v. L&M Racing, LLC*,
No. ED CV 12-0049, 2013 WL 12248146 (C.D. Cal. June 28, 2013) .............8

## TABLE OF AUTHORITIES

**Cases**

**Pages**

*Johnson v. Kriplani,*
    No. CV 06-2054, 2008 WL 2620378 (E.D. Cal. July 2, 2008) .......................12

*League of Women Voters of Fla., Inc. v. Lee,*
    No. CV 21-0188, 2022 WL 610400 (N.D. Fla. Jan. 4, 2022)...........................6

*Licea v. Rugs.com, LLC,*
    No. CV 21-5308, 2021 WL 4190635 (C.D. Cal. Sept. 14, 2021)......................3

*McGee v. Eurpac Servs.,*
    No. CV 20-0334, 2023 WL 3355690 (D. Nev. Mar. 31, 2023).........................3

*Meggs v. NBCUniversal Media, LLC,*
    No. CV 17-3769, 2017 WL 2974916 (C.D. Cal. July 12, 2017) ......................3

*Miesen v. Hawley Troxell Ennis & Hawley LLP,*
    No. CV 10-0404, 2021 WL 1124758 (D. Idaho Mar. 24, 2021) ......................3

*Perrin Bernard Supowitz, LLC v. Morales,*
    No. CV 22-2120, 2022 WL 3686407 (C.D. Cal. Aug. 25, 2022) .....................4

*R&R Sails, Inc. v. Ins. Co. of Pa.,*
    673 F.3d 1240 (9th Cir. 2012)........................................................................5

*Rago v. Select Comfort Retail Corp.,*
    No. CV 19-2291, 2021 WL 3621890 (C.D. Cal. June 11, 2021).................. 8-9

*Riegels v. Comm'r,*
    745 F.3d 953 (9th Cir. 2014)..........................................................................4

*Smith v. Pacific Bell Telephone Co., Inc.,*
    662 F. Supp. 2d 1199 (E.D. Cal. 2009)..........................................................10

*Steenwyk v. Steenwyk,*
    No. CV 20-2375, 2022 WL 7162931 (C.D. Cal. July 11, 2022),
    *R&R adopted,* 2022 WL 7054770 (C.D. Cal. Oct. 12, 2022) ..........................5

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

**Pages**

*Transoceanic Cable Ship Co. LLC v. Bautista,*
No. CV 17-0209, 2018 WL 3521174 (D. Haw. July 20, 2018) ..........................6

*United States v. Dibble,*
429 F.2d 598 (9th Cir. 1970) ..............................................................................11

*United States v. Jones,*
No. CV 20-10090, 2021 WL 5984901 (9th Cir. Dec. 16, 2021) ........................1

*United States v. Real Property at 475 Martin Lane,*
298 F. App'x 545 (9th Cir. 2008) .......................................................................11

*Wilson-Condon v. Allstate Indem. Co.,*
No. CV 11-05538, 2011 WL 3439272 (C.D. Cal. Aug. 4, 2011) .......................4

*Zadoian v. Target Corp.,*
No. CV 19-0326, 2020 WL 3203145 (C.D. Cal. Apr. 14, 2020)........................9

<u>**Federal Statutes, Rules and Regulations**</u>

17 U.S.C. § 203 ......................................................................................................1

C.D. Cal. Local Rule

7-3 ................................................................................................................. 3-4

37-1 ..................................................................................................................2

Federal Rule of Civil Procedure

26...................................................................................................................2, 4

37........................................................................................................... *Passim*

56.....................................................................................................................10

Federal Rule of Evidence 901................................................................... 10-11

# TABLE OF AUTHORITIES

**Other Authorities**

**Pages**

Fed. R. Civ. P. 26, advisory committee notes (2015 amendments) .......................7

1 Steven S. Gensler & Lumen N. Mulligan, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 37 (2023 rev. ed.) ..............................................21

## I.   **INTRODUCTION**

Throughout the course of this litigation, Paramount Pictures Corp. ("PPC") has played by its own set of rules to obtain the upper hand. Among other things, it adopted heightened standards of relevance and raised frivolous privilege assertions to withhold discoverable documents and information from Plaintiffs. *See* Motion to Strike ("Mot.") 6-7. And only after Plaintiffs had moved for summary judgment, and PPC perceived some benefit from producing discoverable information long ago requested by Plaintiffs, did it produce its video cut. This was obviously a calculated move—there was nothing inadvertent about it, and the time to produce such evidence has long since expired.

