UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| Kamilla Sail-Salesman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|

**Proceedings:** IN CHAMBERS — COURT ORDER

Before the Court are the parties' cross-motions for summary judgment (Docket Nos. 58 and 62) and motions to exclude their respective expert witnesses (Docket Nos. 54, 56–57).[1] The motions have been fully briefed. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds these matters appropriate for decision without oral argument. The hearings calendared for January 8, 2024, were vacated and the matters taken off calendar.

## I. Background

Plaintiffs Shosh Yonay and Yuval Yonay (collectively "Plaintiffs") are the widow and son of Ehud Yonay ("Yonay"), the author of a magazine article "Top Guns" (the "Article") published in California Magazine on April 21, 1983. The Article is an account of the experiences of F-14 pilots and radio intercept officers as they undergo training at the Navy's Fighter Weapons School (known as "Top Gun"). After the Article's publication, Defendant Paramount Pictures Corporation ("Defendant") and Yonay executed an Assignment of Rights, dated May 18, 1983, assigning to Defendant the motion picture rights to the Article. The Assignment of Rights also required Defendant to credit Yonay "on the film of any motion picture photoplay" that is "produced . . . []under" the Assignment of Rights "and substantially based upon or adapted from [the Article] or any version or adaptation thereof . . . ." (Docket No. 62-4 at p. 3, section 7(b).) In 1986, Defendant released the motion picture "Top Gun" (the "Original Film"). Yonay received a "suggested by" credit. The story follows fictional

---

[1] Plaintiffs also filed a Motion to Strike Evidence Not Produced During Discovery ("Motion to Strike"). (Docket No. 82.) The Court does not rely on the evidence that is the subject of the Motion to Strike in ruling on the parties' cross-motions for summary judgment or motions to exclude one another's expert witness reports and testimony. Accordingly, Plaintiffs' Motion to Strike is moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

characters Pete ("Maverick") Mitchell and Nick ("Goose") Bradshaw as they train at the Top Gun Naval Fighter Weapons School.

On January 23, 2018, after Yonay's death, Plaintiffs sent Defendant a Notice of Termination ("Notice") terminating Defendant's rights to the Article pursuant to 17 U.S.C. § 203(a), effective January 24, 2020. On May 27, 2022, Defendant released the sequel to the Original Film, "Top Gun: Maverick" (the "Sequel") without crediting Yonay. In the Sequel, set thirty years after the Original Film, Maverick, now a test pilot, returns to Top Gun to train a new class of graduates for a dangerous mission. Among them is Goose's son, who holds Maverick responsible for his father's death.

Plaintiffs commenced this action on June 6, 2022. The First Amended Complaint ("FAC") alleges three claims: (1) breach of contract, (2) declaratory relief, and (3) copyright infringement. Plaintiffs allege that Defendant breached the Assignment of Rights by not crediting Yonay in the Sequel. (See Docket No. 16 ¶ 52.) The FAC also alleges that the Sequel infringes Plaintiffs' copyright because "key elements" in the Sequel are substantially similar to the Article. (Id. ¶ 35.) Plaintiffs also seek a declaration that the Sequel is a "derivative" of the Article and that Defendant "does not have any rights to make, exploit, or distribute" the Sequel. (Id. ¶¶ 64–65.)

## II.  Motions to Exclude Expert Reports and Testimony

At the summary judgment stage of a copyright infringement action courts conduct an objective analysis of the works at issue to assess whether they are "substantially similar." See Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). This is known as the "extrinsic test." Id. When conducting the extrinsic test, courts must filter out the elements of the works that are not protected by copyright law, such as facts, general plot ideas, and familiar stock scenes. See id. at 823; Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990), overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin, 952 F.3d 1051 (9th Cir. 2020). The extrinsic test "is often aided by expert testimony." Bernal v. Paradigm Talent & Literary Agency, 788 F. Supp. 2d 1043, 1059 (C.D. Cal. 2010).

