Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
Jaymie Parkkinen (S.B. #318394)
*jparkkinen@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Alex Kozinski (S.B. # 66473)
*alex@kozinski.com*
33 Marguerite Drive
Palos Verdes Estates, CA 90275
Telephone: (310) 541-5885
Facsimile: (310) 265-4653

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOSH YONAY, an individual, and YUVAL YONAY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and DOES 1-10,<br><br>Defendants. | Case No. 2:22-CV-3846-PA-GJS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR FEES**<br><br>[*Filed with: Declaration of Alex Kozinski; Declaration of Marc Toberoff; Declaration of Shosh Yonay; Declaration of Yuval Yonay; [Proposed] Order*]<br><br>**Hearing Date:** June 3, 2024<br>**Hearing Time:** 1:30 P.M.<br>**Place:** Courtroom 9A<br>**Judge:** Hon. Percy Anderson |

# **TABLE OF CONTENTS**

**Pages**

I.    INTRODUCTION ........................................................................... 1

II.   A FEE AWARD IS NOT WARRANTED IN THIS CASE ...................... 2

    A.    PPC's Prevailing Does Not Warrant A Fee Award ........................... 3

    B.    Plaintiffs' Case Was Neither Frivolous Nor
        Objectively Unreasonable ..................................................... 4

    C.    Plaintiffs' Motivation Was To Enforce Their Statutory
        Termination and Protect Yonay's Literary Property and Legacy ...... 9

        1.    PPC's Transparent Attempts to Manufacture a
            Nefarious Motivation and Bad Faith Fail ............................ 12

        2.    PPC's Counsel Unnecessarily Drove Up
            Legal Fees on Both Sides ................................................ 14

        3.    PPC Projects Its Own Gamesmanship ................................. 15

        4.    Plaintiffs' Contract Claim Does Not Reflect Bad Faith ....... 15

    D.    Compensation and Deterrence Do Not Favor A Fee Award ............ 16

    E.    A Fee Award Would Hinder Rather Than Further the
        Purposes of the Copyright Act, Chilling Termination Rights
        and Legitimate Advocacy .................................................... 17

    F.    Awarding Fees Would Impose an Inequitable
        Burden on Impecunious Plaintiffs .......................................... 19

III.  THE CLAIMED FEES OF PPC'S COUNSEL ARE
      EXCESSIVE, UNREASONABLE AND OPAQUE ............................. 20

    A.    The Fees Claimed Are Excessive ......................................... 20

    B.    Time Spent on PPC's Belatedly Produced "Preview Cut" and
        Opposing Plaintiffs' Motion to Strike Is Not Recoverable ............ 21

    C.    The Vague and Overly Redacted Entries
        Are Woefully Inadequate ..................................................... 22

IV.   CONCLUSION .............................................................................. 23

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

**Pages**

4

*Authors Guild v. Google, Inc.*

5

804 F.3d 202 (2d Cir. 2015) ................................................................. 5

6

*Beastie Boys v. Monster Energy Co.,*

7

112 F. Supp. 3d 31 (S.D.N.Y. 2015) .................................................. 21

8

*Berkla v. Corel Corp.,*

9

302 F.3d 909 (9th Cir. 2002) ............................................................... 4

10

*Bibbero Sys., Inc. v. Colwell Sys., Inc.,*

11

893 F.2d 1104 (9th Cir. 1990) ............................................................. 5

12

*Bisson-Dath v. Sony Computer Entm't Am. Inc.,*

13

No. CV 08-1235 SC, 2012 WL 3025402 (N.D. Cal. July 24, 2012) ................ 8

14

*Blanton v. Domino's Pizza Franchising LLC,*

15

962 F.3d 842 (6th Cir. 2020) ............................................................. 19

16

*Bridgeport Music, Inc. v. Songs of All Nations,*

17

261 F. Supp. 2d 968 (M.D. Tenn. 2003) ........................................... 22

18

*Bridgeport Music, Inc. v. Songs of All Nations,*

19

99 F. App'x 686 (6th Cir. 2004) ........................................................ 22

20

*Brod v. Gen. Pub. Group, Inc.,*

21

32 F. App'x 231 (9th Cir. 2002) ................................................... 3, 11

22

*Carlini v. Paramount Pictures Corp.,*

23

No. CV 19-8306 SB, 2021 WL 8822464 (C.D. Cal. July 2, 2021) ............ 7, 10

24

*Cleveland v. Behemoth,*

25

2024 WL 1926504 (9th Cir. 2024) .................................................... 20

26

*Corbello v. DeVito,*

27

844 F. Supp. 2d 1136 (D. Nev. 2012) ................................................. 5

28

# TABLE OF AUTHORITIES

## **Cases**

**Pages**

*Countryman Nevada, LLC v. Doe-73.164.181.226*,
   193 F. Supp. 3d 1174 (D. Or. 2016)............................................................14, 15

*Cummings v. Dolby Lab'ys, Inc.*,
   No. CV 20-4443 ODW, 2020 WL 5518185 (C.D. Cal. Sept. 14, 2020) .........17

*E&J. Gallo Winery v. Proximo Spirits, Inc.*,
   No. CV 1:10-0411 LJO, 2012 WL 2995672 (E.D. Cal. July 21, 2012) ..........13

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) .......................................................................................10

*Epikhin v. Game Insight N. Am.*,
   No. CV 14-4383 LHK, 2016 WL1258690 (N.D. Cal. March 31, 2016).....4, 19

*Estate of Elkan v. Hasbro, Inc.*,
   258 F.App'x. 125 (9th Cir. Dec. 5, 2007) ..........................................................3

*Ets-Hokin v. Skyy Spirits*,
   323 F.3d 763 (9th Cir. 2003)............................................................................19

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) .....................................................................................2, 3

*Gauchat-Hargis v. Forest River, Inc.*,
   No. CV 11-2737 KJM, 2013 WL 4828594 (E.D. Cal. Sept. 9, 2013) ...........21

*Glacier Films (USA), Inc. v. Turchin*,
   896 F.3d 1033 (9th Cir. 2018)............................................................................2

*Gold Glove Prods. v. Handfield*,
   No. CV 13-7247 DSF, 2014 WL 12560617 (C.D. Cal. June 4, 2014) ...........16

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013).........................................................................20

# TABLE OF AUTHORITIES

## **Cases**

**Pages**

*Great Am. Duck Races Inc. v. Kangaroo Mfg. Inc.*,
    No. CV 17-0212 PHX, 2019 WL 6219323 (D. Ariz. Nov. 21, 2019) ...............2

*Grouse River Outfitters, Ltd. v. Oracle Corp.*,
    848 F.App'x 238 (9th Cir. 2021)....................................................23

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
    547 F.3d 1213 (9th Cir. 2008) ...................................................9, 10

*Hall v. Swift*,
    No. CV 17-6882 MWF, 2018 WL 3203045 (C.D. Cal. Apr. 16, 2018) ..........10

*Honeywell Int'l, Inc. v. W. Support Grp.*,
    947 F. Supp. 2d 1077 (D. Ariz. 2013)...............................................6

*HVT, Inc. v. Port Auth. N.Y. & N.J.*,
    No. CV 15-5867 MKB, 2018 WL 6079932 (E.D.N.Y. Nov. 21, 2018)..........20