Knowing that it cannot succeed on the extrinsic test, PPC in the eleventh hour introduced the unauthenticated video in an effort to prop up its rickety "derivative work exception" defense under 17 U.S.C. § 203(b)(1) and novel "substantial completion" argument. But, of course, all of it is unmoored from the plain text and legislative history of Section 203. As PPC's inadmissible video is no substitute for the paucity of legal support of its underlying argument, this, like so much of PPC's Opposition, is just another diversion.

PPC knows it cannot meet its burden under Federal Rule of Civil Procedure 37 with respect to its seriously late production. The record is clear: PPC's failure to produce the video was neither substantially justified nor harmless. It is no surprise, then, that PPC engages in "relentless whataboutism [a]s a way to justify and distract," rather than "make a genuine case." *United States v. Jones*, No. 20-10090, 2021 WL 5984901, at *4 n.3 (9th Cir. Dec. 16, 2021) (Baker, J., concurring) (citation omitted). PPC's complaints about Plaintiffs' productions are untrue, irrelevant, and intended to distract from the real issues raised in Plaintiffs' Motion to Strike.

PPC had a clear duty to produce discoverable documents responsive to Plaintiffs' Requests. *See* Mot. 4-5. Regardless of whether PPC withheld the

- 1 -

video intentionally (as is likely) or inadvertently, it cannot benefit from its own error to Plaintiffs' prejudice. And contrary to its argument, PPC has also failed to authenticate the date the video cut it produced was actually created. Neither Plaintiffs nor the Court can trust that the video PPC waited *so long* to produce is what they claim it to be.

With full knowledge that it cannot meet its burden under Rule 37, PPC invents a new procedural requirement. But two minutes of research would have shown its counsel that there is no meet-and-confer requirement for this Motion. The Court can and should ignore these arguments and enter an order prohibiting PPC from introducing or relying on the video for any purpose. Fed. R. Civ. P. 37(c)(1).

## II.   ARGUMENT

### A.   PPC Mischaracterizes "Clearly Established Law" by Inventing a Procedural Hurdle For Rule 37(c) Motions.

#### 1.   *There is No Requirement to Meet-and-Confer Prior to Filing a Motion for Sanctions Under Rule 37(c).*

PPC devotes several pages of its Opposition to the invalid argument that Plaintiffs' Motion to Strike "is procedurally improper" for an alleged failure to meet and confer "in violation of the Local Rules." Opp. 5-7. "Despite [PPC]'s contention to the contrary, ***clearly established law holds*** that [Plaintiffs were] not required to conduct a meet and confer conference before moving for sanctions under Rule 37(c)(1). Hence, [PPC]'s argument seeking a denial of [Plaintiffs'] Motion to Strike on this basis fails." *Hansen v. Albertsons Co., LLC*, 2020 WL 7711920 (D. Nev. Dec. 28, 2020) (emphasis added) (citing *Hoffman v. Construction Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (affirming motion to exclude evidence and rejecting argument that moving party must meet and confer because it "was not a motion 'relating to discovery pursuant to Rules 26-37.' [Central District of California] Local Rule 37-1.

- 2 -

Rather, it was a motion relating to sanctions pursuant to Rule 37. Any local rule requiring a conference prior to the court's imposition of sanctions under Rule 37(c) would be inconsistent with Rule 37(c) and, therefore, unenforceable.") (brackets omitted); *Greene v. Alan Waxler Grp. Charter Servs., LLC*, 2014 WL 1089667, at *2 n.5 (D. Nev. Mar. 18, 2014)); *see also* 1 Steven S. Gensler & Lumen N. Mulligan, *Federal Rules of Civil Procedure, Rules and Commentary, Rule 37* (2023) ("There is no requirement to confer with opposing counsel before filing a motion to exclude evidence under Rule 37(c).") (collecting cases).[1]

## 2. *Plaintiffs Conferred With PPC.*

Even had Plaintiffs been obligated to meet and confer prior to bringing this Motion (they were not), PPC's argument would still fail.