Plaintiffs rely on the expert testimony of Henry Bean to support their contention that the Article and Sequel are substantially similar. Defendant relies on the expert testimony of Andrew Craig and James McDonald to support its contention that the two works are not substantially similar. The parties move to exclude the testimony of their respective expert witnesses pursuant to Rule 702 of the Federal Rules of Evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, the Supreme Court firmly established the district court's role as the gatekeeper of expert testimony. 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The Rules of Evidence "assign to the trial judge the task of insuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." <u>Id.</u> at 597, 113 S. Ct. at 2799. Rule 702 codifies this standard:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 embodies "the twin concerns of 'reliability' . . . and 'helpfulness.'" <u>Stilwell v. Smith & Nephew, Inc.</u>, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting <u>United States v. Mitchell</u>, 365 F.3d 215, 234 (3d Cir. 2004)) (internal quotations omitted). "Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry." <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1184 (9th Cir.2002). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." <u>Primiano v. Cook</u>, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotations omitted). The test for reliability "is not the correctness of the expert's conclusions but the soundness of his methodology." <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 43 F.3d 1311, 1318 (9th Cir.1995). The proponent of the expert bears the burden of establishing, by a preponderance of the evidence, that the expert's testimony is admissible under Rule 702. See <u>Daubert</u>, 509 U.S. at 591 n.10; <u>Lust By & Through Lust v. Merrell Dow Pharm., Inc.</u>, 89 F.3d 594, 598 (9th Cir. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

### A. Plaintiffs' Expert Henry Bean

Henry Bean ("Bean") is a writer and former adjunct professor at Columbia University's graduate film school and New York University's Tisch School of the Arts. Bean opines that there are numerous similarities between the Article and the Sequel. However, Bean fails to filter out the elements of the Article and Sequel that are not protected by copyright law (i.e., facts), which renders his opinions unhelpful and inadmissible. See Johannsongs-Publ'g Ltd. v. Lovland, No. CV 18-10009-AB (SSX), 2020 WL 2315805, at *4–6 (C.D. Cal. Apr. 3, 2020) (finding expert report that did not filter out unprotected elements to be unhelpful and inadmissible), aff'd, No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021).[2]

Bean's opinions are also unhelpful to the extent he provides a subjective, rather than objective, comparison of the Article and Sequel. See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994) (explaining that the subjective comparison of two works – referred to as the "intrinsic test" – is done with "no expert assistance"); Shaw, 919 F.2d at 1356 ("The intrinsic test . . . should measure substantial similarity in expressions . . . depending on the response of the ordinary reasonable person . . . . In decisions under the intrinsic test, analytic dissection and expert testimony are not appropriate.") (internal quotations omitted). For example, when comparing the dialogue in the Sequel to that in the Article, Bean cites to excerpts from the Article and writes: "Those exact words may not appear in [the Original Film or the Sequel], yet one _feels_ them informing a lot of the dizzying and dazzling aerial footage of both films, especially in the Sequel . . . ." (Docket No. 62-5 at p. 23 (emphasis added).)

Accordingly, Bean's opinions are unhelpful and do not meet the standards for admissibility set forth in Rule 702. The Court grants Defendant's Motion to Exclude the Expert Report and Testimony of Henry Bean.

---

[2] In support of their opposition to Defendant's motion to exclude Bean's report and testimony, Plaintiffs filed a Declaration from Bean in which he asserts that he "tried as best as [he] could to compare the elements of the works at issue that are protectable, while disregarding those that are not." (Docket No. 74-3 ¶ 9.) However, this contradicts Bean's prior deposition testimony. Bean testified that he "was not sitting there thinking, well, this goes in the protected bucket and that goes in the unprotected bucket" when analyzing the two works. (Docket No. 54-3 at p. 128:1–4.) See, e.g., Payan v. Los Angeles Cmty. Coll. Dist., No. 2:17-CV-01697-SVW-SK, 2018 WL 6164269, at *8 n.5 (C.D. Cal. Oct. 16, 2018) (finding expert witness declaration inadmissible where the expert's opinions in her new declaration contradicted her prior deposition testimony).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