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    579 U.S. 197 (2016) .............................................................. 2-3, 18

*Krikor v. Sports Mall LLC*,
    No. CV 22-5600 DMG, 2023 WL 3234333 (C.D. Cal. March 31, 2023) .........4

*Lynwood Invs. V. Konovalov*,
    No. CV 20-3778 MMC, 2023 WL 2918754 (N.D. Cal. Apr. 11, 2023).... 22-23

*Marshall & Swift/Boeckh, LLC v. Dewberry & Davis LLC*,
    No. CV 08-4375 GAF, 2011 WL 13128606 (C.D. Cal. May 16, 2011)..........12

*Marshall & Swift/Boeckh, LLC v. Dewberry & Davis LLC*,
    586 Fed. App'x 448 (9th Cir. Dec. 9, 2014) ....................................12

*Martinez v. Semi-Tropic Coop.*,
    No. CV 19-1581 JLT, 2023 WL 3569906 (E.D. Cal. May 19, 2023) ............21

# TABLE OF AUTHORITIES

**Cases**

**Pages**

*Marvez v. Uproar Ent.*,
   No. CV 22-2866 VW, 2023 WL 2628616 (C.D. Cal. Feb. 14, 2023) ............ 17

*Metcalf v. Bochco*,
   200 F. App'x 635 (9th Cir. 2006) ................................................................. 2, 3

*Milkcrate Athletics, Inc. v. Adidas Am. Inc.*,
   619 F. Supp. 3d 1009 (C.D. Cal. 2022) ..................................................... *passim*

*Mills Music, Inc. v. Snyder*,
   469 U.S. 153 (1985) ........................................................................................ 18

*Muromura v. Rubin Postaer & Assoc.*,
   No. CV 12-9263 DDP, 2015 WL 5456583 (C.D. Cal. Sept. 17, 2015) ............ 4

*Neil v. C.S.S.*,
   495 F.App'x 845 (9th Cir. 2012) ..................................................................... 21

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
   166 F.3d 65 (2d Cir. 1999) ................................................................................ 5

*Pasillas v. McDonald's Corp.*,
   927 F.2d 440 (9th Cir. 1991) ........................................................................ 4, 5

*Pearson v. Apria Healthcare Grp.*,
   2023 WL 3244001 (9th Cir. 2023) ................................................................. 7-8

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ........................................................................... 3

*Phoenix Techs. Ltd. v. VMware, Inc.*,
   No. CV 15-1414 HSG, 2018 WL 828030 (N.D. Cal. Feb. 12, 2018) .......... 3, 10

*Randles Films, LLC v. Quantum Releasing, LLC*,
   No. CV 10-3909 SJO, 2012 WL 12884046 (C.D. Cal. Mar. 30, 2012) .......... 22

# TABLE OF AUTHORITIES

**Cases**

**Pages**

*Randles Films, LLC v. Quantum Releasing, LLC,*
  551 F.App'x 370 (9th Cir. 2014)........................................................................22

*Ray Charles Found. v. Robinson,*
  795 F.3d 1109 (9th Cir. 2015)..........................................................................18

*Roth v. Pritikin,*
  787 F.2d 54 (2d Cir. 1986)...............................................................................17

*Santiago v. Equitable Ascent Financial,*
  No. CV 11-3158 CRB, 2013 WL 3498079 (N.D. Cal. July 12, 2013)...........23

*Scherer v. Woodley-Vanomen Props.,*
  839 F.App'x 150 (9th Cir. 2021)........................................................................21

*Schkeiban v. Cameron,*
  No. CV 12-0636 R, 2012 WL 13012676 (C.D. Cal. Dec. 11, 2012) .............12

*Segal v. Rogue Pictures,*
  No. CV 10-5650 DSF, 2012 WL 13005531 (C.D. Cal. July 19, 2012)............7

*Seltzer v. Green Day, Inc.,*
  725 F.3d 1170 (9th Cir. 2013)..................................................................2, 3, 4

*Shame on You Prods., Inc. v. Banks,*
  No. CV 14-3512 MMM, 2016 WL 5929245 (C.D. Cal. 2016) ...............13, 14

*Smith v. Jackson,*
  84 F.3d 1213 (9th Cir. 1996)............................................................................16

*Smith v. Weeknd,*
  No. CV 19-2507 PA, 2020 WL 8174617 (C.D. Cal. Sept. 4, 2020) ..............17

*Sony Corp. of Am. v. Univ. City Studios, Inc.,*
  464 U.S. 417 (1984) .........................................................................................18

# TABLE OF AUTHORITIES

<u>**Cases**</u>

**Pages**

*Sound & Color, LLC v. Smith*,
　No. CV 22-1508 WLH (C.D. Cal. Mar. 18, 2024) .........................................17

*Stern v. Does*,
　No. CV 09-1986 DMG, 2011 WL 13124449 (C.D. Cal. May 4, 2011) ..........21

*Swirsky v. Carey*,
　376 F.3d 841 (9th Cir. 2004).........................................................................4

*Velasquez v. 2048 Partners*,
　No. CV 18-6184 JD, 2020 WL 3035791 (N.D. Cal. June 5, 2020)..................9

*Vogel v. Harbor Plaza Ctr.*,
　893 F.3d 1152 (9th Cir. 2018).......................................................................20

*Welch v. Metro. Life Ins. Co.*,
　480 F.3d 942 (9th Cir. 2007)....................................................................21, 23

*Zindel v. Fox Searchlight Pictures, Inc.*,
　No. CV 18-1435 PA, 2018 WL 6074566 (C.D. Cal. Oct. 26, 2018)........*passim*

<u>**Federal Statutes, Rules and Regulations**</u>

17 U.S.C. § 203 .................................................................................1, 11, 18, 19

17 U.S.C. § 304 ...............................................................................................18

17 U.S.C. § 505 ..........................................................................................*passim*

/ / /

/ / /

- vii -

# TABLE OF AUTHORITIES

**Pages**

## <u>Other Authorities</u>

H.R. Rep. No. 94-1476 (1976) ................................................................. 18

4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* (2023 rev. ed.)

      § 11.02 ........................................................................... 16, 19

      § 11.07 ............................................................................... 18

      § 14.10 ............................................................................ 3, 18

2 William Patry, *Patry on Copyright* § 4:7 (2024 rev ed.) .................................. 6

I.       **INTRODUCTION**

Plaintiffs, Shosh and Yuval Yonay, the widow and son of author Ehud Yonay ("Yonay"), brought the instant suit to protect and vindicate Yonay's rights to his 1983 story "Top Guns" ("Story") under the Copyright Act. The Story was unquestionably the literary genesis of Paramount Pictures' ("PPC") film "Top Gun" ("1986 Film") and ensuing franchise. PPC was quick to see the value of Yonay's exhilarating cinematic story and in a 1983 contract ("1983 Contract") snapped up the rights, resulting in the 1986 Film. PPC's 1983 Contract referred to Yonay's Story as a "wholly original," "story," and throughout, to PPC's purchase of exclusive rights under copyright to the Story. Further PPC's contracts with *Top Gun*'s screenwriters mandated that their screenplay be "based upon [the Story]," as indeed, it was. Moreover, the 1983 Contract required PPC to give Yonay credit on films "substantially incorporating the plot, theme, characterizations, motive and treatment of said [Story]," pursuant to which PPC credited Yonay on *Top Gun*.