*First*, the parties extensively discussed the Motion through emails and formal letters. *See, e.g.*, Mot. 1, 7; Opp. at 7 ("Plaintiffs sent PPC a letter threatening to move to exclude the Preview Cut"); Dkts. 75-1, 75-2. These communications evince the fact that the parties engaged in a thorough back-and-forth on the very substantive issues and case law for which Plaintiffs moved to strike. Thus, even had Local Rule 7-3 been applicable it "does not require in person or even telephonic conferences[.]" *Licea v. Rugs.com, LLC*, 2021 WL 4190635 (C.D. Cal. Sept. 14, 2021). An exchange of emails or letters can suffice. *See, e.g.*, *Meggs v. NBCUniversal Media, LLC*, 2017 WL 2974916 (C.D. Cal. July 12, 2017) (citing *Gibson Brands, Inc. v. John Hornby Skewes & Co.*,

---

[1] *See also Haroon's Halal Kabob LLC v. Food Truck Builders of Phoenix.com*, 600 F. Supp. 3d 987, 993 n.8 (D. Ariz. 2022) (meet-and-confer "is not required for Rule 37(c)(1) sanctions"); *McGee v. Eurpac Servs.*, 2023 WL 3355690 (D. Nev. Mar. 31, 2023) ("Rule 37 does not require the moving party to meet and confer with the opposing party prior to filing a motion for sanctions under Rule 37(b) or (c).") (quoting *Allstate Ins. Co. v. Nassiri*, 2010 WL 5248111, at *3 (D. Nev. Dec. 16, 2010)); *Miesen v. Hawley Troxell Ennis & Hawley LLP*, 2021 WL 1124758 (D. Idaho Mar. 24, 2021) ("there is no requirement under Rule 37(c) for parties to meet and confer").

- 3 -

*Ltd.*, 2015 WL 4651250, at \*2 (C.D. Cal. Aug. 4, 2015)).[2]

*Second*, PPC cannot show how the Motion prejudices it as it had adequate notice of the bases for the Motion and ample time to prepare its overwrought opposition. *See*, *e.g.*, *Higgins v. Am. Bottling Co.*, 2022 WL 13811816 (C.D. Cal. Oct. 21, 2022) (considering motion where "a meet and confer conference would have been unlikely to resolve the issues before the Court and the parties were able to adequately brief them."); *Wilson-Condon v. Allstate Indem. Co.*, 2011 WL 3439272, at \*1 (C.D. Cal. Aug. 4, 2011) ("[Defendant] does not appear to have suffered any prejudice" as it "was able to prepare and submit an opposition.").

Lastly PPC's footnote argument regarding the parties' meet-and-confer process for their cross-motions for summary judgment is immaterial to Rule 37 and PPC's impossibly late disclosure. In any event, PPC waived this one-sentence argument by relegating it to a footnote (Def.'s Opp. to Pls.' Mot. for Summ. J. at 20 n.15) because "[a]rguments raised only in footnotes … are generally deemed waived." *Riegels v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) (disregarding argument) (citations omitted); *see also Brinker v. Axos Bank*, 2023 WL 4535529 (S.D. Cal. July 13, 2023) ("arguments raised only in footnotes are generally deemed waived") (collecting cases).

**B.      PPC Failed to Satisfy Its Burden Under Rule 37.**

**1.      *There is No Substantial Justification.***

PPC concedes that although the video file was directly responsive to Plaintiffs' document requests (Opp. 8), it failed to produce or even disclose it during the discovery period as required by Rule 26. Instead PPC opted to disclose the alleged video for the first time in connection with its opposition to

---

[2] *See also Colodney v. Cnty. of Riverside*, 2013 WL 12200649, at \*4 (C.D. Cal. Aug. 16, 2013) ("Courts in this district have held that communication through letter may satisfy the meet and confer requirement of Rule 7-3."); *Perrin Bernard Supowitz, LLC v. Morales*, 2022 WL 3686407 (C.D. Cal. Aug. 25, 2022) ("email correspondence" "satisfied this obligation").

- 4 -

Plaintiff's motion for summary judgment. PPC claims "the delay in its production was attributable to inadvertence, not malintent[.]" *Id.* However, nothing in PPC's Opposition suffices to show substantial justification: "Because Rule 37(c) includes no requirement for bad faith or willfulness, ***inadvertence is not a substantial justification to avoid the exclusion remedy***." *Steenwyk v. Steenwyk*, 2022 WL 7162931, at *3 (C.D. Cal. July 11, 2022), *R&R adopted*, 2022 WL 7054770 (C.D. Cal. Oct. 12, 2022) (citations omitted) (emphasis added); *see Hoffman*, 541 F.3d at 1180. The analysis might be different if the exclusion sought "amounted to dismissal of a claim," but that is clearly not the case here. *R&R Sails, Inc. v. Ins. Co. Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

PPC cannot reasonably explain its failure to produce the video sooner, as by its own admission, it has long been aware of its existence and relevance to PPC's own assertions in this action. Opp. 8 ("PPC agrees that the Preview Cut was responsive"). PPC was well aware of its concocted "substantial completion" defense from the outset and was in a position to identify and produce the video after receiving Plaintiffs' Requests for Production of Documents on January 3, 2023. Mot. 4-5. Instead, PPC waited nearly eleven months—and a full year after filing its answer which raised the defense—to disclose and produce the video just *two days* prior to the deadline to file summary judgment oppositions. *See id.* PPC cannot reasonably explain or justify this lengthy delay.