### B. Defendant's Expert Andrew Craig

Andrew Craig ("Craig") is a Commanding Officer in the Navy Reserve, as well as a former Top Gun instructor. In his affirmative and rebuttal expert reports, Craig opines on the factual accuracy of the Article. For instance, Craig opines that the Article accurately describes the Top Gun program and the experience of flying a jet fighter. Craig also references facts that were confirmed to him by other naval aviators, and facts that he learned from viewing historical photographs and conducting research in the Navy's Archives. Plaintiffs take issue with these references, arguing that Craig's reports should be excluded because they contain hearsay. The Court declines to exclude Craig's reports on that basis. See Hilt v. Foster Wheeler, LLC, 690 F. App'x 482, 483 (9th Cir. 2017) ("[A]n expert may render an opinion based on facts or data . . . that the expert has been made aware of . . . and may render an opinion that is not based on firsthand knowledge or observation.") (internal quotations and citations omitted); see also EcoServices, LLC v. Certified Aviation Servs., LLC, 312 F. Supp. 3d 830, 839 (C.D. Cal. 2018) (explaining that "experts are entitled to rely on hearsay in forming their opinions") (internal quotations omitted).

Plaintiffs also contend that Craig's opinions are unhelpful, and that Craig is not qualified to opine on literary similarities between the Article and Sequel. The Court is unpersuaded by these arguments. As an initial matter, Craig does not opine on literary similarities; rather, he opines on the factual elements of the Article as historical facts. His opinions are helpful because, in ruling on the parties' cross-motions for summary judgment, the Court must filter out the unprotected, factual elements of the Article and Sequel to assess whether they are substantially similar. See Shaw, 919 F.2d at 1356; Cavalier, 297 F.3d at 826. Accordingly, the Court denies Plaintiffs' Motion to Exclude the Expert Reports and Testimony of Andrew Craig.

### C. Defendant's Rebuttal Expert James McDonald

The Court does not rely on James McDonald's rebuttal expert report or testimony in ruling on the parties' cross-motions for summary judgment below. Accordingly, Plaintiff's Motion to Exclude the Expert Report and Testimony of James McDonald, and evidentiary objections to McDonald's report and testimony, are moot.

### III. Cross-Motions for Summary Judgment

### A. Evidentiary Objections

The parties raise hundreds of evidentiary objections to certain evidence submitted by one another, and to certain statements in each other's Statements of Uncontroverted Facts. (See

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

Docket Nos. 70-2, 80, 93, 95.) Many of the objections are misguided blanket and boilerplate objections or challenges to the relevance of particular information. The parties' objections to each other's Statements of Uncontroverted Facts are largely arguments about the characterization of certain facts and supporting evidence, rather than disputes about the facts themselves. Additionally, many of the parties' objections attack the admissibility of the current form of certain evidence. However, on summary judgment, a court can consider evidence which may be presented in an admissible form at trial, even if not presented in an admissible form at the motion for summary judgment stage. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form."); Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("In other words, when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence.") All of the parties' objections to evidence or facts that the Court relies on or cites in this Order are overruled.

  **B.**  **Legal Standard**

  Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party does so, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Id. at 324. The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir 1999). A "'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989), cert denied, 493 U.S. 809 (1989) (emphasis in original, citations omitted).

  The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631–32 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." Id. at 631 (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. Id. at 630–31. However, when the non-moving party's claims are factually "implausible, that party must come forward with more persuasive evidence than would otherwise be [required] . . . ." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir 1987), cert denied, 484 U.S. 1006 (1988) (citation omitted). "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." Id. "[T]he plain language of

Case 2:22-cv-03846-PA-GJS   Document 105   Filed 04/05/24   Page 7 of 14   Page ID #:7953

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### C. Analysis

Plaintiffs and Defendant each seek summary judgment on all three of Plaintiffs' claims: copyright infringement, declaratory relief, and breach of contract.

#### 1. Copyright Infringement

"To establish a successful copyright infringement claim, a plaintiff must show that he or she owns the copyright and that defendant copied protected elements of the work." Cavalier, 297 F.3d at 822. "Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." Id. Here, the parties do not dispute Defendant's access to the Article, rather, they dispute the issue of substantial similarity.

In determining if two works are substantially similar, the Ninth Circuit's test contains both an extrinsic and an intrinsic component. Id. "At summary judgment, courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." Funky Films, Inc. v. Time Warner Ent. Co., L.P., 462 F.3d 1072, 1077 (9th Cir. 2006), overruled on other grounds by Skidmore, 952 F.3d 1051. The extrinsic test is an "objective comparison of specific expressive elements," which "'focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works.'" Cavalier, 297 F.3d at 822 (quoting Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir.1994)) (internal quotations and citations omitted); see Berkic v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985) (explaining that the extrinsic test "compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters").