On January 23, 2018, Plaintiffs properly availed themselves of their rights under 17 U.S.C. §203(a) to recover the U.S. copyright to the Story, effective January 24, 2020. On May 27, 2022, PPC released its "legacy" sequel "Top Gun: Maverick" (the "Sequel") ignoring both Plaintiffs statutory termination and Yonay's credit. *See* Dkt. 105 (SJ "Order") at 2. Unsurprisingly, the Sequel closely followed the 1986 Film and thus included key elements from the original Story. After PPC rebuffed Plaintiffs efforts to amicably settle, Plaintiffs commenced this action on June 6, 2022. *Id.*

This Court denied PPC's motion to dismiss Plaintiffs' First Amended Complaint (Dkts. 16, 20) finding in relevant part that "reasonable minds [could] differ on the issue of substantial similarity" and "additional development of the factual record would shed light on the issues pertinent to the Court's analysis under the extrinsic test." Dkt. 24 at 6-7.

Although this Court, after detailed analysis, ultimately dismissed Plaintiffs' claims on summary judgment, the factors governing a fee award under 17 U.S.C. §505 ("Section 505"), as articulated by the Supreme Court and Ninth Circuit, weigh heavily against awarding fees to PPC under the relevant circumstances.

## II.   A FEE AWARD IS UNWARRANTED IN THIS CASE.

PPC should bear their own fees in this action given the strong policies and concerns governing attorney's fee awards. Courts normally follow the *American Rule* that each side "bears their own attorney's fees." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994); s*ee also Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180 (9th Cir. 2013) ("Supreme Court rejected the so-called British Rule where the loser pays"). Prevailing parties are never automatically awarded fees under the Copyright Act, 17 U.S.C. §505. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). Rather, courts in the Ninth Circuit carefully consider each case individually, assessing relevant *nonexclusive* factors including: "1. the losing party's 'objective unreasonableness (both in the factual and in the legal components of the case)'; 2. whether the losing party's positions were frivolous; 3. the losing party's motivation; 4. 'the need in particular circumstances to advance considerations of compensation and deterrence'; 5. 'the degree of success obtained in the litigation'; 6. the purposes of the Copyright Act; and 7. 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious litigant.'" *Great Am. Duck Races Inc. v. Kangaroo Mfg. Inc.*, 2019 WL 6219323, at *2 (D. Ariz. Nov. 21, 2019) (brackets omitted) (quoting *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018)); *see also Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F.Supp.3d 1009, 1022-23 (C.D. Cal. 2022).

No single factor is dispositive, and where factors favor both sides, courts will deny a prevailing defendant's motion for fees. *See*, *e.g.*, *Metcalf v. Bochco*,

200 F.App'x 635, 641 (9th Cir. 2006) ("[B]ecause about half of the factors weigh in favor of Defendants and about half against them, the record does not compel an award of attorneys' fees"); *Phoenix Techs. Ltd. v. VMware, Inc.*, 2018 WL 828030, at *9 (N.D. Cal. Feb. 12, 2018) (denying fees when degree of success favored defendant, plaintiff was not unreasonable, and other factors were neutral). Here, aside from PPC prevailing, each of the factors weighs against compelling Plaintiffs to pay PPC's attorneys' fees.

Whereas the losing party's bad faith is not the only factor to be considered, generally Section 505 fees will ***not*** be awarded absent moral culpability. 4 *Nimmer on Copyright* ("*Nimmer*") §14.10[D][6][b] ("culpability [is still] the ever-present touchstone" for fee awards); [D][2][c] (losing party's "culpability emerges as an important, if not ***the decisive factor***") (emphasis added); *see also Kirtsaeng*, 579 U.S. at 209 (emphasizing "misconduct"). Where "evidence regarding [bad faith] motivation [is] equivocal," fees should *not* be awarded in copyright infringement cases. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (cited by PPC).

### A.   PPC's Prevailing Does Not Warrant A Fee Award.

"[T]he goals of the Copyright Act do not necessitate an award of attorney's fees" based on a defendant's degree of success. *Brod*, 32 F.App'x. 231, 236 (9th Cir. Feb. 15, 2002). To hold otherwise would provide "for automatic recovery of attorney's fees to the prevailing party," which the Supreme Court expressly "reject[ed]" in *Fogerty*, 510 U.S. at 534; *see also Kirtsaeng*, 579 U.S. at 202, 209. Especially in cases like this one that depend on the ***scope of protectability*** of an underlying copyrighted work, summary judgment for a defendant in no way suggests that the *other* Ninth Circuit factors favor an award. *See Estate of Elkan v. Hasbro, Inc.*, 258 F.App'x. 125, 126-27 (9th Cir. 2007) (fees *not* warranted where infringement claim was based on erroneous scope of foreign copyright); *Seltzer*, 725 F.3d at 1181 (***reversing*** grant

of fees, where "court relied on [] fact[] that [plaintiff] lost on summary judgment"); *Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002) (summary judgment finding "no protectable expression" in plaintiff's work did *not* justify fee award). That is precisely the situation here: the Court's Order largely focused on whether the Story's elements were protectable, ultimately finding them "unprotect[able] facts," "*scènes-à-faire*," or "familiar stock scenes." Dkt. 105 "Although the Court concluded that" the Story lacked sufficient "protectable" shared elements, that does not warrant a fee award, especially "given the awkwardness of the extrinsic test[.]" *Muromura v. Rubin Postaer & Assoc.*, 2015 WL 5456583, at *2 (C.D. Cal. Sept. 17, 2015) (citing *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) (referring to the "turbid waters of the 'extrinsic test'")). In any event, the other Ninth Circuit factors weigh heavily against a fee award.

## B. Plaintiffs' Case Was Neither Frivolous Nor Objectively Unreasonable.

"'Objective unreasonableness' is generally used to describe claims that have no legal or factual support whatsoever." *Milkcrate*, 619 F.Supp.3d at 1023 (citations omitted). Relatedly, "[a] claim is frivolous when it is clearly baseless, involving fantastic or delusional scenarios.'" *Epikhin v. Game Insight N. Am.*, 2016 WL 1258690, at *6 (N.D. Cal. March 31, 2016). "The Court's dismissal of [Plaintiffs'] copyright claim does not render it automatically frivolous or objectively unreasonable. A claim is not frivolous under the Copyright Act simply because it is unsuccessful." *Krikor v. Sports Mall LLC*, 2023 WL 3234333, at *3 (C.D. Cal. March 31, 2023) (citing *Berkla*, 302 F.3d at 924).

As noted by this Court, this dispute revolves around "the issue of substantial similarity." Dkt. 105 at 7. However, "[d]eterminations about substantial similarity are rarely obvious. The present case is no exception." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 444 (9th Cir. 1991) (declining fee

award where works shared only *nonprotectable* elements). Indeed, the Ninth Circuit has instructed that even where "a court determines that a claimed copyright is invalid [it] does not mean that the plaintiff has not presented a colorable claim." *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1109 (9th Cir. 1990) (affirming denial of fees where plaintiff's *entire work* was held uncopyrightable).