PPC spills much ink falsely stating that Plaintiffs did not request any cuts of the film in meeting and conferring about PPC's deficient production, a contention belied both by Plaintiffs' explicit meet-and-confer letter[3] and by the parties' teleconference regarding PPC's deficient production. The letter could

---

[3] *See* Toberoff Decl., Ex. E, at 2: "In addition and without limitation, Paramount has also failed to produce the ... audio and/or video, and (in most instances) transcriptions thereof referenced in emails and elsewhere *as documenting the relevant development of the sequel Top Gun: Maverick and of Top Gun*."; referencing such material and noting that copies were sent to and/or received by/from others." (footnotes omitted) (emphasis added).

not be clearer that PPC failed to produce underlying materials "***documenting the relevant development*** of the sequel *Top Gun: Maverick*[.]" Toberoff Decl., Ex. E, at 2.

Review of counsel's notes from the parties' meet-and-confer conference unequivocally demonstrate that Plaintiffs, as in their letter, did not limit their demand to mere interviews as PPC now claims. *See* Second Declaration of Marc Toberoff ("Toberoff Decl. II") ¶ 2. Nor is it surprising that PPC's counsel did not document the concerns raised by Plaintiffs which PPC habitually ignored. *See* Mot. 4-7. PPC had its own agenda: to inhibit Plaintiffs' ability to obtain information by raising objections to Mr. Kosinski's deposition and withholding documents via frivolous assertions of privilege and irrelevance. *Id.*

The arguments made in opposition to this Motion are nothing more than an improper attempt by PPC to deflect and shift its burdens onto Plaintiffs. Even if Plaintiffs had "never complained" about PPC's withholding of particular responsive documents (Plaintiffs did), "each party's compliance with the Federal Rules of Civil Procedure is its own responsibility and not that of its adversaries. … [PPC]'s failure to do so was [its] own fault, and [it] has failed to establish that [its] noncompliance was substantially justified or harmless." *Transoceanic Cable Ship Co. v. Bautista*, 2018 WL 3521174 (D. Haw. July 20, 2018).

### 2. ***PPC's "Whataboutism" Deflection Is Untrue and Immaterial.***

Unable to demonstrate substantial justification or to shift its burden, PPC deflects "engag[ing] in …'whataboutism'… [But, PPC] can't slough off its violations by pointing at the opponent." *Bankdirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. CV 15-10340, 2018 WL 6694904, at *8 (N.D. Ill. Nov. 8, 2018); *see also League of Women Voters of Fla., Inc.* v. *Lee*, 2022 WL 610400, at *5 (N.D. Fla. Jan. 4, 2022) ("Whatboutism, however, is not an argument").

- 6 -

PPC's feigned complaints regarding Plaintiffs' production have nothing to do with this Motion. If anything, they only serve to show that PPC sought to bury its adversaries in needless busy work—including the rescanning, re-bates stamping, and reformatting of publicly available documents already produced to PPC—while it evaded its own discovery obligations. That Plaintiffs produced a smaller number of documents than PPC was to be expected. Plaintiffs, the surviving widow and son of author Ehud Yonay ("Yonay") would not ordinarily be expected to have many documents relating to a magazine story written by Yonay in 1983.  In contrast, PPC which promptly purchased Yonay's story and produced *two movies* based on it, would. The Committee Notes to Federal Rule of Civil Procedure 26 (2015 Amendment) recognize that:

> [C]ases involve what often is called 'information asymmetry.' One party—often an individual plaintiff—may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.

Nonetheless, PPC sought, for example, all documents pertaining to *anything Yonay had ever written*. At PPC's insistence, Plaintiffs obliged and produced numerous documents, even though the majority of these were publicly available online. Plaintiffs scanned the documents by hand. Yet, PPC sought to impose additional burdens on Plaintiffs, demanding that Yonay's widow, Shosh Yonay, bring all of the these publications with her from abroad so that PPC could allegedly inspect them. Toberoff Decl. II ¶ 3. As noted in meet-and-confer correspondence sent by Plaintiffs to PPC on August 29, 2023, "most of [PPC's] demands [] appear crafted to harass Plaintiffs and their counsel and [to] subject them to needless busy work, thereby taxing their more limited resources." Toberoff Decl. II, Ex. G. Plaintiffs complied with PPC's demands, though there

can be no doubt that no benefit was gained or could be gained therefrom. Toberoff Decl. II ¶ 5.