"To apply the extrinsic test, courts must first distinguish between protectable and unprotectable elements, and ask only whether the protect[a]ble elements in two works are substantially similar." Hanagami v. Epic Games, Inc., 85 F.4th 931, 942 (9th Cir. 2023) (internal quotations omitted). "This process is referred to as 'filtering.'" Id. "Copyright law only protects expression of ideas, not the ideas themselves." Cavalier, 297 F.3d at 823. Facts are also not protected. See Shaw, 919 F.2d at 1356 ("[F]acts and ideas within a work are not

Case 2:22-cv-03846-PA-GJS Document 105 Filed 04/05/24 Page 8 of 14 Page ID #:7954

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

protected"). Additionally, "[i]t is well established that, as a matter of law, certain forms of literary expression are not protected against copying." Berkic, 761 F.2d at 1293. For instance, general plot ideas, familiar stock scenes and themes, and scènes à faire ("situations and incidents that flow naturally from a basic plot premise") are unprotected. Cavalier, 297 F.3d at 823; see also id. ("In Williams, for example, we found no infringement because the common elements of electrified fences, automated tours, dinosaur nurseries, and uniformed workers were scenes-a-faire that flowed from the concept of a dinosaur zoo.") (quoting Williams v. Crichton, 84 F.3d 581, 589 (2d Cir. 1996)).

"[N]o bright line rule exists as to what quantum of similarity is permitted before crossing into the realm of substantial similarity." Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987); compare Shaw, 919 F.2d at 1357–58 (finding that plaintiff satisfied the extrinsic test by showing that both works involved a common theme, parallel plots and sequences of events, and some similar characters and dialogue), with Benay v. Warner Bros. Ent., 607 F.3d 620, 629 (9th Cir. 2010) (affirming summary judgment for defendant where "[a] number of similarities between the works arise out of the fact that both works are based on the same historical events, take place at the same time and in the same country, and share similar themes"), overruled on other grounds by Skidmore, 952 F.3d 1051. "Although summary judgment is not highly favored on questions of substantial similarity in copyright cases, summary judgment is appropriate if the court can conclude . . . that no reasonable juror could find substantial similarity of ideas and expression . . . ." Cavalier, 297 F.3d at 822 (internal quotations omitted); see also Shaw, 919 F.2d at 1355 ("We have frequently affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity."). "A plaintiff avoids summary judgment by satisfying the extrinsic test[,] which makes similarity of the works a triable issue of fact. In contrast, a plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." Kouf, 16 F.3d at 1045 (internal citations omitted).

Here, Plaintiffs contend that the Article and Sequel (collectively, "the Works") are substantially similar because they have similar plots, sequences of events, pacing, themes, moods, dialogue, characters, and settings. Defendant contends that the similarities identified by Plaintiffs are either not similarities at all, or are similarities based on unprotected elements of the Works. The Court concludes that the Article and Sequel are not substantially similar under the extrinsic test.

        **a.**        **Plot, Sequence of Events, and Pacing**

The plots, sequences of events, and pacing of the Works are largely dissimilar. Any similarities are based on unprotected elements, such as general plot ideas, facts, or scènes à faire.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

  The Article is a non-fiction work that describes real-life F-14 fighter pilots, Alex ("Yogi") Hnarakis, and his radar intercept officer, Dave ("Possum") Cully, who are shot down easily by their Top Gun instructor in their first aerial combat training exercise. The Article explains how Yogi and Possum's fighter squadron fits into the overall structure of the Navy's Pacific Fleet, including Top Gun's location (Naval Air Station Miramar in San Diego, California), the "officer's club," a bar where the Top Gun pilots go for drinks and entertainment. The Article provides descriptions of F-14 flight maneuvers and the intense nature of flight training, including the feeling of G-forces on the body and landing on a naval aircraft carrier. The Article subsequently describes the history and development of the school, its so-called "caste system," and the "hotshot" pilots that attended and taught there. At the end of the Article, Yogi and Possum graduate from Top Gun and their squadron flies out to a naval aircraft carrier for their next mission.