Here, PPC *admitted* that the Story was copyrightable and that Plaintiff held a valid copyright therein under the Act. *See, e.g.,* Dkt 84-1 at 323, 326 ("PPC does not challenge the copyrightability of the [work]"). PPC's 1983 Contract stressed PPC's rights under copyright in the Story to the exclusion of competing studios. Dkt. 62-4 at 7. Yet when PPC lost that copyright, it claimed that virtually *everything* in the Story was unprotectable.

PPC's fee motion reduces to their argument that because the Story is non-fiction, Plaintiffs' claims for declaratory relief that they recovered Yonay's copyright and for copyright infringement (Dkt. 16, ¶¶ 27-42, 60) were frivolous and unreasonable. "The mere fact that the original is a factual work," however, "should not imply that others may freely copy it" because "authors of factual works, like authors of fiction, should be entitled to copyright protection of their protected expression." *Authors Guild v. Google*, 804 F.3d 202, 220 (2d Cir. 2015). Whereas the fact, itself, is not protectable, it is well-settled that its expression can be, similar to the idea/expression dichotomy. *See Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 70 (2d Cir. 1999) ("though there can be no copyright in the news itself, copyright does protect 'the manner of expression…the way he structures his material and marshals facts, his choice of words, and the emphasis he gives to particular developments.'") (citations omitted); *Corbello v. DeVito,* 844 F.Supp.2d 1136, 1163 (D. Nev. 2012) ("Non-fiction works are also protected—not the historical facts themselves, but the creative presentation of those facts."); 2 *Patry on Copyright*

§4:7 (Apr. 2024) (no binary fact/fiction dichotomy in analyzing "expressive material in non-fiction works"). Contrary to PPC's false construct, courts have long given copyright protection to the expression in even highly-technical factual works. *See*, *e.g.*, *Honeywell Int'l, Inc. v. W. Support Grp.*, 947 F.Supp.2d 1077, 1081-82 (D. Ariz. 2013) (finding *aircraft* manuals with "procedures for checking and repairing aircraft parts" copyright protected).

If this case were such a slam dunk and "blatantly" and "uniquely frivolous" as PPC now claims, then why did its attorneys expend/bill hundreds of hours of strategy conferences, legal research and writing; seek discovery about everything Yonay ever wrote; employ not one but *two* expert witnesses, file its Daubert motion, and assert hundreds of evidentiary objections?

PPC makes a lot of the fact that Plaintiffs successfully opposed PPC's motion to dismiss, including by pointing out that discovery and expert literary analysis would help "parse through themes, plots, metaphors, story structures, pacing, and sequencing" (Dkt. 21 at 2), with which this Court agreed. Dkt. 24 at 6. PPC tries to fault Plaintiffs for doing just that. Dkt. 74-4 (Plaintiffs' Expert Report of Henry Bean with subheadings "Story Plot," "Themes," "Sequence of Events/Pacing," "Selection and Arrangement," etc.).

Furthermore, Plaintiffs' expert *did* "assess which, if anything that PPC claims in retrospect are 'stock elements'"—just like Plaintiffs said he would. *Id.* at 39. He also *did* address PPC's filtration of alleged "facts." *Id.* at 7 ("I concur with the distinctions [Plaintiffs'] Chart makes between facts and their literary expression…"); 8 ("It is worth pausing here to discuss the essential difference between mere facts and a dramatic story--or, as it is often formulated, between 'incident' and 'drama.'"; "the expression and atmospherics of Yogi and Possum's 'hop'...are far more than mere facts and certainly cinematic"); 38 ("The Story is the work of a very skilled writer, whether of fiction or non-fiction. In writing at this level, there is no such thing as a naked fact.").

That this Court ultimately found Bean's literary analysis unhelpful does not mean Plaintiffs' case "smacks of frivolity." PPC itself relied heavily on expert and other discovery. And the Court likewise did not consider the report of *PPC's* literary expert which "smack[ed] of" being largely written by counsel, complete with case-law descriptions and inadmissible legal conclusions by a hired gun. Dkt. 105 at 5; Dkt. 56. By contrast, Bean's report evinced a good faith attempt to analyze similarities between story and movie by an established screenwriter/professor who believed it was not his place to make ultimate legal conclusions about what is and is not copyright-protectable. This Court disagreed, but that does *not* reflect any bad faith or unreasonableness by Plaintiffs.

Given the genesis and chain-of-title to "Top Gun," similarities between the Story and Sequel undoubtedly existed. This Court concluded, however, after significant analysis, that these similarities must be filtered out. *See*, *e.g.*, Dkt. 105 at 11 ("While the [works] have some similarities, those similarities are based on unprotected elements."). Thus, "[w]hile Plaintiff[s'] arguments about [] substantial similarity were ultimately rejected, they 'raised colorable legal and factual issues.'" *Carlini v. Paramount Pictures Corp.*, 2021 WL 8822464, at *1 (C.D. Cal. July 2, 2021) (citations omitted) (denying fees following dismissal). The Court's detailed analysis under the extrinsic test, while finding for PPC, itself supports this conclusion. Dkt. 105. *See Segal v. Rogue Pictures*, 2012 WL 13005531, at *2 (C.D. Cal. July 19, 2012) (emphasizing that "dismissal of Plaintiff's claim required a relatively lengthy and detailed analysis" in concluding that copyright claim "was neither frivolous nor objectively unreasonable"), *cited with approval in Zindel*, 2018 WL 6074566, at *4.

Nor does Plaintiffs mistitling of their cross-motion for "summary judgment," render them unreasonable as Courts routinely treat such motions as effectively for *partial* summary judgment. *Pearson v. Apria Healthcare Grp.*, 2023 WL 3244001, at *1 (9th Cir. 2023) ("[Plaintiff's] summary judgment

- 7 -

motion, though not titled as such, was a motion for partial summary judgment.").

That Plaintiffs proceeded with the lawsuit, following discovery, like most do, also does not render their claims frivolous or unreasonable. *See*, *e.g.*, *Bisson-Dath v. Sony Computer Entm't*, 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012) ("[T]he fact that Plaintiffs declined to voluntarily dismiss their case after reviewing this correspondence [warning claims lacked merit] does not support a finding of frivolousness. It is not surprising or unusual for a party to reject an adversary's assessment of its case").

Furthermore, as discussed in Section I.C.3. below, PPC stonewalled discovery and failed to produce anything revelatory. Thus, PPC points to but a single, *highly redacted*, 1984 internal communication (Dkt. 109-6) that doesn't move the needle in the slightest. As shown (Dkt. 80 at 11-12), this isolated correspondence consists of one person suggesting a potential negotiating strategy with Yonays' representative (who said "she was willing to negotiate") to bang down the option fee/purchase price she requested by saying PPC doesn't really need the Story anyway. *Id*. Even worse, PPC improperly redacted and buried *non-privileged* responses of everyone this proposal was addressed to, including "Top Gun" producers Simpson/Bruckheimer (who urged PPC to lock up the Story, Dkts. 62-39, 62-40)—all as objected to by Plaintiffs. Dkt. 84-2. And, no doubt, the author of this isolated communication was wrong; without Yonay's copyright PPC risked another studio buying the Story which explains why Simpson/Bruckheimer were so anxious to get it. Dkts. 62-39 ("'We got to get this. We got to buy this[,]'" "'Get on the phone with *California Magazine*. We want this right away.'").