PPC then demanded the "meta-data" associated with these old scanned documents. Plaintiffs, however, noted in an August 29, 2023 meet-and-confer letter to PPC that:

> As much of Plaintiffs' document production is comprised of recent scans of decades-old physical documents, [PPC's] demands concerning metadata ring hollow. Again, the documents produced consist largely of recent PDF scans of decades-old articles and contracts in Shosh Yonay's possession, as one would think. Thus, no meaningful metadata exists in the first instance. … Paramount has not demonstrated a need for or the viability of metadata associated with the type of documents requested by Paramount or… produced by Plaintiffs.

Toberoff Decl. II, Ex. G. Considering PPC's insistence on receiving meta-data for scans of decades-old and largely immaterial physical documents (e.g. other literary works written by Yonay), it is ironic that PPC failed to produce such highly relevant meta-data with its belated video file. Although PPC avoids this issue, it cannot gainsay the significance of the missing meta-data for purposes of authenticating and dating its untimely produced video file.

### 3. *<u>The Harm is Not Speculative.</u>*

PPC's late production of the video is obviously prejudicial to Plaintiffs and, as such, is not harmless. Without limitation, the late 11th hour production of this file deprived Plaintiffs of the ability to adequately prepare for its use, to propound follow-up discovery, as well as to test and question witnesses about its authenticity and contents. *See*, *e.g.*, *James Stewart Entm't, LLC v. L&M Racing, LLC*, 2013 WL 12248146, at *5 (C.D. Cal. June 28, 2013) ("[G]iven that plaintiffs are now forced to review documents well after the discovery cutoff, forcing plaintiffs to also have to prepare for defendants' use of this late-produced document does prejudice them."); *Rago v. Select Comfort Retail*

*Corp.*, 2021 WL 3621890, at *9 (C.D. Cal. June 11, 2021) ("[P]laintiff should not be able to rely on documents defendant did not receive in time to fully investigate and use."); *Zadoian v. Target Corp.*, 2020 WL 3203145, at *2 (C.D. Cal. Apr. 14, 2020) ("Nor is the late production of these documents harmless because Defendant is now unable to conduct further discovery into the documents, such as asking Plaintiff questions about the [documents].").

PPC wrongly insists that the video "is what it is," and "additional discovery about it would not have aided Plaintiffs[.]" Opp. 15. Yet, the only thing that can be gleaned from the video file PPC belatedly produced is that it depicts an *undated* incomplete version of the Sequel which was burned on November 16, 2023 for this litigation. Mot. 8. Neither the video file (which tellingly lacks the underlying meta-data common to video files), the Declaration of Ralph Bertelle, nor any of the documents PPC has filed in opposition to this Motion establish that the file is what it purports to be. In short, neither Plaintiffs nor the Court can simply take PPC's counsel's word for it and blindly "trust that [its] disclosures are authentic[.]" *Rago*, 2021 WL 3621890, at *8.

PPC states that Plaintiffs "kn[ew] about" the video "no later than" April 2023—because that was when Plaintiffs received an enormous data-dump, among which was buried a reference to a preview cut. Opp 14. This is nonsensical. PPC would have this Court believe that Plaintiffs immediately became aware that a particular film cut existed upon receipt of PPC's data-dump, comprising over 100,000 pages of miscellaneous and largely immaterial documents which was neither categorized nor accompanied by indices. Toberoff Decl. II ¶ 6; Lens Decl. ¶ 8. That Plaintiffs later discovered a multi-page calendar spanning several months which happened to contain a reference to a preview cut on a particular day also does little to advance PPC's argument. To the contrary, it only serves to support Plaintiffs' reiterated request in its September 14, 2023 meet-and-confer letter that PPC immediately produce the

- 9 -

materials "referenced in emails and elsewhere as ***documenting the relevant development*** of the sequel *Top Gun: Maverick*[.]" Toberoff Decl., Ex. E, at 2. This request, like Plaintiffs' relevant Requests for Production, was deliberately ignored by PPC. *See* Mot. 4-6; Toberoff Decl., Ex. C, Requests Nos. 44, 45, 52.