  Top Gun Maverick is a feature film sequel to the 1986 motion picture Top Gun featuring the fictional pilot from the original film, Pete "Maverick" Mitchell, now a test pilot in his mid-fifties. The Sequel begins with Maverick disobeying orders and flying his experimental aircraft at Mach 10. Maverick is then reprimanded and ordered back to the Naval Air Station North Island to train a group of Top Gun graduates for a dangerous mission to destroy a uranium enrichment plant in enemy territory. Maverick quarrels with his superiors about his training methods. When none of the graduates can complete the training course, Maverick takes an unauthorized flight and proves that the mission can be completed successfully. He is then ordered to lead the mission himself with a team of his choosing. Maverick's team includes Lieutenant Bradley "Rooster" Bradshaw, the son of Maverick's best friend and former radar intercept officer, who died in the original film. During the movie it is revealed that Maverick promised Rooster's dying mother that he would not let Rooster become a naval aviator. Rooster, unaware of the promise, resents Maverick for sabotaging his military career and his father's death. In the Sequel, Maverick is also reunited with a prior love interest, Penny Benjamin ("Penny"), and they re-kindle their relationship.

  Maverick and Rooster each lead a pair of F/A-18s fighters on the mission. They launch from an aircraft carrier and destroy the enemy facility, but Maverick is shot down. The pilots are ordered back to the carrier, but Rooster returns to find Maverick being hunted by an attack helicopter. After shooting down the helicopter, Rooster is shot down and ejects. Maverick and Rooster connect on the ground and steal an aging F-14 Tomcat from an enemy base, survive an aerial dogfight, and are saved by one of the other pilots. Maverick and Rooster return safely to the carrier despite having no front landing gear. Later, Rooster and Maverick make-up and Maverick flies off into the sunset with Penny.

  Although the plots of both the Article and Sequel feature Top Gun and various graduates and instructors, Top Gun is a real fighter pilot school and the graduates and instructors

Case 2:22-cv-03846-PA-GJS   Document 105   Filed 04/05/24   Page 10 of 14   Page ID #:7956

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

mentioned in the Article are real people (i.e., Yogi and Possum). Those factual elements are not protected by copyright law. See Shaw, 919 F.2d at 1356. And while both Works involve fighter pilots training and embarking on missions, those general plot ideas are also not protected. See Cavalier, 297 F.3d at 823. To the extent Plaintiffs contend that the Works are similar because they depict or describe fighter pilots landing on an aircraft carrier, being shot down while flying, and carousing at a bar, those are unprotected facts, familiar stock scenes, or scènes à faire. See id. Other than similarities based on unprotected elements, the Works' plots are dissimilar.

The pacing and sequence of events in the Works are also not similar. The Article is structured in a non-linear fashion, shifting back and forth between describing Yogi and Possum's training, their backgrounds, the technical aspects of F-14 fighter jets, etc. The Sequel, on the other hand, proceeds in a linear fashion and has a consistent pace.

        **b.**        **Theme and Mood**

The themes that Plaintiffs contend are similar between the Works are unprotected stock themes (i.e., "the bonds that form in military service," "the sheer love of flying," and "true grit") and/or themes that are not present in either the Article, Sequel, or both (i.e., "the anachronism of fighter aviation," "the aviation 'caste system,'" and "post-war nostalgia that yearns for a simpler 1950s America"). (Docket No. 62 at pp. 7–8.) Additionally, the moods that Plaintiffs identify as similar between the Works are: (1) not moods at all (i.e., the "contrast [between] the ethereal beauty of the 'vast blue dome of sea and sky' against jarring, unpredictable competitive action," and "idyllic flying . . . juxtaposed with gut-wrenching climbs"); (2) not present in the Sequel (i.e., "Post World War II nostalgia"); and/or (3) general, unprotected moods that flow naturally from the basic plot premise of a story about fighter pilots training and embarking on missions (i.e., "the constant threat of death" and "tranquility and violence"). See Shame on You Prods., Inc. v. Elizabeth Banks, 120 F. Supp. 3d 1123, 1158 (C.D. Cal. 2015) ("A general mood that flows naturally from unprotectable basic plot premises is not entitled to protection.") (internal quotations omitted), aff'd sub nom. Shame on You Prods., Inc. v. Banks, 690 F. App'x 519 (9th Cir. 2017).