PPC's *actions* speak far louder than its puffery. Aside from Simpson/Bruckheimer's enthusiasm and admission that, in producing "Top Gun," they took "colorful incidents, anecdotes and characters" from the Story (elements which, in turn, were incorporated into PPC's Sequel, produced by

Bruckheimer) (Dkts. 62-39, 62-40), PPC snatched up Yonay's cinematic "wholly original" story in the 1983 Contract; explicitly instructed "Top Gun" screenwriters (credited on the Sequel as well) that their screenplay be "based upon" Yonay's Story, and PPC credited Yonay on "Top Gun" per his 1983 Contract (for "substantially incorporating the plot, theme, characterizations, motive and treatment of said [Story].") . Dkt. 62-2, Ex. 2 at 8, Ex. 10 at ¶ B(1); Ex. 11 at TGM0005320; Toberoff Decl., Exs. L-M.

Even recently, PPC submitted the Sequel's screenplay to the USC Scripter Awards, and then congratulated the Sequel's producer and director for the screenplay being nominated as a finalist in the "Film Adaptation" category as "based on characters from the 1983 California magazine article 'Top Guns' (author Ehud Yonay)." Dkts. 62-28, 62-29; Toberoff Decl., Exs. J-K.

### C. <u>Plaintiffs' Motivation Was To Enforce Their Statutory Termination and Protect Yonay's Literary Property and Legacy.</u>

PPC did not and cannot adduce "'persuasive evidence that plaintiff[s] brought the copyright infringement claim, or the case generally, for an improper motive.'" *Milkcrate*, 619 F.Supp.3d at 1023-24 (quoting *Velasquez v. 2048 Partners*, 2020 WL 3035791, at *1 (N.D. Cal. June 5, 2020)). Rather, Plaintiffs filed and litigated this case—their first and only lawsuit ever—in good faith. Declaration of Shosh Yonay ("Shosh Decl.") ¶13; Declaration of Yuval Yonay ("Yuval Decl.") ¶ 8; *see, e.g.*, *Zindel v. Fox Searchlight Pictures, Inc.*, 2018 WL 6074566, at *5 (C.D. Cal. Oct. 26, 2018) (Anderson, J.) ("first time that Plaintiff has sought to enforce a copyright in his father's works…suggest[s] that Plaintiff simply believed his case was meritorious.") (citing *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230-31 (9th Cir. 2008) as "affirming denial of fees to prevailing defendants where, in addition to other factors, 'Plaintiffs' motivation in bringing [their] claims was to protect an interest that

they believed was theirs'").

"A copyright on [an] old [work] is still a copyright. Nor would a pecuniary motivation on Plaintiff[s'] part be improper." *Phoenix Techs., Ltd. v. VMWare*, 2018 WL 828030, at *8 (N.D. Cal. Feb. 12, 2018) (citing *Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2003)); *see also Carlini*, 2021 WL 8822464, at *1. "Stated differently, '[t]his was not an action by a copyright troll or pirate,' and this factor also weighs against awarding Defendant costs and fees." *Milkcrate*, 619 F.Supp.3d at 1023-24 (citation omitted).

PPC cites one case saying that filing for copyright infringement *before* the release of a film "suggested" a bad faith motivation (Dkt. 109 at 10), but Plaintiffs filed their complaint ten days *after* the Sequel was released—once they and their counsel had a chance to see the film. That Plaintiffs sent a demand letter before the film's release, if anything, also suggests *good* faith by putting PPC on notice of Plaintiffs' likely claims. Contrary to PPC's assertions, "Plaintiff[s] attempt[s] to reach a settlement with [PPC] before filing suit does not weigh in favor of awarding [PPC] attorneys' fees." *Zindel,* 2018 WL 6074566, at *5 (citing *Hall v. Swift*, 2018 WL 3203045, at *5 (C.D. Cal. Apr. 16, 2018)). This is even more so given the obvious role the Story had played in the genesis of *Top Gun*—an iconic film, which credited Yonay, and would naturally be incorporated in its "legacy" Sequel.

The strong policies behind the Copyright Act's termination provisions recognize that by the time the market value of an author's work is established in commerce it's too late. Publishers and studios would have already secured as many rights as possible for as little money as possible, just as PPC did. Dkt. 62-4. The whole purpose of the termination right is to give authors and their families a "a second chance to obtain a more equitable portion of the copyright's value when it is no longer conjectural." *Horror Inc. v. Miller*, 2022 WL 4473426, at *8 (D. Conn. Sept. 26, 2022). It is undisputed and clear from the

record that Yonay's rousing Story gave rise to "Top Gun," and fair to say that but for his Story, PPC's billion-dollar franchise would not exist today. *See* Dkts. 62-39, 62-40. In fact, this very scenario fits the strong policies behind the termination right like a glove. One can hardly accuse Plaintiffs of a bad faith motivation for exercising and thereafter seeking to enforce their statutory termination rights.

To strike a fair balance, the Act provides terminated grantees like PPC with an *exclusive* two-year window to re-license a "terminated" copyrighted work, at a price that, hopefully, better reflects its demonstrated market value. 17 U.S.C. §203(b)(4). Yet after receiving Plaintiffs' termination notice in January 2018, PPC just ignored it and made no effort whatsoever to re-license Yonay's underlying Story *at any price*. This action for declaratory relief and copyright infringement followed. Notably, PPC, to this day, has not contested the validity of Plaintiffs' termination and Plaintiffs' valid copyright in the Story. Dkt. 58 at 6; Dkt. 68 at 13 ("PPC, of course, does not challenge that the Article is protected by copyright.").

A plaintiff's effort to enforce her copyright interests against a possible infringer is not a bad-faith motivation justifying a Section 505 award. Even when the plaintiff's belief turns out to be wrong, "resorting to the legal process" is not "malicious" or any indicia of bad faith under Section 505. *Brod*, 32 F. App'x. at 236. Plaintiffs held a good faith belief that the Sequel, which incorporated so much of the 1986 Film that credited Yonay's Story, infringed it, and were motivated by a desire to protect both their rights and their late husband's/father's legacy. Shosh Decl. ¶ 4. "[T]here is no evidence that [Plaintiffs] had a bad faith motive in pursuing the action" merely because their earnest belief that the Sequel infringed the Story was later held to be "erroneous." *Marshall & Swift/Boeckh, LLC v. Dewberry & Davis LLC*, 2011 WL 13128606, at *2 (C.D. Cal. May 16, 2011) *aff'd*, 586 F.App'x. 448 (9th Cir.

2014); *see also Schkeiban v. Cameron*, 2012 WL 13012676, at *1 (C.D. Cal. Dec. 11, 2012) (denying fee motion; "action [that] was based on an erroneous understanding of copyright" does not indicate "bad faith").

### 1. *PPC's Transparent Attempts to Manufacture a Nefarious Motivation and Bad Faith Fail.*

Plaintiffs' trumped-up "discovery-related conduct" is unavailing and not comparable to the actual misconduct for which courts find fee awards warranted. Plaintiffs produced all responsive documents in their possession well within the discovery period set by this Court and did not violate a Court order. *See* Toberoff Decl., Ex. A; Dkt. 36 at 3. To the extent there was any delay early in the discovery period, Plaintiffs' counsel kept PPC's counsel apprised of the justifiable reasons.