PPC's assertion that Plaintiffs had adequate information to question Mr. Kosinski regarding the authenticity and precise contents of a video file that had never been produced is absurd. Opp. 14. Furthermore, any attempts to obtain the alleged preview cut or any other documentation for that matter from Mr. Kosinski proved futile. *See* Toberoff Decl. II, Ex. H.

### C. The Video is Inadmissible Notwithstanding Its Untimely Production; References to the Video and Bertelle's Declaration Must Be Stricken.

PPC has also failed to rebut Plaintiffs' arguments that the video file is inadmissible irrespective of its seriously late production. Ralph Bertelle's declaration simply does not satisfy Federal Rule of Evidence 901(b)(1) and there is no foundation for his testimony. Neither the contents of his declaration nor PPC's conclusory statements in its Opposition "affirmatively [show] that the [Bertelle] is competent to testify[.]" Fed. R. Civ. P. 56(e).

Personal knowledge may sometimes be inferred from a declarant's position. *See*, *e.g.*, *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (inferring from the affiant's position as an investment banker representing the defendant in negotiations, that he had personal knowledge of those negotiations and the parties' intent regarding the agreement thereby reached). Yet, a declarant's mere "recit[ation] that he has 'personal knowledge' of the matters set forth in his affidavit" does not itself justify such a detailed inference. *Smith v. Pacific Bell Telephone Co.*, Inc., 662 F. Supp. 2d 1199, 1217 n.21 (E.D. Cal. 2009) ("As a union steward, and not a manager or human resources associate, [the declarant] was not present nor in a position to acquire

such comprehensive knowledge.").

Here, neither Mr. Bertelle's vague declaration nor the nature of his position reasonably leads to the inference that he has personal knowledge concerning the authenticity and timing of the purported preview cut. As stated in his declaration, Mr. Bertelle's position extends to "manag[ing] physical production for PPC[.]" Bertelle Decl. ¶ 2, Dkt. 70-9; Mot. 9-10. Physical production does not entail editing (i.e., cutting a film) or marketing (i.e., alleged test screenings of some preview cut). Mr. Bertelle did not even so much as claim to have reviewed the video. Bertelle Decl. ¶¶ 10, 11. "[Bertelle] did not state that he created or even reviewed the [video], and there is nothing about his job description that requires a court to presume that he did." *United States v. Real Property at 475 Martin Lane*, 298 F. App'x 545, 551 (9th Cir. 2008) (affirming grant of summary judgment and exclusion of exhibits where opposing party argued declarant possessed "first-hand knowledge of the facts contained in an affidavit by virtue of his or her position of employment"); *see also United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) (testimony that a declarant works with or for someone who has personal knowledge of the authenticity of a document does not establish the declarant also has the requisite personal knowledge to authenticate it). His declaration, therefore, does little to authenticate the video and the date of the actual cut.

As explained in Plaintiffs' Motion, the video file itself also lacks sufficiently distinctive characteristics to sustain authentication under Rule 901(b)(4). Mot. 8, 10. PPC failed to respond to this contention in its Opposition, thereby waiving this alternative basis and effectively conceding that neither Plaintiffs nor this Court can trust that the file "is what [PPC claims] it is."

Striking the inadmissible video and references to the pertinent portions of Bertelle's declaration as well as to those parts of PPC's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and Rule 56-1

- 11 -

Response Statement which cite to such evidence is the appropriate remedy. *See, e.g.*, *Johnson v. Kriplani*, 2008 WL 2620378 (E.D. Cal. July 2, 2008) ("Thus, because [declarant] did not state that he was personally involved in any of the measurements to which he testifies, and because personal knowledge cannot be inferred, the statements in [his] declaration referencing such measurements are stricken.") (citing *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1200 (C.D. Cal. 2007)).[4]

## III.   CONCLUSION

For all the above reasons, Plaintiffs' Motion to Strike should be granted.

DATED: December 22, 2023

Respectfully submitted,

**TOBEROFF & ASSOCIATES, P.C.**

By: */s/ Marc Toberoff*
      Marc Toberoff

*Attorneys for Plaintiffs*

---

[4] PPC's suggestion (again made in a footnote) that it might be able to proffer a different witness at trial should likewise be disregarded. If PPC had a competent witness with personal knowledge, it could and should have identified them.

- 12 -

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Shosh Yonay and Yuval Yonay, certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 22, 2023

TOBEROFF & ASSOCIATES, P.C.

By: _____/s/ Marc Toberoff_____
           Marc Toberoff

*Attorneys for Plaintiffs*

- 13 -