        **c.**        **Dialogue and Characters**

The dialogue in the Sequel is not similar to that in the Article. As an initial matter, the dialogue in the Article is unprotected because it is presented as real statements made by actual people. See Corbello v. Valli, 974 F.3d 965, 984 (9th Cir. 2020) ("The dialogue is held out by the Work as a historically accurate depiction of a real conversation. The asserted facts do not become protectable by copyright even if, as Corbello now claims, all or part of the dialogue was made up."). Additionally, the only phrase Plaintiffs identify as appearing in both Works is the

Case 2:22-cv-03846-PA-GJS  Document 105  Filed 04/05/24  Page 11 of 14  Page ID #:7957

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

phrase "Fight's on," which is not entitled to copyright protection. See Narell v. Freeman, 872 F.2d 907, 911 (9th Cir. 1989) ("Ordinary phrases are not entitled to copyright protection."); see also Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1450 (9th Cir. 1988) (explaining that "extended similarity of dialogue" is "needed to support a claim of substantial similarity"). To the extent there are similarities between the characters in the Works, the characters in the Article are real people and are therefore not protected by copyright law. See Corbello, 974 F.3d at 976 ("A character based on a historical figure is not protected for copyright purposes.").

### d. Setting

There are notable differences in the Works' settings. In the Sequel, the Top Gun graduates are preparing for their mission at Naval Air Station North Island, whereas in the Article, Yogi and Possum complete their Top Gun training at Naval Air Station Miramar. The Sequel is set in the 2020s, and the Article is set in the 1980s and earlier. Although Plaintiffs contend that the Works' settings are similar because both take place at a Naval Air Station along the beach in Southern California, Top Gun was in fact located at Naval Air Station Miramar in the 1980s, so that aspect of the Article's setting is not protectable. Other similar settings, such as a jet's cockpit, the sky, a classroom, an aircraft carrier, and a bar or "officer's club" are unprotectable scènes à faire.

In sum, an objective comparison of Works' respective plots, sequences of events, pacing, themes, moods, dialogue, characters, and settings demonstrates that they are not substantially similar. While the Article and Sequel have some similarities, those similarities are based on unprotected elements.

### e. Selection and Arrangement

Plaintiffs also contend that the "selection and arrangement" of the unprotected elements in the Article is substantially similar to that of the Sequel.

In addition to filtering out the unprotected elements of the two works and comparing their plots, themes, settings, etc., the Ninth Circuit "also employ[s] a 'selection and arrangement' approach to assess substantial similarity" under the extrinsic test. Hanagami, 85 F.4th at 943. This approach protects the "particular way in which the artistic elements form a coherent pattern, synthesis, or design." Skidmore, 952 F.3d at 1074. Under the selection and arrangement analysis, "[s]ubstantial similarity can be found in a combination of elements, even if those elements are individually unprotected." Swirsky v. Carey, 376 F.3d 841, 848 (9th Cir. 2004); see Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and

Case 2:22-cv-03846-PA-GJS   Document 105   Filed 04/05/24   Page 12 of 14   Page ID #:7958

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

their selection and arrangement original enough that their combination constitutes an original work of authorship . . . ."). "[A] selection and arrangement copyright is infringed only where the works share, in substantial amounts, the 'particular,' i.e., the 'same,' combination of unprotectable elements." Skidmore, 952 F.3d at 1075 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).

The "selection and arrangement" of the Article and Sequel are not substantially similar. While the works share some unprotected elements, they do not share the same combination of unprotected elements. For example, the Article includes facts about the technical aspects of F-14 jet aircraft and the history of Top Gun, which do not appear in the Sequel. Plaintiffs merely identify "random similarities scattered throughout" the Works, which is insufficient to establish substantial similarity of "selection and arrangement." Id. (internal quotations omitted).