For example, Plaintiffs' counsel had an imminent discovery deadline in *three* other cases due at the exact time PPC demanded discovery in this case in mid-February, 2023, so Plaintiffs' counsel reasonably requested to meet and confer about this in early March, 2023. Dkt. 41, Ex. L at 5. In February 2023, Plaintiffs' counsel, Toberoff & Associates, was comprised of one principal attorney and one associate in stark contrast to PPC's counsel. Toberoff Decl., ¶ 15. PPC's counsel knew about the imminent deadline in the other three cases as they were also the opposing counsel there. *Id.*

As PPC is equally well aware, Plaintiffs' lead counsel, Marc Toberoff, suffered medical emergencies during the relevant discovery period, including two significant surgeries, which the parties *jointly stipulated* "severely limit[ed] his ability to work on this case, including…responding to discovery requests," rendering PPC's manufactured claims of delay and bad faith all the more disingenuous. Dkt. 35 at 2.

PPC's accusation that Plaintiffs refused to meet and confer in discovery is also false as shown by Plaintiffs' numerous detailed letters responding to PPC's

exaggerated assertions as well as by counsels' conferences. *See*, *e.g.*, Dkts. 82-3, 82-6, 82-7.

PPC heavily relies on the *sole* motion to compel it filed three days after Mr. Toberoff had left for Indonesia on a family vacation. Toberoff Decl. ¶ 16. The timing of PPC's motion was additionally suspect given that it responded to objections Plaintiffs made *five months* earlier, a fact not lost on the Magistrate Judge. Dkt. 42 at 1 (Ordering the parties to further meet and confer: "The Court further notes that Defendants complain that Plaintiffs have been stonewalling discovery that was requested 5 months ago. *Defendants chose to wait this long to bring Plaintiffs' allegedly deficient responses to the Magistrate Judge's attention.*") (emphasis added). PPC also refused Mr. Toberoff's request for a continuance until August 7 when he returned from vacation. Toberoff Decl. ¶ 16.

Notwithstanding that Plaintiffs' objections to PPC's requests (as overbroad, irrelevant and burdensome) were justified, Plaintiffs' counsel agreed at the meet and confer to cooperate because the dispute did not warrant expending further resources. *Id*. Ironically, PPC now tries to tarnish Plaintiffs' good faith cooperation despite its objections when this is precisely the function of the Rules' meet and confer process which the Magistrate ordered the parties to further engage in. Dkt. 42 at 1; *see E&J. Gallo Winery v. Proximo Spirits, Inc.*, 2012 WL 2995672, at *5-6 (E.D. Cal. July 21, 2012) (holding that seven months to respond to interrogatories and responding to discovery requests only after motions to compel were *granted* did *not* rise to the level of bad faith warranting attorneys' fees under Lanham Act).

This is not the least bit comparable to the "discovery-related conduct [that] evidence[d] bad faith" in *Shame on You Prods. v. Banks*, cited by PPC. 2016 WL 5929245, at *9 (C.D. Cal. 2016); *id*. at *3 (awarding fees against party

who propounded *nine* sets of *both* RFPs and interrogatories, *four* sets of RFAs, and filed *eight* motions to compel after failing to meet and confer).

### 2.   *PPC's Counsel Unnecessarily Drove Up Legal Fees On Both Sides.*

Even after Plaintiffs produced the irrelevant documents PPC requested (largely available to PPC online), PPC proceeded to raise numerous trivial issues regarding the documents' formatting, such as that scans of decades-old magazine stories by Yonay were "not text searchable" or lacked "metadata." Toberoff Decl., Ex. B. PPC demanded Plaintiffs convert the documents into PPC's specific formatting convention within two days, instead of PDF scans, and even that Shosh Yonay transport hard copies in travelling to Los Angeles for her deposition. *Id.*; *id.*, Ex. C.

PPC further insisted that Plaintiffs' PDF production be segregated into individual documents. Plaintiffs fully cooperated and did this even though it was crystal clear where each document began and ended, and in a fraction of the time it took PPC's counsel to draft its long grievance letters, an assistant could have easily segregated the 126 documents in question. Nonetheless PPC's counsel opted to bill for litigating such inconsequential minutiae.

Tellingly, PPC did not cite even a single material document in its summary judgment motion that PPC did not already have in its possession. Dkt. 58-1; Toberoff Decl. ¶ 17. This all but validates Plaintiffs' original objections to PPC's requests—that they were, *inter alia*, irrelevant and unduly burdensome.  It also shows that its counsels' bickering and finger-pointing was ultimately for no purpose other than to harass Plaintiffs or, more cynically, to buttress an unwarranted fee motion. *See Countryman Nevada, LLC v. Doe-73.164.181.226*, 193 F.Supp.3d 1174, 1182-83 (D. Or. 2016) (denying attorneys' fees under Copyright Act to prevailing party when that party "conducted this litigation in a

manner calculated to increase the opposing party's costs—and, at the same time, to increase the bases for [their] own fee petition").

### 3. *PPC Projects Its Own Gamesmanship.*

PPC's hurling of accusations of bad faith is further suspect given that PPC engaged in the very gamesmanship it now projects. PPC failed to adequately respond to Plaintiffs' requests *by the actual discovery deadline*, and then relied on late-produced files for key arguments on summary judgment. Dkt. 82-2; Toberoff Decl., Ex. D. As just one example, PPC claimed it "inadvertently" failed to produce a preview cut of the Sequel (though Plaintiffs' RFPs expressly requested this and met and conferred on this), and produced the preview cut *just two days before* oppositions were due—just because *PPC* opted to include it in *PPC's* opposition. *Id.*; Dkt. 82-4 at 12.

PPC stonewalled discovery with boilerplate objections (Dkt. 82-5) and failed to produce scores of relevant documents relating to development and promotion of the Sequel (and 1986 Film) (*e.g.*, screenplay drafts, story notes, unedited interviews of screenwriters/director for DVD bonus content, etc.). Dkts. 82-3, 82-6; 82-7.

In fact, PPC admitted to withholding pertinent documents, responsive to Plaintiffs' RFPs, when Plaintiffs independently learned of them, and PPC admitted to improperly redacting documents with no legally cognizable justification. *See* Dkt. 82-7; Toberoff Decl., Ex. D.

Plaintiffs, on the other hand, produced everything in their possession requested by the Defendant well ahead of this Court's discovery deadline.

### 4. *Plaintiffs' Contract Claim Does Not Reflect Bad Faith.*

PPC goes so far as accusing Plaintiffs of bad faith for bringing its contract claim when the parties briefing demonstrates a genuine dispute as to the 1983 Contract's ambiguous credit provision (drafted by PPC). Dkt. 62 at 24. Moreover, Plaintiffs' contract claim is not the proper subject of a Section 505

motion. It exists and was pled independently of their copyright claim despite PPC's attempt to conflate both. Dkt. 16 at ¶¶ 43-57, 67-79. PPC misleads with facile arguments that since Plaintiffs "terminated" the contract, PPC could not have breached nor produced the Sequel "under" it. *First*, Plaintiffs statutorily terminated Yonay's grant of the Story's U.S. copyright; not the contract and PPC's credit obligations. *Second*, PPC retained all foreign rights to the Story *under the contract*. *Nimmer* §11.02[B][2]. *Third*, PPC shot the Sequel—May 2018 to April 2019—and argued it was "substantially completed" *before* Plaintiffs' termination took effect on January 24, 2020. Dkt. 16 at ¶ 40.