Overall, the Court concludes that the Article and Sequel are not substantially similar under the extrinsic test. Because "no reasonable juror could find substantial similarity of ideas and expression," Defendant is entitled to summary judgment on Plaintiffs' copyright infringement claim. Cavalier, 297 F.3d at 822. Defendant is also entitled to summary judgment on Plaintiffs' declaratory relief claim because it rises and falls with the copyright infringement claim.[3]

### 2. Breach of Contract

In 1983, Defendant and Yonay executed an Assignment of Rights granting Defendant the motion picture rights to the Article. The Assignment of Rights provided as follows:

> The Purchaser agrees . . . to announce on the film of any motion picture photoplay that may be produced by it hereunder and substantially based upon or adapted from [the Article] or any version or adaptation thereof, substantially incorporating the plot, theme, characterizations, motive and treatment of [the Article] or any version or adaptation thereof, that said motion picture photoplay is based upon or adapted from or suggested by a work written by the Author . . . .

(Docket No. 62-4 at p. 3, section 7(b).) Put another way, the Assignment of Rights requires Defendant to credit Yonay on a motion picture if it meets two criteria: (1) it was "produced

---

[3] Plaintiffs do not dispute that their declaratory relief claim rises and falls with their claim for copyright infringement, or even address their declaratory relief claim in their summary judgment briefing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

[]under" the Assignment of Rights; and (2) it is "substantially based upon or adapted from [the Article] or any version or adaptation thereof." (Id.)[4/] Although Plaintiffs terminated Defendant's motion picture rights to the Article on January 24, 2020, Plaintiffs now contend that Defendant breached the Assignment of Rights by not crediting Yonay in the Sequel.

The Court concludes that Defendant was not required to credit Yonay because the Sequel was not "produced under" the Assignment of Rights. As an initial matter, the production of the Sequel continued after Plaintiffs terminated Defendant's rights, and the Sequel was released in 2022. Additionally, the Sequel could not have been produced under the Assignment of Rights because it does not infringe on the Articles' copyright. That is, the Sequel was produced independently of the rights conveyed to Defendant by the contract.[5/]

Section 8 of the Assignment of Rights further demonstrates that Defendant was not required to credit Yonay. It reads:

> Nothing contained in this agreement shall be construed to be or operate in derogation of or prejudicial to any rights, licenses, privileges or property which the Purchaser may enjoy or to which the Purchaser may be entitled as a member of the public even if this agreement were not in existence, and the Purchaser may exercise such rights, licenses, privileges and property which the Purchaser

---

[4/] Plaintiffs assert that a motion picture does not need to be both "produced [] under" the Assignment of Rights and "substantially based upon [the Article] or any version or adaptation thereof" to require that Defendant credit Yonay. Specifically, Plaintiffs contend that the "and" separating the two phrases is a hendiadys and, therefore, does not have its usual, conjunctive meaning. The Court disagrees. Rather than construing the "and" as a hendiadys, the Court must "give effect to the plain and ordinary meaning of the language used by the parties" to the contract. People ex rel. Lockyer v. R.J. Reynolds Tobacco Co., 107 Cal. App. 4th 516, 524 (2003) (internal quotations omitted).

[5/] The parties' Motions and briefing do not provide sufficient argument concerning whether the Original Film might qualify as an "adaptation" of the Article. The Court therefore does not assess the second criteria in the Assignment of Rights or determine if the Sequel is based upon an adaptation of the Article. However, because Plaintiffs could only prevail on their breach of contract claim by satisfying both criteria in the clause, the Court's determination that the Sequel is not produced under the Assignment of Rights is alone sufficient for Defendants to be entitled to summary judgment on the breach of contract claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3846 PA (GJSx) | Date | April 5, 2024 |
|---|---|---|---|
| Title | Shosh Yonay, et al. v. Paramount Pictures Corporation, et al. | | |

> may enjoy or to which the Purchaser may be entitled as a member of
> the public as though this agreement were not in existence.

(Id. at p. 4, section 8.)  Because a member of the public could produce a motion picture like the Sequel – that does not infringe on the Article's copyright – without crediting Yonay, the Assignment of Rights should not be construed to require Defendant to do so.  Accordingly, Defendant did not breach the Assignment of Rights and is entitled to summary judgment on Plaintiffs' breach of contract claim.

## Conclusion

For all of the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment.  The Court will issue a Judgment consistent with this Order.

IT IS SO ORDERED.