### D.      Compensation and Deterrence Do Not Favor A Fee Award.

PPC's arguments regarding compensation and deterrence do not match the facts and circumstances of this case. Where a suit like this is filed to "protect[ ] perceived rights under copyright law," a fee award would not "advance considerations of compensation and deterrence" or "the purposes of the [] Act." *Gold Glove Prods. v. Handfield*, 2014 WL 12560617, at *4 (C.D. Cal. June 4, 2014); *accord Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (affirming denial of Section 505 motion).

Here, PPC long ago locked-up the film rights to Yonay's Story (Dkt. 62-4) and gave Yonay credit on *Top Gun* in recognition of his expressive contributions. Dkt. 62-10. Yet, when it came to its $177-milllion Sequel, PPC did not even try to re-license the Story for a fair price, it could well afford, as contemplated by the Act's termination provisions. Instead, PPC choose to pay high-priced attorneys to dismantle the Story PPC benefitted from for years and continues to benefit from. Nor did PPC give Yonay any Sequel credit for his obvious contribution to the franchise, which likely would not exist but for Yonay's inspiring Story. *See* Dkts. 62-39, 62-40.

PPC's need for compensation is also belied by the heavy-handed manner by which its counsel handled this case, including overzealous strategies which

drove up fees on both sides. *See* Section III, *infra.* PPC's insurance covered its attorneys' fees (Toberoff Decl., Ex. E at 5), which may explain its over-litigation of this case. *See Sound & Color, LLC v. Smith*, No. CV 22-1508, at 9 (C.D. Cal. Mar. 18, 2024), ECF 167 (finding relevant that "Defendants footed the bill for the litigation (as opposed to an insurance company[])").

As to deterrence, "[d]eclining to award costs in this action is not going to hinder the production of expressive works. The Court [should] seriously doubt[] that declining fees in this action will chill the distribution of expressive works to the public by incentivizing plaintiff-artists to sue[.]" *Marvez v. Uproar Ent.*, 2023 WL 2628616, at *4 (C.D. Cal. Feb. 14, 2023) ("find[ing] unavailing [defendant]'s argument that an award of fees is necessary to deter future litigants.").

Furthermore, "it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." *Milkcrate*, 619 F.Supp.3d at 1024 (quoting *Smith v. Weeknd*, 2020 WL 8174617, at *4 (C.D. Cal. Sept. 4, 2020) (Anderson, J.)). As shown, this case—Plaintiffs' first and only lawsuit—was neither unreasonable nor frivolous. Therefore, this is *not* the type of case where deterrence justifies a fee award. *See*, *e.g.*, *Cummings v. Dolby Lab'ys, Inc.*, 2020 WL 5518185, at *5 (C.D. Cal. Sept. 14, 2020) ("As this is his third case premised on identical facts and circumstances, the Court finds that an award of attorney's fees is justified to compensate the Defendants and should deter [Plaintiff].").

**E.**   **A Fee Award Would Hinder Rather Than Further the Purposes of the Copyright Act, Chilling Termination Rights and Legitimate Advocacy.**

Courts are cautioned to evaluate a Section 505 motion "circumspectly to avoid chilling a copyright holder's incentive to sue on 'colorable' claims[,]" *Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir. 1986), and to comport with Section 505's

legislative purpose "to ensure that all litigants have equal access to the courts to vindicate their statutory rights." *Nimmer* §14.10[A]. This also safeguards the "purpose of copyright protection" itself, "that by granting authors the exclusive rights to reproduce their works, they are given an incentive to create[.]" *Sony Corp. v. Univ. City Studios, Inc.*, 464 U.S. 417, 477 (1984). The Supreme Court reaffirmed this in *Kirtsaeng*, cautioning that "fee-shifting" under Section 505 may "easily discourage" parties from "pursu[ing] the kinds of suits that 'meaningfully clarif[y]' copyright law," creating a "disincentive" for the "risk-averse" to participate in copyright cases at all. 579 U.S. 197, 206.

Imposing fees on Plaintiffs would also be inconsistent with and undermine Congress's stated goals in enacting the Act's vital termination provisions, 17 U.S.C. §§304(c), 203(a), which arguably provide its most important authorial right, short of copyright itself. Section 203(a)'s right to terminate copyright grants after thirty-five years, exercised by Plaintiffs, was specifically designed to "safeguard[ ] authors against unremunerative transfers" and address "the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited." H.R. Rep. No. 94-1476, at 124 (1976). Congress sought to "provide added benefits to authors" by "mak[ing] the rewards for the creativity of authors more substantial[.]" *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985); *see also Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1112 (9th Cir. 2015) (quoting H.R. Rep. No. 94-1476, at 124 and citing *Nimmer* §11.07[E][4][b] (termination right is intended to protect "authors and their spouses, children, and grandchildren…and improve their bargaining position.")). Notwithstanding this, authors and their families face complex obstacles in termination-related cases and must pay their own attorney's fees.

To be equitable, Section 203 also provides terminated grantees, like PPC, with an *exclusive* two-year window to re-acquire terminated rights. 17 U.S.C.

§203(b)(4); H.R. Rep. No. 94-1476, at 124, 127. And because terminated grantees still retain foreign rights to the subject work, *Nimmer* §11.02[B][2], this contemplated reacquisition on fairer terms is the norm.

"It's often said that parties bargain in the shadow of the law." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 850 (6th Cir. 2020). Imposing Section 505 fees in cases like this would defeat the Act's purposes not only by dissuading authors and their families from exercising and enforcing their statutory termination rights, but by weakening their ability to negotiate copyright re-grants that more equitably reflect market value—all as Congress intended. If punitive fees are awarded in a case like this, studios will ensure that authors are aware that ruinous fees may result if they seek to enforce their termination rights or recovered copyrights, eroding authors' inferior bargaining power further still.

## F.   Awarding Fees Would Impose an Inequitable Burden on Impecunious Plaintiffs.

It is well settled that in addition to weighing "the purposes of the Copyright Act, and [] the chilling effect of attorney's fees" a Court must not grant a Section 505 motion when it would "impose an inequitable burden on an impecunious plaintiff." *Ets-Hokin v. Skyy Spirits*, 323 F.3d 763, 766 (9th Cir. 2003). "[T]he Court must consider whether, in light of the losing party's financial condition, it would be inequitable to award attorney's fees." *Epikhin v. Game Insight N. Am.*, 2016 WL 1258690, at *8 (N.D. Cal. March 31, 2016) (citation omitted). PPC "cannot dispute that [it is a] large and successful film [] compan[y] whereas Plaintiff[s are] individual[s]" with limited financial resources. *Zindel*, 2018 WL 6074566, at *5 (denying attorney fees, in part, for this reason). PPC's revenue was over $30.15 billion and $29.65 billion for 2022 and 2023, respectively. Toberoff Decl., Exs. F-G.

Plaintiff Shosh Yonay is a retired teacher who survives on a tiny education ministry pension and a small income from selling olive oil and

occasionally serving as a tour guide. Shosh Decl. ¶¶ 6-7. She does not even own her small olive farm but leases it from the government (expiring 2029). *Id.*, ¶ 7. Shosh has further struggled financially since the Hamas attack on October 7, 2023. *Id.*, ¶ 11. She presently has only $21,900 in the bank and estimates that her income this year will be half of her marginal prior income, putting her seriously in the red. *Id.*, ¶¶ 11-12. Her son Yuval recently moved to Huntington Beach, works as a locksmith and construction trainee (at $22/hour), and is trying to save enough to attend university here. Yuval Decl. ¶¶ 3-4. He currently has approximately $3,000 in the bank. *Id.* ¶ 6. Although Plaintiffs' declarations regarding the foregoing should be sufficient, *see Cleveland v. Behemoth*, 2024 WL 1926504, at *3 (9th Cir. 2024), they stand ready to submit further financial documentation *in camera* if required by the Court.

## III. THE CLAIMED FEES OF PPC'S COUNSEL ARE EXCESSIVE, UNREASONABLE AND OPAQUE.

Notwithstanding all of the above, PPC's Motion cannot stand as it failed to satisfy its "burden of submitting billing records to establish that the number of hours it has requested is reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). "[D]istrict courts 'have a *duty* to ensure that claims for attorneys' fees are reasonable,' and… must ensure that the winning attorneys have exercised billing judgment." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (internal citations omitted).

### A. The Fees Claimed Are Excessive.

Spending 764.70 hours on summary judgment briefing is grossly excessive on its face. Dkt. 109-1 ¶18. *See HVT, Inc. v. Port Auth. N.Y. & N.J.*, 2018 WL 6079932, at *6 (E.D.N.Y. Nov. 21, 2018) (collecting fee decisions finding that billing far less hours on summary judgment (*e.g.,* 200, 241.5, 300 hours) was *excessive*). To put this in perspective, PPC's claimed hours are the equivalent of an attorney working eight hours a day, five days per week, for *over*

*four months* straight on these motions. *See id.* (holding that billing 293.6 hours on cross-motions for summary judgment was excessive).

PPC's counsel's proffered fee entries (Dkt. 109-9) are also "excessive, redundant, or otherwise unnecessary" for the reasons below. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citation omitted).

**Internal Communications:** The 93.30 hours requested for "intra-office conferences is unnecessary and duplicative[.]" *Id.* at 949; *see also Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594, at *3 (E.D. Cal. Sept. 9, 2013); Toberoff Decl. ¶ 18.

**Internal Research and Memoranda:** It is also unreasonable for PPC to bill 210.90 hours for the preparation of internal memoranda and research. *See Gauchat-Hargis*, 2013 WL 4828594, at *3; Toberoff Decl. ¶ 19.

**Clerical Work and Case Management:** The 56.70 hours requested by PPC are unrecoverable because they are clerical and administrative in nature. *See, e.g., Neil v. C.S.S.*, 495 F.App'x 845, 847 (9th Cir. 2012); *Stern v. Does*, 2011 WL 13124449, *5 (C.D. Cal. May 4, 2011); *Martinez v. Semi-Tropic Coop.*, 2023 WL 3569906, at *30-31 (E.D. Cal. May 19, 2023); Toberoff Decl. ¶ 20.

**Duplicative:** On top of all this, at least 432.10 hours of PPC's entries are duplicative, likewise warranting reduction. *See, e.g., Scherer v. Woodley-Vanomen Props.*, 839 F.App'x 150, 151 (9th Cir. 2021); *Beastie Boys v. Monster Energy Co.*, 112 F.Supp.3d 31, 55 (S.D.N.Y. 2015); Toberoff Decl. ¶ 21.

**B.** **Time Spent on PPC's Belatedly Produced "Preview Cut" and Opposing Plaintiffs' Motion to Strike Is Not Recoverable.**

Over sixty hours (Dkt. 109-9 at 33-34, 42, 49-54) were spent preparing an opposition to Plaintiffs' Motion to Strike (Dkt. 82), itself necessitated *by PPC's own litigation misconduct. Id.*; Toberoff Decl. ¶ 22. Awarding fees for PPC's failure to abide by discovery deadlines would incentivize similar *violations* and

undermine the discovery process. *See Bridgeport Music, Inc. v. Songs of All Nations*, 261 F.Supp.2d 968 (M.D. Tenn. 2003), *aff'd*, 99 F.App'x 686 (6th Cir. 2004) (denying Section 505 fees when such would reward the movant's failure to timely produce evidence).

**C.** **The Vague and Overly Redacted Entries Are Woefully Inadequate.**

PPC's time entries also suffer from incomprehensible vagueness, often caused by gratuitous redactions.

***Overly Redacted:*** PPC submitted at least 121.80 hours of entries (Dkt. 109-9) redacted so heavily that they deprive Plaintiffs and the Court of "a meaningful opportunity to assess or dispute the reasonableness of time spent on each task." Toberoff Decl. ¶ 23; *Randles Films, LLC v. Quantum Releasing, LLC*, 2012 WL 12884046, at *4 (C.D. Cal. Mar. 30, 2012), *aff'd*, 551 F.App'x 370 (9th Cir. 2014); *see also Lynwood Invs. v. Konovalov*, 2023 WL 2918754 (N.D. Cal. Apr. 11, 2023) (criticizing and discounting heavily redacted entries). The sampled entries below (from PPC's timekeepers) exemplify the magnitude of this problem:



***Vague Entries:*** Even where PPC's entry descriptions are not overly redacted, they are impermissibly vague such that it is again impossible to determine if they are reasonable. *Santiago v. Equitable Ascent Financial*, 2013 WL 3498079, *6 (N.D. Cal. July 12, 2013); *Konovalov*, 2023 WL 2918754, at *14. Plaintiffs have identified 423.60 hours of such entries. Dkt. 109-9; *see* Toberoff Decl. ¶ 24.

***Time Billed re: Contract Claim***:  Time spent on Plaintiffs' state-law contract claim is not subject to Section 505 which was pled and exists independent of Plaintiffs' copyright claim. Dkt. 16. It is impossible to tell, however, from PPC's vague entries the considerable time billed for this.

***Block Billing:*** The 139.8 hours in "block billing" entries submitted by PPC (Dkt. 109-9) should also not be countenanced by this Court. *See*, *e.g.*, *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F.App'x 238, 245 (9th Cir. 2021); *Welch*, 480 F.3d at 948. *See* Toberoff Decl. ¶ 25.

Given the grave deficiencies in PPC's time submissions, their Motion cannot stand.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant's Motion must be denied.

DATED: May 6, 2024                          Respectfully submitted,

                                                          **TOBEROFF & ASSOCIATES, P.C.**

                                                          By:  */s/ Marc Toberoff*
                                                                  Marc Toberoff

                                                          *Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiffs, Shosh and Yuval Yonay, certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.


DATED: May 6, 2024             Respectfully Submitted,

                              TOBEROFF & ASSOCIATES, P.C.

                              By:  */s/ Marc Toberoff*
                                   Marc Toberoff

                              *Attorneys for Plaintiffs*